# EXHIBIT C



**Delaware**

300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310

**New York**

825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516

Facsimile: (302) 654-7530

**www.rigrodskylong.com**

<u>*FIRM RÉSUMÉ*</u>

*ABOUT THE FIRM*

Rigrodsky & Long, P.A. (the "Firm") is a law firm that focuses on the representation of investors and consumers in class action and shareholder derivative litigation involving the federal securities laws, corporate law, the Fair Labor Standards Act, and consumer fraud statutes.  The Firm's offices are located in Delaware and New York.  The Firm regularly practices before state and federal courts located throughout the United States.  The Firm's attorneys have decades of litigation experience.

The Firm's mission is to provide high quality legal services through the efforts of a team of highly skilled professionals and support staff working together and drawing upon significant expertise and experience.  The Firm has achieved precedent-setting victories for victims of corporate wrongdoing and recovered millions of dollars on their behalf.

*SELECT FIRM ACCOMPLISHMENTS*

*In re CNX Gas Corporation Shareholders Litigation,*
**Consol. C.A. No. 5377-VCL (Del. Ch.)**
The Firm served as sole lead counsel in a class action before the Delaware Court of Chancery brought on behalf of the shareholders of CNX Gas Corporation ("CNX") who alleged that they suffered financial injury in connection with the going-private acquisition of CNX by its controlling parent company owner, CONSOL Energy, Inc.  After expedited proceedings, on May 26, 2010, the Court ruled that plaintiffs had made a sufficient showing that the action should move forward to trial.  In so doing, the Court issued an important opinion clarifying and defining the rights of shareholders in the context of a going-private tender offer by a controlling shareholder.  *In re CNX Gas Corp. S'holders Litig.*, **4 A.3d 397 (Del. Ch.  2010).**  The Court of Chancery subsequently approved a settlement of the action where defendants and their insurers agreed to pay $42.73 million to stockholders.  The parties reached settlement just days before the commencement of trial, after submission of pretrial briefing and extensive fact and expert discovery.  The settlement, which was approved on August 23, 2013, was the largest settlement of a case challenging a merger in the Court of Chancery in 2013.

*In re Metrologic Instruments, Inc. Shareholders Litigation,*
**Docket No. L-6430-06 (N.J. Super. Ct.)**
The Firm served as sole lead counsel on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders.  This class action arose from a transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means.  Plaintiffs alleged that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of

1

the Board), and Elliott Associates, L.P. and Elliott International, L.P. (collectively, "Elliott"). C. Harry Knowles and Elliott (the "Knowles Group") were together controlling shareholders of Metrologic. The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity. On April 17, 2009, the Court denied defendants' motion to dismiss the case. *In re Metrologic Instruments, Inc. S'holders Litig.*, **Docket No. L-6430-06 (N.J. Super. Ct. Apr. 17, 2009) (Order).** In 2013, plaintiffs and defendant Metrologic, in addition to the individual members of Metrologic's board of directors, reached a partial settlement in exchange for a payment of $11.95 million, which was approved by the Court on December 16, 2013. That partial settlement excluded the parties alleged to be Metrologic's controlling stockholders. Plaintiffs continued to press claims against those remaining entities, ultimately resulting in an additional settlement providing for the creation of a $9.75 million fund to be distributed to the class. The Court approved the second settlement on April 6, 2018.

*In re Cornerstone Therapeutics, Inc. Stockholder Litigation,*
**Consol. C.A. No. 8922-VCG (Del. Ch.)**
The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Cornerstone Therapeutics, Inc. ("Cornerstone"). Plaintiffs alleged that the proposed acquisition of Cornerstone by its majority stockholder, Chiesi Farmaceutici S.p.A., was accomplished pursuant to an unfair process and at an unfair price. After three years of litigation, including an appeal to the Supreme Court of Delaware, and following mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to pay $17,881,555 to the settlement class. The Delaware Court of Chancery approved the settlement on January 26, 2017.

