**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
                                                      :     No. 2:20-CV-01310-ENV-SIL
                                                      :
IN RE CRONOS GROUP INC.                               :
SECURITIES LITIGATION                                 :
                                                      :
*This Document Relates to All Actions*                :     CONSOLIDATED SECURITIES
                                                      :     LITIGATION
                                                      :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Sharon L. Nelles
David M.J. Rein
A. Christopher Brown
Samantha R. Briggs
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
*nelless@sullcrom.com*
*reind@sullcrom.com*
*brownac@sullcrom.com*
*briggss@sullcrom.com*

*Attorneys for Defendants Cronos*
*Group Inc., Michael Gorenstein, and*
*Jerry F. Barbato*

February 8, 2021

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................... 1

**ALLEGATIONS OF THE COMPLAINT** ...................................................................... 3

    A.    Cronos's Business and the MediPharm Agreements .............................................. 3

    B.    Restatement of 2019 Financial Results ................................................................. 5

    C.    Plaintiff's Claims ............................................................................................... 7

**ARGUMENT** ................................................................................................................... 8

**I.**    **THE COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING A STRONG INFERENCE THAT DEFENDANTS ACTED WITH FRAUDULENT INTENT.** ......................................................................................... 8

    A.    The Complaint Does Not Allege Motive and Opportunity .................................... 9

    B.    The Complaint Does Not Allege Conscious Misbehavior or Recklessness. ........ 11

**II.**    **PLAINTIFF DOES NOT PLEAD LOSS CAUSATION FOR TWO ALLEGED CORRECTIVE DISCLOSURES.** ............................................. 19

**III.**    **PLAINTIFF FAILS TO ADEQUATELY ALLEGE SECTION 20(A) CONTROL PERSON LIABILITY.** ................................................................ 22

**CONCLUSION** .............................................................................................................. 22

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abbad* v. *Amman*,
   285 F. Supp. 2d 411 (S.D.N.Y. 2003)......................................................................10

*Abely* v. *Aeterna Zentaris Inc.*,
   No. 12 Civ. 4711 (PKC), 2013 WL 2399869 (S.D.N.Y. May 29, 2013) ..............................13

*In re Aceto Corp. Securities Litigation*,
   No. 18 Civ. 2425 (ERK) (AYS), 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)............ 9, 15-16

*Acito* v. *IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) .................................................................................10

*Alaska Laborer Employers Retirement Fund* v. *Scholastic Corp.*,
   No. 07 Civ. 7402 (GBD), 2010 WL 3910211 (S.D.N.Y. Sept. 30, 2010)........................ 19-20

*In re AmTrust Financial Services, Inc. Securities Litigation*,
   No. 17 Civ. 1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .......................... 16-17

*ATSI Communications Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................3, 9

*BankUnited N.A.* v. *Merritt Environmental Consulting Corp.*,
   360 F. Supp. 3d 172 (S.D.N.Y. 2018)....................................................................3

*Board of Trustees of Fort Lauderdale General Employees' Retirement System* v.
   *Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011)....................................................................13

*In re Bear Stearns Companies, Inc. Securities, Derivative & ERISA Litigation*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................................................................10

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007)........................................................................................8

*Bensley* v. *FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) .........................................................................20

*In re BISYS Securities Litigation*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................................................................19

*In re Bristol-Myers Squibb Securities Litigation*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004)................................................................ 12-13

-ii-

*City of Brockton Retirement System* v. *Shaw Group Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)....................................................................18

*City of Warren Police and Fire Retirement System* v. *Foot Locker, Inc.*,
    412 F. Supp. 3d 206 (E.D.N.Y. 2019) ..................................................................11

*Das* v. *Rio Tinto PLC*,
    332 F. Supp. 3d 786 (S.D.N.Y. 2018)..............................................................11, 14

*DeLuca* v. *AccessIT Group, Inc.*,
    695 F. Supp. 2d 54 (S.D.N.Y. 2010).................................................................. 3-4

*Dobina* v. *Weatherford International Ltd.*,
    909 F. Supp. 2d 228 (S.D.N.Y. 2012)...................................................................12

*DoubleLine Capital LP* v. *Odebrecht Finance Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)...................................................................21

*Dura Pharmaceuticals, Inc.* v. *Broudo*,
    544 U.S. 336 (2005)..............................................................................................19

*ECA, Local 134 IBEW Joint Pension Trust of Chicago* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................................ 2, 8-9

*In re Ferrellgas Partners, L.P., Securities Litigation*,
    No. 16 Civ 7840 (RJS), 2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ...........15, 18

*Glaser* v. *The9, Ltd.*,
    711 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................13

*Gross* v. *GFI Group, Inc.*,
    310 F. Supp. 3d 384 (S.D.N.Y. 2018)..................................................2, 9-10, 17

*In re Hansen Natural Corp. Securities Litigation*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...........................................................20-21

*In re Initial Public Offering Securities Litigation*,
    399 F. Supp. 2d 261 (S.D.N.Y. 2005)...................................................................20

*Janbay* v. *Canadian Solar, Inc.*,
    No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................... *passim*

*Joffee* v. *Lehman Brothers, Inc.*,
    410 F. Supp. 2d 187 (S.D.N.Y. 2006)...................................................................21

*Lachman* v. *Revlon, Inc.*,
    No. 19 Civ. 2859 (RPK) (RER), 2020 WL 5577406 (E.D.N.Y. Sept. 17, 2020).......... 3, 16-17

*Lentell* v. *Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)......................................................................................19

*Lipow* v. *Net1 UEPS Technologies Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015).....................................................................14

*Malin* v. *XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007)......................................................................18

*In re Marsh & McIennan Companies, Inc. Securities Litigation*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).....................................................................18

*In re MDC Industrial Direct Co.*,
    283 F. Supp. 2d 838 (E.D.N.Y. 2003) .......................................................................2

*Menaldi* v. *Och-Ziff Capital Management Group*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017).....................................................................17

*Novak* v. *Kasaks*,
    2016 F.3d 300 (2d Cir. 2000)................................................................ 2, 11-12, 18

*Oklahoma Law Enforcement Retirement System* v. *Telefonaktiebolaget LM Ericsson*,
    No. 18 Civ. 3021 (JMF), 2020 WL 127546 (S.D.N.Y. 2020) .................................14