*In re Prospect Medical Holdings, Inc. Shareholders Litigation,*
**Consol. C.A. No. 5760-VCN (Del. Ch.)**
The Firm served as co-lead counsel in this class action before the Delaware Court of Chancery brought on behalf of the shareholders of Prospect Medical Holdings, Inc. ("Prospect"). Plaintiffs alleged that the proposed acquisition of Prospect by entities sponsored by Leonard Green & Partners, L.P. was the result of an unfair process and would provide Prospect's shareholders with inadequate consideration. Following discovery and mediation, the parties reached an agreement to settle the action, pursuant to which defendants agreed to provide $6.5 million to the settlement class. The Delaware Court of Chancery approved the settlement on January 21, 2016.

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litigation,*
**Case No. 2:13-md-02451-ADS-AKT (E.D.N.Y.)**

The Firm was appointed Co-Interim Class Counsel in this multidistrict litigation pending in the United States District Court for the Eastern District of New York. This litigation was brought on behalf of a national class of checking account customers of HSBC Bank USA, N.A. ("HSBC") who were improperly charged overdraft fees on debit card transactions as a result of HSBC's deceptive overdraft fee practices. On March 5, 2014, the District Court granted, in part, and denied, in part, defendants' motion to dismiss plaintiffs' complaint. On April 21, 2014, the District Court granted plaintiffs' motion for reconsideration of the dismissal of certain claims and reinstated those claims. Following the completion of discovery and mediation, on February 10, 2016, the parties reached an agreement to settle the claims through a parallel state action, creating a $32 million cash settlement fund for the benefit of the class. The settlement was approved by the Court on October 18, 2016.

*In re Nevsun Resources Ltd.,*
**Case No. 1:12-cv-01845-PGG (S.D.N.Y.)**

The Firm was appointed co-lead counsel in this federal securities fraud class action litigation brought on behalf of the shareholders of Nevsun Resources Ltd. (the "Company") against the Company and certain of its officers. Plaintiffs alleged that, during the class period, defendants made materially false and misleading statements by overstating the gold reserves at the Company's Bisha Mine in Eritrea, Africa. On September 27, 2013, the District Court denied, in substantial part, defendants' motion to dismiss the complaint. Following mediation, on May 1, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to create a $5,995,000 cash settlement fund for the benefit of the class. The Court approved the settlement on February 13, 2015.

*In re Mediacom Communications Corporation Shareholders Litigation,*
**Consol. C.A. No. 5537-VCS (Del. Ch.)**

The Firm was one of the lead counsel and one of the primary negotiators of a settlement that resulted in an additional $10 million paid to stockholders. In *Mediacom*, plaintiffs' counsel eschewed multiple invitations to negotiate simultaneously with the special committee of Mediacom Communications Corporation's ("Mediacom") board of directors, and instead favored the approach of focusing their litigation efforts on increasing the consideration to stockholders only after the merger agreement had been negotiated and approved by the Mediacom board, as recommended by its special committee.

*In re Fuqi International, Inc. Securities Litigation,*
**Case No. 1:10-cv-02515-DAB (S.D.N.Y.)**

The Firm was one of plaintiffs' counsel in this federal securities class action brought on behalf of the shareholders of Fuqi International, Inc. (the "Company") who purchased

3

Company shares between May 15, 2009 and March 25, 2011, inclusive, and on behalf of a subclass of all those who purchased or otherwise acquired Company common stock pursuant, or traceable, to the secondary offering on or about July 22, 2009. Plaintiffs alleged that, during the class period and in the offering materials, defendants made materially false and misleading statements concerning the adequacy of its internal financial controls, as well as its financial results. On February 18, 2016, the Court approved the settlement of claims against the Company and the individual defendants. The settlement provided for the creation of a $7.5 million cash settlement fund for the benefit of the class. On January 8, 2018, the Court approved a $1.1 million cash settlement in the related action, *Puerto Rico Government Judiciary Employees Retirement System, v. Marcum, LLP,* **Case No. 1:15-cv-01938-DAB (S.D.N.Y.),** for claims against the Company's class period independent auditor.