*In re Omnicom Group Securities Litigation*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2009).....................................................................21

*Parkcentral Global Hub Ltd.* v. *Porsche Automobile Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)........................................................................................3

*In re PXRE Group, Ltd. Securities Litigation*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009).....................................................................12

*Reilly* v. *U.S. Physical Therapy, Inc.*,
    No. 17 Civ. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018)...............16

*Reiger* v. *PricewaterhouseCoopers LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000)...................................................................12

*Rombach* v. *Chang*,
    355 F.3d 164 (2d Cir. 2004).................................................................................2, 10

*In re Scottish Re Securities Litigation*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007)................................................................ 13-14

*South Cherry Street LLC* v. *Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)................................................................................ 2, 10-11

*Slayton* v. *American Express Co.*,
　　604 F.3d 758 (2d Cir. 2010)...........................................................3, 10

*In re Supercom Inc. Securities Litigation*,
　　No. 15 Civ. 9650 (PGG), 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)..................................19

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007)...........................................................2, 9

*Topping* v. *Deloitte Touche Tohmatsu CPA, Ltd.*,
　　95 F. Supp. 3d 607 (S.D.N.Y. 2015)...........................................................20

*Tung* v. *Bristol-Myers Squibb Co.*,
　　412 F. Supp. 3d 453 (S.D.N.Y. 2019)...........................................................13

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
　　No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .........................12, 19

*Tyler* v. *Liz Claiborne Inc.*,
　　814 F. Supp. 2d 323 (S.D.N.Y. 2011)...........................................................14

*Zhong Zheng* v. *Pingtan Marine Enterprise Ltd.*,
　　379 F. Supp. 3d 164 (E.D.N.Y. 2019) ...........................................14, 15, 16

**Statutes**

15 U.S.C. § 78j(b) ........................................................... *passim*

15 U.S.C. § 78t(a) ...........................................................22

15 U.S.C. § 78t(b) ........................................................... *passim*

15 U.S.C. § 78u-4(b) ...........................................................20

## PRELIMINARY STATEMENT

This case concerns an attempt by Plaintiff Keith D. Norman to transform Cronos Group Inc.'s decision to restate its accounting for several third-party transactions into a supposed scheme to defraud investors.  Cronos's error in accounting for these transactions was identified and voluntarily disclosed to investors after an internal investigation overseen by the Cronos Board of Directors' Audit Committee.  Plaintiff seizes on this restatement, but altogether fails to plead any facts that Defendants intended to deceive or defraud Cronos's investors.  As a result, Plaintiff does not meet the strict standards for pleading securities fraud and his Consolidated Amended Complaint should be dismissed.

Cronos is a Canada-headquartered global cannabinoid company that manufactures and distributes hemp-based products in the United States and cannabis products where lawful in other countries' medical and adult-use markets.  (Compl. ¶¶ 27, 31, 36, 38.)  On March 17, 2020, Cronos announced that it would reduce its previously reported net revenue for the first three quarters of 2019 because it had incorrectly booked revenues from third-party transactions involving (i) exchanges of cannabis dry flower for cannabis resin and extracts and (ii) a sale of dried cannabis that was later deemed a consignment sale.  Consistent with its March 17 announcement, Cronos restated its financial results for the first three quarters of 2019 in an amended Form 10-K, filed on March 30, 2020.  Relying on this restatement, Plaintiff alleges that Defendants' public statements regarding Cronos's revenues and accounting compliance were fraudulent and asserts claims under (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants and (ii) Section 20(a) of the Exchange Act against Michael Gorenstein (Cronos's then-Chairman, President and Chief Executive Officer) and Jerry F. Barbato (Cronos's Chief Financial Officer) (together, the "Individual Defendants").

Fatal to Plaintiff's claims, "[a] restatement, by itself, is insufficient to plead a securities fraud claim." *In re MDC Indus. Direct Co.*, 283 F. Supp. 2d 838, 849 (E.D.N.Y. 2003). Likewise, "allegations of [accounting] violations or accounting irregularities . . . alone" are not enough. *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Rather, the Private Securities Litigation Reform Act ("PSLRA") requires Plaintiff to allege "with particularity facts giving rise to a *strong* inference that the defendant[s] acted with . . . an intent to deceive, manipulate, or defraud." *ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (internal quotation marks omitted) ("*IBEW*").

Plaintiff does not come close to meeting the "[e]xacting pleading requirement[]" for scienter. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). (*See infra* Section I.) Plaintiff makes no serious attempt to show that Defendants had "motive and opportunity to commit fraud." *IBEW*, 553 F.3d at 198. Nor could he. Far from obtaining "concrete" and "personal" benefits from the alleged fraud, *Gross* v. *GFI Grp., Inc.*, 310 F. Supp. 3d 384, 394 (S.D.N.Y. 2018), the Individual Defendants *increased* their holdings in Cronos throughout the alleged class period, which negates an inference that they acted with scienter. *See Rombach* v. *Chang*, 355 F.3d 164, 177 (2d Cir. 2004). Instead, Plaintiff relies on a grab-bag of conclusory allegations in an attempt to plead that Defendants acted with recklessness. But these allegations, separately and together, are wholly inadequate to give rise to a strong inference of scienter because none show "an extreme departure from the standards of ordinary care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it*." *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). The far more plausible inference is the straightforward one: the restatement of Cronos's revenues was due to an unintentional accounting error that was later recognized and promptly corrected.

Plaintiff's claims also fail in other respects. *First*, Plaintiff's claims based on the Individual Defendants' Sarbanes-Oxley ("SOX") certifications contain no allegations that the Individual Defendants "did not genuinely believe" the certifications were true when made, which mandates dismissal of those claims. *Lachman* v. *Revlon, Inc.*, 2020 WL 5577406, at \*12 (E.D.N.Y. Sept. 17, 2020). *Second*, Plaintiff fails to plead loss causation for two of the four dates on which Plaintiff alleges there were "corrective disclosures," because on one (February 24, 2020), Plaintiff alleges no revelation of any supposed fraudulent conduct, and on the other (March 30, 2020), Plaintiff does not allege that the market learned of any new material information. (*See infra* Section II.) *Third*, for all of the reasons that Plaintiff does not plead a claim under Section 10(b) of the Exchange Act, he also does not plead a "control person" claim under Section 20(a). (*See infra* Section III.)