*Dannis v. Nichols,*
**Case No. 13-CI-00452 (Ky. Cir. Ct.)**
The Firm was one of the lead counsel that litigated and negotiated the settlement in this class action. Plaintiffs challenged the fairness of a proposed going-private squeeze-out merger by NTS Realty Holdings Limited Partnership's ("NTS") controlling unitholder and Chairman of the Board. The action settled for additional consideration of $7,401,487, or more than $1.75 per unit of NTS. The settlement was approved by the Court on April 24, 2014.

*Minerva Group LP v. Keane,*
**Index No. 800621/2013 (N.Y. Sup. Ct.)**
The Firm served as co-lead counsel in a class action brought on behalf of the public stockholders of Mod-Pac Corp. ("Mod-Pac" or the "Company") against members of Mod-Pac's board of directors, including the Company's controlling stockholders, for alleged breaches of fiduciary duties in connection with the controlling stockholders' offer to acquire all of the outstanding shares of Mod-Pac that they did not already own through an unfair process and for an unfair price. The parties reached an agreement to settle the action, which the Court approved on December 13, 2013, pursuant to which defendants agreed to pay Mod-Pac's stockholders an additional $2.4 million, which was an increase from $8.40 per share to $9.25 per share.

*Yang v. Focus Media Holding Limited,*
**Case No. 1:11-cv-09051-CM (S.D.N.Y.)**
The Firm served as lead counsel in *Focus Media*, in which plaintiff alleged violations of the Securities Exchange Act of 1934. On May 13, 2014, the parties entered into a stipulation and agreement of settlement, pursuant to which defendants agreed to pay $3,700,000 to the class to resolve the action. The Court approved the settlement on September 4, 2014.

4

*Forgo v. Health Grades, Inc.,*
**C.A. No. 5716-VCS (Del. Ch.)**

The Firm was among the lead counsel in *Health Grades*, where, after an injunction hearing, the parties settled for extensive modification to the terms of the challenged transaction. These modifications included: a "Fort Howard" press release; a twenty-day extension of the challenged tender offer; the agreement of certain officers who had entered into tender and support agreements to similarly support a better deal; a twenty-two percent reduction in the termination fee; a forty percent reduction in the buyer's matching rights; the creation of an independent committee to negotiate with bidders and approve offers free from the influence of the allegedly self-interested chief executive; and the imposition of a requirement that a majority of the disinterested stockholders tender for the transaction to be consummated.

*In re Lear Corp. Shareholders Litigation,*
**Consol. C.A. No. 2728-VCS (Del. Ch.)**

The Firm served as Co-Chair of Plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP"). The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed its concern regarding the price AREP offered to acquire Lear. Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP following a sales process that was tilted in favor of AREP. Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer. As a result, plaintiffs alleged that no rival bidder was likely to emerge. Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP. The Firm obtained a preliminary injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures. *In re Lear Corp. S'holders Litig.,* **926 A.2d 94 (Del. Ch. 2008)**. As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 proxy supplement, which allowed stockholders to consequentially reject the merger in July 2007. In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

*In re The Topps Company, Inc. Shareholders Litigation,*
**Consol. C.A. No. 2786-VCS (Del. Ch.)**

The Firm served as Co-Lead Counsel for Plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante"). Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders. The Firm moved the Court to issue a preliminary injunction to stop the

deal.  In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion.  *In re The Topps Co., Inc. S'holders Litig.,* **926 A.2d 58 (Del. Ch. 2007)**.  The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

*Manville Personal Injury Trust v. Blankenship,*
**Case No. 07-C-1333 (W. Va. Cir.)**

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations.  Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations.  This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies.  The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues.  In June 2008, the Circuit Court approved the settlement.  *Manville Personal Injury Trust v. Blankenship,* **Case No. 07-C-1333 (W. Va. Cir. June 30, 2008) (Order)**.