In short, Plaintiff has fallen far short of his burden to plead facts that show that Defendants had any intent to defraud their investors and the Complaint should be dismissed.

## ALLEGATIONS OF THE COMPLAINT

### A.    Cronos's Business and the MediPharm Agreements

Since its founding in 2012, Cronos has grown rapidly, capitalizing on recent legislation around the world creating an expanding legal market for cannabis and cannabis-derived products.[1]

---

[1]    For purposes of this motion, Defendants accept well-pleaded allegations. *See Parkcentral Global Hub Ltd.* v. *Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014). The Court may consider "documents incorporated into the complaint by reference"; "public disclosure documents filed with the SEC," *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 763 n.2 (2d Cir. 2010) (quoting *ATSI Commc'ns. Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); "documents integral to the complaint"; and "facts of which judicial notice may be properly taken," *BankUnited, N.A.* v. *Merritt Envtl. Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) (internal quotation marks omitted). Plaintiff makes "clear, definite and substantial reference[s]" to a series of analyst reports, Cronos's earnings calls for 1Q19 and 3Q19, and certain of Cronos's press releases, and thus they are incorporated by reference into the Complaint. *DeLuca* v. *AccessIT Grp., Inc.*, 695

(Compl. ¶ 27.)    Today, Cronos maintains a sizeable brand portfolio, including PEACE NATURALS™, Spinach™, COVE™, Lord Jones™, and PEACE+™.  (*See id.*)   Cronos's common stock is listed under the ticker "CRON" on both the Toronto Stock Exchange ("TSX") and the NASDAQ.  (*Id.* ¶¶ 36, 38.)  Because Cronos operates in a rapidly growing industry, its business plan is focused on long-term expansion.  (*Id.* ¶ 4.)

In December 2018, Cronos announced a US$1.8 billion investment by Altria Group, a global tobacco industry leader, in exchange for a 45% stake in Cronos.  (*Id.* ¶¶ 39-40.)  The investment was designed to provide an influx of capital for future expansion and an experienced partner to help Cronos accomplish its long-term strategic goals, including innovation, research, and increasing Cronos's product offerings.  (*See* Ex. 6 at 1 (cited at Compl. ¶ 46); *see also* Ex. 1 at 2-3 (cited at Compl. ¶¶ 48, 77).)[2]

As part of its long-term expansion efforts, Cronos entered into a number of partnership agreements both before and after the Altria investment.  For example, in August 2018, Cronos announced an agreement with an affiliate of Colombia-based Agroidea SAS to partner on products for Latin American and global markets.  (*See* Ex. 7 at 3 (cited at Compl. ¶ 46); Ex. 1 at 3 (cited at Compl. ¶¶ 48, 77).)   And, in September 2018, Cronos entered into a three-year research and development partnership with Ginkgo Bioworks to develop innovative cannabinoid production technology.  (*See* Ex. 7 at 3 (cited at Compl. ¶ 46).)  Cronos's expansion efforts continued in 2019, including developing infrastructure for exports into Germany, establishing a research and development center in Israel, and acquiring subsidiaries of Los Angeles-based Redwood Holding

---

F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citation omitted); (*see* Compl. ¶¶ 12, 14, 45-46, 49, 56, 72, 77, 90, 93, 101-04, 111, 136-37, 144).

[2]    All exhibits are from the Declaration of David M.J. Rein, dated February 8, 2021.

Group for the production and distribution of hemp-derived CBD-infused skincare, wellness and other consumer products.  (*See* Ex. 8 at 1, 3-4 (cited at Compl. ¶ 56); *see also* Ex. 1 at 4 (cited at Compl. ¶¶ 48, 77); Ex. 2 at 2 (cited at Compl. ¶¶ 72, 90).)  Cronos also launched PEACE+™ in 2019, a US-based CBD brand, and completed the initial public offering of Cronos Australia, in which Cronos holds a 31% ownership stake.  (*See* Ex. 2 at 3-4 (cited at Compl. ¶¶ 72, 90).)

Among these transactions were agreements in 2019 between Cronos and MediPharm Labs ("MediPharm"), a third-party manufacturer specializing in the production of high-quality cannabis oil, concentrates, and other derivative products, under which (i) MediPharm agreed to "supply Cronos Group . . . with approximately C$30 million of high-quality private label cannabis concentrate over 18-months," and (ii) Cronos "selected MediPharm Labs' state of the art extraction facility . . . as a preferred partner to fulfill certain of its processing needs" (together, the "MediPharm Agreements").  (Compl. ¶ 52; *see also id.* ¶¶ 8, 53-55.)

### B.    Restatement of 2019 Financial Results

On May 9, August 8, and November 12, 2019, Cronos filed with the SEC financial statements for the first, second, and third quarters of 2019, respectively.  (Compl. ¶¶ 76, 85, 89.) Cronos reported revenues of C$6,470,000 for 1Q19, C$16,707,000 of combined total revenue for 1Q19 and 2Q19, and C$12,700,000 million for 3Q19.  (*Id.*)  Accompanying each of these filings, the Individual Defendants signed required Sarbanes-Oxley ("SOX") certifications stating that "[b]ased on [their] knowledge," Cronos's financial statements "d[id] not contain any untrue statement of a material fact or omit to state a material fact" and that Cronos's internal controls were "designed . . . to provide reasonable assurance regarding the reliability of financial reporting." (*Id.* ¶ 82.)

On February 24, 2020, Cronos announced that it would postpone its 4Q19 and 2019 full year earnings release and conference call based on a delay in completion of its financial statements.

(Compl. ¶ 93; *see also* Ex. 3.)  On March 2, 2020, Cronos informed the SEC and investors through a Notice of Late Filing of its inability to file a complete Form 10-K for fiscal year 2019 "due to a continuing review by the Audit Committee of the Company's Board of Directors, with the assistance of outside counsel and forensic accountants, of several bulk resin purchases and sales of products through the wholesale channel and the appropriateness of the recognition of revenue from those transactions."  (Compl. ¶ 96.)