*In re Chiquita Brands International, Inc., Alien Tort Statute and Shareholder Derivative Litigation,*
**Case No. 08-01916-MD (S.D. Fla.)**

The Firm acted as counsel for plaintiff City of Philadelphia Public Employees' Retirement System in a shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International, Inc. ("Chiquita" or the "Company"). Plaintiffs alleged that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations.  Plaintiffs alleged that these breaches of fiduciary duty, along with the resultant violations of federal law, had substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea.  After years of litigation, on October 15, 2010, the District Court entered an Order approving a settlement of the litigation.  *In re Chiquita*

6

*Brands Int'l, Inc., Alien Tort Statute & S'holder Derivative Litig.*, **Case No. 08-01916-MD (S.D. Fla. Oct. 15, 2010) (Order)**. Among other things, the settlement provided substantial and important corporate governance reforms relating to the Chiquita board's oversight and management of the Company's compliance with federal law involving Chiquita's overseas business.

*County of York Employees Retirement Plan v. Jung,*
**Index No. 651304-2010 (N.Y. Sup. Ct.)**

The Firm was one of plaintiffs' counsel representing the County of York in this derivative action against various directors and officers of Avon Products, Inc. ("Avon"). Plaintiffs alleged that various Avon employees violated the Foreign Corrupt Practices Act by bribing foreign officials in China. On August 3, 2016, the Court approved a settlement that provided, among other things, for Avon to adopt a global anti-corruption policy and code of conduct, as well as implement specific Foreign Corrupt Practices Act testing.

*U.F.C.W. Local 1776 & Participating Employers Pension Fund v. Devitre,*
**Case No. CV 10-2496 (D. Ariz.)**

The Firm was one of plaintiffs' counsel representing U.F.C.W. Local 1776 & Participating Employers Pension Fund against various officers and directors of the Western Union Company (the "Company") and its wholly-owned subsidiary, Western Union Financial. Plaintiff alleged that the Company's board of directors failed to appropriately oversee the Company's compliance with applicable anti-money laundering laws, regulations, and rules resulting in the Company's payment of $94 million to resolve all potential regulatory, civil, and criminal claims. On June 14, 2002, the Court approved a settlement in which the Company agreed to require the board of directors to review all reports by an independent compliance monitor; review the Company's compliance program and policies relating to the anti-money laundering laws and regulations; and review and approve the *Bank Secrecy Act and Anti-Money Laundering Compliance Program Manual for the United States* on a quarterly basis.

*PG&E San Bruno Fire Cases,*
**Case No. JCCP 4648-C (Cal. Super. Ct.)**

The Firm, as counsel for plaintiff, brought a shareholder derivative case on behalf of the shareholders of PG&E Corporation ("PG&E") in connection with the tragic loss of life and property resulting from a San Bruno, California gas leak. After years of litigation, the Firm helped achieve a recovery of $90 million, which constituted the seventh largest shareholder derivative settlement on record. To improve and ensure pipeline safety, plaintiffs also obtained comprehensive gas operations therapeutics with a stipulated value of $32.05 million. The settlement also fundamentally altered how PG&E conducts its gas operations and provided extensive corporate governance reforms.

*Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. v. Blank,*
**Index No. 09/3560 (N.Y. Sup.)**
The Firm was counsel for a large, European institutional investor in a shareholder derivative lawsuit brought against Lloyds Banking Group p.l.c. ("Lloyds"). The lawsuit alleged that the directors of Lloyds violated their fiduciary duties to shareholders by failing to monitor the company's compliance with federal and state banking laws in connection with alleged illegal transfers of funds in the United States on behalf of certain sovereign countries including Iran. After years of litigation and negotiations, the Firm helped achieve significant corporate governance changes to ensure that the board of directors was more actively engaged in the monitoring of Lloyds' money transfer businesses and compliance with federal and state banking rules and regulations.