Unsurprisingly, upon the disclosure of the delay in completion of Cronos's financial statements, various research analyst firms weighed in.  One noted that the "announcement could portend potentially significant restatements."  (Ex. 10 at 1 (cited at Compl. ¶ 102).)  That same analyst firm nonetheless advised that "investors should focus on [Cronos's] strategic partnerships, balance sheet strength, M&A optionality, management quality, access to U.S. consumers, investments in R&D, intellectual property and distribution footprint rather than placing too much emphasis on 2019 results in Canada." (Ex. 10 at 2 (cited at Compl. ¶ 102).)  Another analyst posed the question "why would the company be aggressive on something which was already so tiny, its revenue, when said rev[enue] is still not a material driver of value."  (Ex. 11 at 1 (cited at Compl. ¶ 101).)

On March 17, 2020, Cronos announced that it had determined "on the recommendation of the Audit Committee of the Company's Board of Directors and after consultation with KPMG LLP [("KPMG")], the Company's independent registered public accounting firm, that Cronos Group's previously issued unaudited interim financial statements for first, second and third quarters of 2019 . . . w[ould] be restated and reissued."  (Ex. 4 at 1; *see also* Compl. ¶ 104.)  Cronos explained that "the Audit Committee of the Company's Board of Directors ha[d] been conducting a review of certain bulk resin purchases and sales of products through the wholesale channel, and

the restatement is being made to eliminate certain of these transactions through the wholesale channel." (Ex. 4 at 1; *see also* Compl. ¶ 106.)  Cronos disclosed that the restatement would reduce revenue for 1Q19 by C$2.5 million, and for 3Q19 by C$5.1 million.  (Compl. ¶ 107; *see also id.* at ¶ 14.)

On March 30, 2020, Cronos restated its unaudited quarterly financial statements for the first three quarters of 2019 and filed a complete version of its 2019 Annual Report reflecting the previously disclosed restatement.  (Compl. ¶ 116.)  Confirming its March 17 announcement, Cronos explained that the Company had incorrectly recognized revenue for transactions involving (i) exchanges of cannabis dry flower for cannabis resin in simultaneous transactions entered into in contemplation of one another, and (ii) a sale of dried cannabis that was later deemed to be a consignment sale.  (*Id.* ¶ 118.)  Cronos also removed MediPharm from its list of "major customers" in both its Annual Report and quarterly reports for 1Q19 and 3Q19.  (*Id.* ¶ 119.)  The restatement further included findings from KPMG that "the Company did not maintain effective internal control over financial reporting as of December 31, 2019."  (Ex. 5 at Ex. 23.1 (cited at Compl. ¶¶ 116, 119, 121-28); *see also* Compl. ¶¶ 121-23.)  Despite this restatement, Cronos's net revenue almost doubled year-over-year, from C$12.1 million in fiscal year 2018 to C$23.8 million in fiscal year 2019.  (*See* Ex. 5 at 48 (cited at Compl. ¶¶ 116, 119, 121-28).)

C.      **Plaintiff's Claims**

Plaintiff asserts claims under Section 10(b) of the Exchange Act against all Defendants and under Section 20(a) of the Exchange Act against the Individual Defendants.  Plaintiff purports to bring his claims on behalf of investors who purchased Cronos's securities on the NASDAQ between May 9, 2019 and March 30, 2020.  (Compl. ¶ 154.)

Plaintiff challenges Defendants' statements about the Company's revenue and internal controls for the first three quarters of 2019, alleging that, due to purported "pressure Cronos was

under to meet the analyst expectations of revenue growth," they "artificially inflated and/or maintained the price of Cronos securities" based on "higher than true revenue" and that "the Company had internal controls when it did not." (Compl. ¶¶ 49, 143; *see also id.* ¶¶ 74-92, 144-45, 160-74.) Plaintiff does not assert that any Defendant had actual knowledge that any statement was false when made. Instead, Plaintiff claims that the Individual Defendants acted with scienter—supposedly imputable to Cronos—based on: (i) the Individual Defendants' "sophistication"; (ii) the "size" of the restatement and "egregiousness" of the accounting errors; (iii) Cronos's agreements with MediPharm being a "core operation" of Cronos; (iv) the Individual Defendants' SOX certifications; and (v) an article speculating about the possibility of Aurora Cannabis Inc., a competitor, improperly accounting its revenue. (*Id.* ¶¶ 129-38.)

Plaintiff claims that "the truth was revealed" to the market on four dates: (i) February 24, 2020, when Cronos announced it would delay its 4Q19 and 2019 full-year earnings call based on a delay in completion of its financial statements; (ii) March 2, 2020, when Cronos filed a Notice of Late Filing, informing both the SEC and investors of its inability to file a complete Form 10-K due to the Audit Committee's continuing review; (iii) March 17, 2020, when Cronos announced that it would restate its revenues for the first three quarters of 2019; and (iv) March 30, 2020, when Cronos restated its revenue for the first three quarters of 2019 and filed its amended 10-K with the SEC. (*Id.* ¶ 144.) Plaintiff alleges that Cronos's share price declined on each of these dates.

## ARGUMENT

## I.     THE COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING A STRONG INFERENCE THAT DEFENDANTS ACTED WITH FRAUDULENT INTENT.

Securities claims face appreciably higher pleading hurdles than the usual requirement of "plausib[ility]." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Under the PSLRA, Plaintiff must "plead 'with particularity facts giving rise to a *strong* inference that the defendant

acted with' . . . an intent 'to deceive, manipulate, or defraud.'" *IBEW*, 553 F.3d at 198 (quoting 15 U.S.C. § 78u-4(b)(2) and *Tellabs*, 551 U.S. at 319). Courts in the Second Circuit require that Plaintiff "establish scienter on a defendant-by-defendant basis." *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *8 (E.D.N.Y. Aug. 6, 2019) (citing *Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016)). Although well-pleaded factual allegations are taken as true, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns. Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2017).

"[T]o qualify as a 'strong inference, the inference of scienter . . . must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *IBEW*, 553 F.3d at 198 (quoting *Tellabs*, 551 U.S. at 314). A complaint that alleges an inference of scienter that is "merely plausible or reasonable" must be dismissed. *Id.* In determining whether a strong inference "can be reasonably drawn, courts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from the facts alleged." *IBEW*, 553 F.3d at 198.