*In re MBNA Corp. Securities Litigation,*
**Case No. 05-CV-00272-GMS (D. Del.)**
The Firm served as liaison counsel for lead plaintiff and the members of the class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the "Class Period"). Plaintiffs alleged that: (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable. As a result, on April 21, 2005, MBNA was forced to reveal that: (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective. On July 6, 2007, the Court denied defendants' motion to dismiss the amended complaint. *Baker v. MBNA Corp.,* **Case No. 05-cv-00272-GMS (D. Del July 6, 2007) (Mem. Op.).** Subsequently, after substantial litigation, the parties settled the litigation resulting in the creation of a $25 million fund to compensate injured investors. *In re MBNA Corp. Sec. Litig.,* **Case No. 05-cv-00272-GMS (D. Del. Oct. 6, 2009) (Order).**

*In re Molson Coors Brewing Co. Securities Litigation,*
**Case No. 05-CV-00294-GMS (D. Del.)**
The Firm served as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the class in this securities class action brought on behalf of all persons who were: (i) former shareholders of Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson with and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of

8

Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive. Plaintiffs alleged that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely affect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost. After extensive litigation efforts in both the United States and Canadian actions, the parties settled the lawsuits resulting in the creation of a $6 million fund for the payment of investor claims. *In re Molson Coors Brewing Co. Sec. Litig.*, **Case No. 05-cv-00294-GMS (D. Del. May 19, 2009).**

*County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.*,
**C.A. No. 4066-VCN (Del. Ch.)**
The Firm served as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") in connection with its sale to Bank of America Corporation ("BofA"). Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the proposed acquisition. On October 28, 2008, the Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss. *Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co., Inc.*, **C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008).** Subsequently, the Firm engaged in expedited discovery. After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants made additional, substantive disclosures in their definitive proxy. Thereafter, the shareholders of Merrill and BofA approved the merger.

*David B. Shaev IRA v. Sidhu*,
**Case No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)**
The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign" or the "Company"). Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp. Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange. Additionally, plaintiffs alleged the board members had improper motives of entrenchment and participated in protection of their own self

9

interests and the improper subversion of a proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC.  Following the close of the sale in May 2006, the Firm helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and class members, including substantial corporate governance changes adopted by the Company.  The Court approved the settlement.  *David B. Shaev IRA v. Sidhu,* **No. 00983 (Phila. C.C.P., Commerce Div. Oct. 28, 2008) (Order).**  The Supreme Court of Pennsylvania upheld the settlement, which had been challenged in both the trial court and the intermediate appellate court.  *Shaev v. Sidhu,* **Pennsylvania Docket No. 470 EAL 2010 (Pa. Dec. 21, 2010) (Order)**.

### *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow,* C.A. No. 2683-N (Del. Ch.)

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegesellschaft mbH, a European institutional investor, in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company").  The litigation sought to enjoin the proposed acquisition of National Home by a consortium comprised of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration.  The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by National Home's minority, public shareholders.  As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more than $3.76 million to National Home's shareholders.  In addition, even after the merger agreement was approved, the Firm continued to advocate on behalf of shareholders, and Angelo Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value.  The Court approved the settlement. *Helaba Invest Kapitalanlagegesellschaft mbH v. Fialkow,* **C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).**

### *Plymouth Co. Retirement System v. MacDermid, Inc.,* Case No. 2006CV9741 (Colo. Dist. Ct.)

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders.  This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P.  Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after

10

completion of the proposed transaction, and certain facts and assumptions underlying the fairness opinion. As a result of the Firm's negotiations with defendants, MacDermid made additional disclosures in its definitive proxy statement, including, but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders, and financial analyses by Merrill Lynch. The Court approved the settlement. *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* **Case No. 2006CV9741 (Colo. Dist. Ct. Dec. 10, 2007) (Order).**

*Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,*
**Case No. 07-CV-3476-GEL (S.D.N.Y.)**
The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium. Plaintiff alleged that the acquisition was unfair to the class. As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million. Citing the efforts of plaintiff's counsel, the Court approved the settlement. *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* **Case No. 3476-GEL (S.D.N.Y. Feb. 8, 2008) (Order).**

*In re American Pharmaceutical Partners, Inc. Shareholders Litigation,*
**Consol. C.A. No. 1823-VCL (Del. Ch.)**
The Firm served as one of co-lead counsel in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc. Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration. In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006. After nearly eighteen months of arm's-length negotiations and the production of thousands of pages of documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action. In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represented approximately $0.60 per damaged minority share for the shareholders. The Court approved the settlement. *In re Am. Pharm. Partners, Inc. S'holders Litig.,* **Consol. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).**

*Schultze Asset Management LLC v. Washington Group International, Inc.,*
**C.A. No. 3261-VCN (Del. Ch.)**

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation. Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders. In addition, plaintiff alleged that the Company's definitive proxy statement was materially misleading because, among other things, it failed to explain why Washington Group used overly conservative financial projections to support the fairness opinion issued in connection with the transactions. As a result of the Firm's negotiations with defendants, Washington Group agreed to and made additional curative disclosures in the definitive proxy statement. Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs, the Company's financial advisor, in support of the merger, among other things. Additionally, Washington Group amended the merger agreement whereby it increased the amount of consideration paid to each Washington Group shareholder. The Court approved the settlement. *Schultze Asset Mgmt. LLC v. Wash. Grp. Int'l, Inc.,* **C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).**

*Sheetmetal Workers' National Pension Fund v. Hill,*
**Case No. 07-cv-2269-RBK (D.N.J.)**

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger"). Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair. Plaintiff requested the Court to issue an injunction to stop the Merger and sought expedited discovery. After extensive discovery, the Firm helped negotiate a settlement, which resulted in a $77 million reduction in the termination fee, and numerous additional disclosures in the definitive proxy statement. The Court approved the settlement. *Sheetmetal Workers' Nat'l Pension Fund v. Hill,* **Case No. 07-cv-269 (D.N.J. May 9, 2008) (Order).**

*Virgin Islands Government Employees' Retirement System v. Alvarez,*
**C.A. No. 3976-VCS (Del. Ch.)**

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its board of directors and certain officers for breach of fiduciary

duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws, including the Bank Secrecy Act. The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group ("MUFG") and Bank of Tokyo-UFJ Ltd. Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations. The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction. The Court approved the settlement. *V.I. Gov't Employees' Ret. Sys. v. Alvarez*, **C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order).**

*THE FIRM'S PROFESSIONALS*

*Seth D. Rigrodsky* is a founding Shareholder of the Firm and has over twenty-five years of legal experience. Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center. While at Georgetown, he served as Articles Editor of the *Georgetown Law Review.* Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II of the Supreme Court of Delaware. Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York, New York, and Morris, Nichols, Arsht & Tunnell LLP in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation. In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits. He joined the law firm of Milberg LLP in 2001 and founded its Delaware office. Mr. Rigrodsky co-founded the Firm in 2006. He was appointed by the Delaware Court of Chancery to the Rules Committee of the Delaware Bar. Mr. Rigrodsky is admitted to practice in the States of Delaware and New York, the United States District Courts for the District of Delaware, the Southern District of New York, and the District of Colorado, and the United States Courts of Appeals for the Second, Third, Fourth, and Sixth Circuits.