Plaintiff here does not come close to meeting the "[e]xacting" pleading requirements of the PSLRA. *Tellabs*, 551 U.S. at 313. Plaintiff relies on a hodgepodge of general and unsupported allegations which, separately and together, are not enough as a matter of law to plead fraudulent intent. Importantly, because Plaintiff does not allege that Defendants had actual knowledge that their statements were false when made, he must allege particularized facts demonstrating either (i) "motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *IBEW*, 553 at 198. Plaintiff has done neither.

### A.   The Complaint Does Not Allege Motive and Opportunity.

To establish scienter based on "motive and opportunity," Plaintiff must plead particularized facts that establish motive ("concrete" and "personal" benefits received because of the false statements), as well as opportunity (the "means" and "likely prospect" of achieving the benefits).

*Gross* v. *GFI Grp., Inc.*, 310 F. Supp. 3d 384, 394 (S.D.N.Y. 2018).   Plaintiff's Complaint, however, is devoid of any allegation that either Individual Defendant stood to gain a "concrete" and "personal" benefit due to the alleged misstatements, and does not even attempt to plead that either Individual Defendant had the opportunity to do so.

Notably, Plaintiff does not plead any "unusual insider trading activity during the class period," which "may permit an inference of bad faith and scienter." *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).   To the contrary, the Individual Defendants *increased* their Cronos holdings, which is flatly inconsistent with any knowledge or belief that the stock price was artificially inflated by misstatements.[3]   The fact that "none of the defendants sold shares during the relevant period . . . negat[es] any inference of scienter." *Abbad* v. *Amman*, 285 F. Supp. 2d 411, 418 n.5 (S.D.N.Y. 2003); *see also Rombach*, 355 F.3d at 177 (affirming dismissal for failure to plead scienter where "[p]laintiffs [did] not allege that defendants sold stock or profited in any way during the relevant period" and "plaintiffs nowhere allege[d] that defendants engaged [in the claimed conduct] to secure personal gain").

And Plaintiff's theory that Altria's investment meant that Cronos needed to show "revenue growth" does not come close to alleging a fraudulent motive.   (Compl. ¶ 43.)   All corporations and their executives seek to grow revenues.   Accordingly, the law is settled that "in attempting to show

---

[3]      As of May 8, 2019, Mr. Gorenstein (or affiliated persons or entities) owned 1,739,915 shares of Cronos's common stock.   (*See* Ex. 12 at 10.)   As of December 31, 2019, Mr. Gorenstein's holding was unchanged.   (*See* Ex. 13.)   By April 29, 2020, Mr. Gorenstein's ownership had increased to 13,142,120 shares.   (*See* Ex. 15 at 25.)   Mr. Barbato assumed his role of Chief Financial Officer on April 15, 2019.   (*See* Ex. 12 at 23 n.4.)   As of December 31, 2019, Mr. Barbato held no Cronos shares.   (*See* Ex. 14.)   By April 29, 2020, Mr. Barbato owned 7,522 shares.   (Ex. 15 at 25.)   The Court may consider "public disclosure documents filed with the SEC" on a motion to dismiss.   *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 763 n.2 (2d Cir. 2010); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 582-83 (S.D.N.Y. 2011) ("[C]ourts may use information from SEC filings regarding a defendant's stock sales to determine whether such sales were 'unusual' or 'suspicious'" for purposes of scienter) (citing cases).

that a defendant had fraudulent intent, it is not sufficient to allege goals that are possessed by virtually all corporate insiders, such as the desire to . . . sustain the appearance of corporate profitability." *S. Cherry St.*, 573 F.3d at 109 (internal quotation marks omitted).

### B.   The Complaint Does Not Allege Conscious Misbehavior or Recklessness.

Having no cognizable allegations of motive and opportunity, Plaintiff attempts to plead scienter by alleging conscious misbehavior or recklessness.   To succeed, Plaintiff must allege with particularity how the Individual Defendants' behavior was "'an extreme departure from the standards of ordinary care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it*.'"  *S. Cherry St.*, 573 F.3d at 109 (quoting *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000)).   Where, as here, Plaintiff fails to establish motive, "'the strength of the circumstantial allegations must be correspondingly greater.'"  *Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (quoting *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

Plaintiff's conclusory, scattershot allegations of recklessness do not meet the high standards required in this Circuit.    Plaintiff points to (i) the Individual Defendants' "sophistication"; (ii) the "size" of the restatement and "egregiousness" of the alleged "false accounting"; (iii) the MediPharm agreements being a "core operation of Cronos"; (iv) the Individual Defendants' SOX certifications; and (v) an analyst report speculating about the possibility of Aurora Cannabis Inc., a competitor, engaging in improper accounting of revenue. (Compl. ¶¶ 129-38.)   Each of these theories of recklessness fail on their face because they do not support a claim that Defendants "knew facts or had access to information suggesting that their public statements were not accurate."  *City of Warren Police & Fire Ret. Sys.* v. *Foot Locker, Inc.*, 412 F. Supp. 3d 206, 228 (E.D.N.Y. 2019) (quoting *Emps.' Ret. Sys. of Gov't of V.I.* v. *Blanford*, 794 F.3d 297, 306 (2d Cir. 2015)); *see also Novak*, 216 F.3d at 308 ("[S]ecurities fraud claims

typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements.").