*Brian D. Long* is a founding Shareholder of the Firm and has nearly twenty years of legal experience. Mr. Long is a graduate of Franklin & Marshall College and the Duquesne University School of Law. Upon graduation from law school, Mr. Long was associated with the firm of Roda & Nast, P.C., where he litigated mass tort, consumer fraud, and antitrust class action litigation. Following three years at Roda & Nast, Mr. Long was associated with the Wilmington, Delaware offices of Chimicles & Tikellis, LLP and Milberg LLP. Mr. Long co-founded the Firm in 2006. For over eighteen years, Mr. Long has represented shareholders and others in complex class action litigation in state and federal courts throughout the nation, with a focus on representing stockholders asserting

13

claims for breaches of fiduciary duties and violations of the federal securities laws.  Mr. Long has successfully served as lead or co-lead counsel in numerous stockholder derivative actions challenging harm to public corporations.  He has argued before the Supreme Court of Delaware and the Delaware Court of Chancery.  Mr. Long also has experience assisting in the representation of securities fraud plaintiffs in collateral proceedings in the United States Bankruptcy Court for the District of Delaware.  Mr. Long is admitted to practice in the State of Delaware and the Commonwealth of Pennsylvania, the United States District Courts for the District of Delaware and the Eastern and Western Districts of Pennsylvania, and the United States Court of Appeals for the Third Circuit.

*Timothy J. MacFall* is a Partner at the Firm and has more than thirty years of legal experience.  Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School.  Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office.  In 1987, he joined the United States Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program.  Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division.  In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York.  As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the United States Court of Appeals for the Second Circuit.  Mr. MacFall was also a speaker at a United States Department of State Conference on pending extradition litigation and the 1986 *Supplementary Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland*; has served as a lecturer at Immigration & Naturalization Service Special Agent training seminars; and assisted in the preparation of a New York City Police Department trial testimony training film. Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992.  Mr. MacFall has represented individual investors, union pension funds, and state pension funds in transactional and federal securities class actions throughout the United States.  Mr. MacFall joined the Firm in April 2009.  Mr. MacFall was selected for inclusion in the *2010, 2011, 2013, 2014, 2015, 2016, 2017, 2018, and 2019 New York Super Lawyers - Metro Edition* magazines for his work in securities litigation.  Mr. MacFall is admitted to practice in the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado, and the United States Court of Appeals for the Second Circuit.

*Marc A. Rigrodsky* is Of Counsel to the Firm and has over thirty-five years of legal experience.  Mr. Rigrodsky is a graduate of Cornell University and a *summa cum laude* graduate of the Benjamin N. Cardozo School of Law.  While at Cardozo, he served on the *Cardozo Law Review*.  Mr. Rigrodsky began his legal career as a law clerk to the Honorable Thomas J. Meskill, of the United States Court of Appeals for the Second Circuit.  Following his clerkship, Mr. Rigrodsky was associated with the law firm of Robinson &

14

Cole in Hartford, Connecticut. He worked for the Department of the Navy from 1986 to 1988, the Department of the Treasury from 1992 to 2003, and the Department of Transportation from 2003 to 2007. He was part of Digital Equipment Corporation's law department from 1989 to 1991, and worked as a full-time consultant for the District of Columbia Retirement Board from 2007 to 2009. Mr. Rigrodsky is admitted to practice in the State of Connecticut and the District of Columbia, the United States District Court for the District of Connecticut, the United States Court of Appeals for the Sixth Circuit, and the United States Supreme Court.

*Gina M. Serra* is a Partner at the Firm. Ms. Serra is a *cum laude* graduate of both Rowan University and Widener University School of Law in Wilmington, Delaware. While at Widener Law, Ms. Serra was a member of the *Widener Law Review* and Vice President of the Moot Court Honor Society and the Justinian Society. During law school, she also was a judicial intern for the Honorable Henry duPont Ridgely of the Supreme Court of Delaware, and obtained a Trial Advocacy Certificate with honors. Ms. Serra began her legal career as the judicial law clerk to the Honorable Fred S. Silverman of the Superior Court of Delaware. She also was a member of the Richard S. Rodney American Inn of Court. Ms. Serra joined the Firm in September 2010. She has been named a *Delaware "Rising Star" by Super Lawyers for 2015, 2016, 2017, 2018, and 2019.* Ms. Serra is admitted to practice in the States of Delaware, New York, and New Jersey, the Commonwealth of Pennsylvania, the United States District Courts for the Districts of Delaware and Colorado, and the United States Court of Appeals for the Sixth Circuit.