***Magnitude of the Restatement.***   Plaintiff's Complaint heavily relies on his claim that the "size" and "egregiousness" of the restatement show that Defendants were reckless.   (Compl. ¶¶ 131, 133.)   But, "it is well established that the size of the [alleged] fraud alone does not create an inference of scienter." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009), *aff'd sub nom. Condra* v. *PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009) (internal quotation marks omitted).   Indeed, "[t]he fact of an error, even a large error, does not suggest knowledge or an intent to misstate when the financial results were originally published" because "[a] restatement is merely a correction, after the fact, of an accounting or other error in financial results." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014); *see also Reiger* v. *PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) ("To travel from magnitude of fraud to evidence of scienter, the court must blend hindsight, speculation and conjecture to forge a tenuous chain of inferences.").   As a result, rather than relying on the size of the restatement, Plaintiff must also allege that Defendants "had [a] contemporaneous basis to believe that the information they related was incorrect." *Dobina* v. *Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 251 (S.D.N.Y. 2012); *see also Turquoise Hill*, 2014 WL 7176187, at *7 ("The magnitude of the restatement . . . must be presented in tandem with other circumstantial evidence to suggest scienter.").   Plaintiff has not.   And, characterizing accounting errors as "egregious" does not infer scienter absent evidence that Defendants were reckless or knew Cronos's accounting was inaccurate. *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004) ("[A] Restatement of financial results or allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient

-12-

to state a securities fraud claim." (internal quotation marks and citations omitted)); *see also Janbay* v. *Canadian Solar, Inc.*, 2012 WL 1080306, at \*2, \*10-14 (S.D.N.Y. Mar. 30, 2012) (no inference of scienter despite "material restatements from the healthy profit of more than \$15 million . . . that had previously been reported to an admitted loss of \$15.4 million"); *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 596-97 (S.D.N.Y. 2011) (no inference of scienter despite write-offs "causing previously-reported net income to shrink by 72%").  The Complaint is devoid of such allegations.

 ***Individual Defendants' Sophistication.***  Plaintiff speculates that the accounting errors "would have been incredibly obvious" to Mr. Barbato because he previously worked as an auditor and has degrees in accounting and business administration.  (Compl. ¶ 135.)  Plaintiff also posits that Mr. Gorenstein "was clearly sophisticated enough to realize" the erroneous accounting of Cronos's revenues based on his background as a lawyer.  (*Id.*)  Courts routinely recognize, however, that "[a]llegations of a defendant's experience and expertise . . . are insufficient to raise an inference of scienter."  *Abely* v. *Aeterna Zentaris Inc.*, 2013 WL 2399869, at \*18 (S.D.N.Y. May 29, 2013).  Pointing to the Individual Defendants' professional experience cannot "establish that the Individual Defendants were actually privy to, or failed to monitor, specific statements or reports contradicting their public statements."  *Bd. of Trs. of Ft. Lauderdale General Emps.' Ret. Sys.* v. *Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011), *aff'd*, 475 F. App'x 353 (2d Cir. 2012).  Indeed, "[c]onclusory allegations of a defendant's skill or experience do not suffice unless it is specifically shown how or why the [defendant] should have believed [the challenged statements] to be inaccurate."  *Tung* v. *Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019) (internal quotation marks omitted).[4]  Plaintiff makes no attempt to do so here.

---

[4] The cases on which Plaintiff relied in its pre-motion letter (*see* ECF No. 41, at 2), unlike here, alleged far more than the defendant's "sophistication."  For example, *In re Scottish Re Group Securities Litigation*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007), included allegations of

*Core Operations.*  Plaintiff attempts to rely on the core operations doctrine by speculating that, because the agreements were tied to expenses of C\$30 million over a period of 18 months, Defendants must have known "the agreements' terms" and how they "were being accounted for." (Compl. ¶ 132.)  To begin, it is questionable whether the core operations doctrine that Plaintiff invokes even continues to exist under the PSLRA.  *See Okla. Law Enf't Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at \*7 (S.D.N.Y. Jan. 10, 2020) (expressing "considerable doubt" that the doctrine survived the PSLRA and noting "many courts have held it is no longer valid" (internal quotation marks omitted)); *Zhong Zheng* v. *Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019) (Second Circuit has "questioned whether the core operation doctrine has survived enactment of the PSLRA" (internal quotation marks omitted)).[5] But even if it does, it does not apply here.

*First*, the doctrine "typically applies only where the operation in question constitute[s] nearly all of a company's business."  *Das*, 332 F. Supp. 3d at 816 (internal quotation marks omitted); *see also Tyler* v. *Liz Claiborne Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (similar). Plaintiff does not allege that the MediPharm transactions constituted nearly all of Cronos's business.  Nor could he—Cronos nearly doubled its net revenue year-over-year, even *after* removing the MediPharm transactions.  (*See* Ex. 5 at 48.)

---

"contemporaneous circumstances" "of which [defendants] were aware," making their conduct "tantamount to conscious misbehavior."  *Id.* at 394.

[5]     In support of his invocation of the doctrine, Plaintiff pointed to *In re Avon Securities Litigation*, 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) (ECF No. 41 at 3).  But that case relies on a decision observing that the "theory at most constitutes 'supplemental support' for alleging scienter but does not independently establish scienter."  *Lipow* v. *Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015).  And, in *Avon*, the allegations of the defendants' knowledge included confidential witnesses, "daily updates," "internal reports," and "regional sales meetings" on the matters allegedly misstated, in stark contrast to Plaintiff's untethered speculation here.

*Second*, to apply the doctrine, Plaintiff must specifically plead "contradictory facts of critical importance" that "either were apparent, or should have been apparent." *Zhong Zheng*, 379 F. Supp. 3d at 181.   Plaintiff alleges only that Defendants should have been aware that the MediPharm Agreements were improperly booked as revenue, because Cronos listed MediPharm as one of its largest customers in its public disclosures, even though MediPharm should not have been treated as a customer for accounting purposes.   (Compl. ¶ 134.)   But Plaintiff's theory assumes, without pointing to facts, that the Individual Defendants had knowledge of the mechanics of the MediPharm contracts, and must have also known that the corresponding accounting treatment was wrong.  *See Aceto*, 2019 WL 3606745, at *10 ("Yet—assuming the [core operations] doctrine applies—plaintiff does not explain 'what contradictory facts of critical importance' should be imputed to the individual defendants' knowledge." (citation omitted)).

*Third*, the core operations doctrine is not "independently sufficient to raise a strong inference of scienter."  *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) (internal quotation marks omitted); *see also Aceto*, 2019 WL 3606745 at *10 ("At most, [the core operations doctrine] constitutes supplemental support for alleging scienter but does not independently establish scienter." (internal quotation marks omitted)).   Plaintiff cannot commandeer the core operations doctrine to transform his other insufficient and conclusory allegations into particularized facts. *Aceto*, 2019 WL 3606745, at *10 (declining to "find that plaintiff's reliance on the core operations theory yields the cogent and compelling inference required" where "plaintiff's other scienter allegations" were "not persuasive" (internal quotation marks omitted)).

**SOX Certification.**  Plaintiff asks this Court to infer recklessness based on Defendants having signed SOX certifications attesting to their review of "Cronos's financial statements" and

oversight of "Cronos' internal controls." (Compl. ¶ 130.) Courts in this Circuit have consistently held, however, that "the signing of a SOX certification, without more, is insufficient to plead scienter," because "allowing [SOX] certifications to create an inference in every case would eviscerate the pleading requirements for scienter set forth in the PSLRA." *Zhong Zheng*, 319 F. Supp. 3d at 181 (internal quotation marks omitted). This something "more" that Plaintiff must plead is "facts to show a concomitant awareness of or recklessness to the material misleading nature of the statements." *Aceto*, 2019 WL 3606745, at *8 (internal quotation marks omitted). Where, as here, Plaintiff does not plead that the certifying Defendant "had reason to know" of the statements' inaccuracy, the SOX certifications "add nothing substantial" to the scienter allegations. *Reilly* v. *U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018) (internal quotation marks omitted).

For similar reasons, Plaintiff's claims based on the Individual Defendants' SOX certifications should be dismissed because they do not allege a material misstatement. In their SOX certifications, the Individual Defendants stated that "*based on [their] knowledge*," Cronos's financial statements "d[id] not contain any untrue statement of a material fact or omit to state a material fact" and that Cronos's internal controls were "designed . . . to provide reasonable assurance regarding the reliability of financial reporting." (Compl. ¶ 82.) It is well-settled that SOX certifications are "statements of opinion" and are "only actionable if the opinion turns out to be incorrect *and* the speaker did not genuinely believe it when the statement was made." *Lachman* v. *Revlon, Inc.*, 2020 WL 5577406, at *12 (E.D.N.Y. Sept. 17, 2020).[6] As discussed, Plaintiff has

---

[6]     *See also In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24 (S.D.N.Y. Sept. 9, 2019) (SOX certifications which "contain an important qualification that the certifying officer's statements are true based on his or her knowledge" are "statement[s] of opinion" and "[a]ccordingly, plaintiffs must allege more than that the financial statements themselves were

pleaded no particularized facts that Defendants "did not genuinely believe" the statements in their SOX certifications to be true when made. Accordingly, Plaintiff's claims based on the SOX certifications should be dismissed. *See Menaldi* v. *Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017) (dismissing SOX claims which "contained an important qualification that the certifying officer's statements are true 'based on his knowledge'" where the complaint "d[id] not adequately allege that [defendants] had actual knowledge" of falsity).

*The Cannalysts Article.* Finally, Plaintiff asserts Defendants' scienter may be inferred based on an article by a writer dubbed "GoBlueCdn" published on a blog issued by The Cannalysts, which operates an internet forum focused on the cannabis industry. Plaintiff describes this article as "alleging that" Aurora Cannabis Inc. ("Aurora")—a competitor of Cronos—"had engaged in round-trip transactions."[7] (Compl. ¶ 136.) This article, which was not about Cronos, does not give rise to a strong inference of scienter against Defendants. *First*, the author states that the article "explore[s] the *potential for Aurora* to inflate Sales, Gross Margin and EBITDA" and "the *potential* to double dip on sales." (Ex. 9 at 1, 6 (emphases original).) Making clear that he is engaging in conjecture, "GoBlueCdn" described his "tinfoil hat" as "adjusted tightly." (*Id.* at 4.) *Second*, it is plainly irrelevant. Speculation by a writer wearing his self-described tinfoil hat about a Cronos competitor did not notify Defendants that their own statements were false when made.[8]

---

inaccurate"; "[t]hey must allege that defendants knew that the financial statements were inaccurate" (internal quotation marks omitted)).

[7]      The Complaint states that The Cannalysts article was been published on October 17, 2019. (Compl. ¶ 136.) The report was, in fact, published on October 9, 2019. (*See* Ex. 9.)

[8]      Plaintiff makes much of the fact that Cronos was an investor in Aurora and, therefore, should have been aware of "major news" regarding "its investment." (Compl. ¶ 137.) But this still has nothing to do with Cronos's own accounting. Moreover, Cronos sold all of its investment in Aurora in March 2019, several months *before* publication of The Cannalysts article. (*See* Ex. 1 at 6.)

Information "available to [Defendants]" about "a *different* company" does not lead to the inference that Defendants were reckless in disclosing their own revenues.[9]  *Ferrellgas Partners*, 2018 WL 2081859, at *17.   Indeed, concerns at a company's *own subsidiaries*—let alone an unrelated company—do not give rise to an inference of scienter.  *See Malin* v. *XL Cap. Ltd.*, 499 F. Supp. 2d 117, 154 (D. Conn. 2007) (no scienter where "there are allegations of accounting improprieties and a lack of internal controls at [the subsidiary], [but] there is no allegation that [the parent company] or any of the Individual Defendants were actually aware of those alleged improprieties"); *see also In re Marsh & McIennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006) ("Nor do the problems at other MCC subsidiaries provide a strong inference of recklessness with regard to misconduct at Marsh, a wholly separate subsidiary.").

*       *       *

Each of Plaintiff's allegations, independently and taken as a whole, are insufficient as a matter of law to give rise to a strong inference of scienter.  Plaintiff fails to point to a single fact "contradicting [Defendants'] public statements" of which Defendants were aware.  *Novak*, 216 F.3d at 308.  And "[t]he Complaint ties none of the scienter allegations to any Individual Defendant." *Janbay*, 2012 WL 1080306, at *11.  Plaintiff's theory boils down to the position that, because there was a restatement, scienter should be assumed.  But it is "well settled that [the] mere fact of a restatement . . . does not support a strong or even weak inference of scienter." *City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008).

---

[9]     Plaintiff asserts *Ferrellgas* "merely rejected the specific allegations as conclusory."  (ECF No. 41 at 3 n.1.)  In fact, Judge Sullivan rejected that "as officers of a *different* company" the defendants must have had knowledge of the "financial woes" of a company they were acquiring. 2018 WL 2081859, at *18.

Plaintiff cannot remedy the absence of allegations beyond the restatement by stacking up conclusory allegations and asserting that "zero plus zero plus zero plus zero plus zero adds up to something." *Id.* at 475; *see also In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 449 (S.D.N.Y. 2005) ("Nor do plaintiffs save their claims from dismissal by arguing that their various allegations of motive and opportunity and conscious misbehavior or recklessness—though insufficient when considered in isolation—are somehow adequate when considered together."). Courts faced with similar amalgams of conclusory scienter allegations hold them deficient, and the Court should do so here. *See, e.g.*, *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at \*31-32 (S.D.N.Y. Oct. 10, 2018) (no scienter where plaintiff relied on core operations theory plus magnitude of the misstatement); *Turquoise Hill*, 2014 WL 7176187, at \*7-8 (no scienter where plaintiff relied on SOX certifications, core operations doctrine, magnitude of the restatement, and defendants' corporate positions).

## II.   PLAINTIFF DOES NOT PLEAD LOSS CAUSATION FOR TWO ALLEGED CORRECTIVE DISCLOSURES.

To plead a securities fraud claim, Plaintiff must allege facts showing that the alleged "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *see also* 15 U.S.C. § 78u-4(b)(4); *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 342 (2005). Although, loss causation inquiries can sometimes be "fact-based," a court nonetheless must dismiss a complaint that does "not adequately [plead] facts which, if proven, would show that [the] loss was caused by the alleged misstatements as opposed to intervening events." *Lentell*, 396 F.3d at 174 (internal quotation marks omitted) (affirming dismissal for failure to plead loss causation); *see also Janbay*, 2012 WL 1080306, at \*15 (dismissing for failure to plead loss causation); *Alaska Laborer Emp'rs Ret. Fund* v. *Scholastic Corp.*, 2010 WL 3910211, at \*6-7 (S.D.N.Y. Sept. 30,

2010) (same).  Here, for two of the four dates where Plaintiff alleges that "the truth was revealed" (Compl. ¶ 144), Plaintiff does not allege facts showing that the revelation of any misstatements caused stock-price declines.

*February 24, 2020.*  Plaintiff claims that "the truth was revealed" on February 24, 2020 "when Cronos announced it would delay its earnings call."  (Compl. ¶ 144(a).)  As quoted in the Complaint, Cronos stated: "The Company has had a delay in the completion of its financial statements and will make a further announcement in a subsequent press release to schedule the date and time of the earnings conference call."  (Compl. ¶ 93.)

Plaintiff cannot claim loss causation based on this February 24 announcement, because nothing about the announcement "reveal[s] the [alleged] truth that [Cronos] had engaged in . . . any wrongdoing asserted in the Complaint."  *Janbay*, 2012 WL 1080306, at *15.  Courts require that "there must be some identification of a disclosure of the *fraud* that causes a drop in the stock price," *Bensley* v. *FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011), otherwise "any investor who loses money in the stock market could sue to recover for those losses without alleging that a fraudulent scheme was ever disclosed and that the disclosure caused their losses."  *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2005).  Here, Cronos's February 24 "announcement included no details that would have informed shareholders about fraudulent activities at the Company."  *Topping* v. *Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015).  As Judge Sweet recognized, an "announcement of a delay in the reporting of [earnings] does not establish loss causation because it fails to reveal" the alleged fraud.  *Janbay*, 2012 WL 1080306, at *15; *see also In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (dismissing for failure to plead loss causation where

-20-

"none of the . . . public disclosures referenced in Plaintiff's Complaint," including that company "would not be able to file its 10–Q . . . on time," "contain[ed] a disclosure of wrongdoing").

**March 30, 2020.**  Plaintiff also fails to plead loss causation as to the alleged stock-price decline on March 30, 2020.  Plaintiff seeks to establish loss causation based on events that "confirm[] what the market already knew." *DoubleLine Cap. LP* v. *Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 459 (S.D.N.Y. 2018).  But there is no loss causation where negative news coverage reveals "facts already known to the market." *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2009), *aff'd*, 591 F.3d 501 (2d Cir. 2010); *cf. Joffee* v. *Lehman Bros., Inc.*, 410 F. Supp. 2d 187, 194 (S.D.N.Y. 2006) (no loss causation when the alleged misinformation "was never concealed" from the market (internal quotation marks omitted)).

Plaintiff attempts to plead loss causation based on information in Cronos's amended Form 10-K, which it filed on March 30, 2020, and which reflected the restatement.  (Compl. ¶ 113.)  But Plaintiff admits that *prior* to Cronos's March 30, 2020 filing of the amended Form 10-K, the market was aware that:  (i) Cronos was internally investigating the recognition of revenue for certain "bulk resin purchases and sales of products through the wholesale channel" (Compl. ¶ 96); (ii) as a result of the investigation, Cronos would be restating its revenue (Compl. ¶ 104); (iii) the restatement would result in a reduction of net revenue for the first quarter of 2019 by about C$2.5 million and for the third quarter of 2019 by about C$5.1 million (Compl. ¶ 107); and (iv) the SEC had "requested that [Cronos] retain and preserve all records about revenue recognition related to bulk resin purchases" (Compl. ¶ 112).  The Complaint alleges no material new information regarding the alleged fraud revealed on this date.  Indeed, in his pre-motion letter, Plaintiff claimed that "new information was revealed" on this date, but could point to no specifics.  (*See* ECF

No. 41.)  Plaintiff's claims based on the purported February 24 and March 30, 2020 corrective disclosures should be dismissed for failure to plead loss causation.

## III.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE SECTION 20(A) CONTROL PERSON LIABILITY.

Because Plaintiff does not plead a primary Exchange Act violation, his Section 20(a) control person liability claim also cannot stand.  *See* 15 U.S.C. § 78t(a).

<strong>CONCLUSION</strong>

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: February 8, 2021
    New York, New York

Respectfully submitted,

/s/ David M.J. Rein
Sharon L. Nelles
David M.J. Rein
A. Christopher Brown
Samantha R. Briggs
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
*nelless@sullcrom.com*
*reind@sullcrom.com*
*brownac@sullcrom.com*
*briggss@sullcrom.com*

*Attorneys for Defendants Cronos Group Inc.,*
*Michael Gorenstein, and Jerry F. Barbato*