## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:     No. 2:20-CV-01310-ENV-SIL
:
IN RE CRONOS GROUP INC.                  :
SECURITIES LITIGATION                    :
:
*This Document Relates to All Actions*   :     CONSOLIDATED SECURITIES
:     LITIGATION
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Sharon L. Nelles
David M.J. Rein
A. Christopher Brown
Samantha R. Briggs
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
*nelless@sullcrom.com*
*reind@sullcrom.com*
*brownac@sullcrom.com*
*briggss@sullcrom.com*

*Attorneys for Defendants Cronos Group Inc., Michael Gorenstein, and Jerry F. Barbato*

April 22, 2021

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ................................................................................. 1

**ARGUMENT** .......................................................................................................... 2

**I.     THE OPPOSITION CONFIRMS THAT PLAINTIFF HAS NOT PLED
        THE NECESSARY STRONG INFERENCE OF SCIENTER** ................................. 2

  A.     Plaintiff Admits the Complaint Does Not Allege That Any Defendant Had
         Motive and Opportunity to Commit Fraud ............................................................ 3

  B.     Plaintiff's Reliance on the Restatement Is Not Enough to Plead Conscious
         Misbehavior or Recklessness. .................................................................................. 5

**II.    THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION FOR TWO
        PURPORTED CORRECTIVE DISCLOSURE DATES** ........................................ 15

**CONCLUSION** ....................................................................................................... 18

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abbad* v. *Amman*,
285 F. Supp. 2d 411 (S.D.N.Y. 2003)......................................................................4

*Abely* v. *Aeterna Zentaris Inc.*,
No. 12 Civ. 4711 (PKC), 2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...........................5, 10

*In re Adient plc Securities Litigation*,
No. 18 Civ. 9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)................................. 1-2

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004)....................................................................12

*Arkansas Teacher Retirement System* v. *Bankrate, Inc.*,
18 F. Supp. 3d 482 (S.D.N.Y. 2014)......................................................................15

*Atlas* v. *Accredited Home Lenders Holding Co.*,
556 F. Supp. 2d 1142 (S.D. Cal. 2008)...................................................................10

*In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................5, 10

*Bensley* v. *FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) .........................................................................16

*In re Bristol-Myers Squibb Securities Litigation*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)......................................................................5

*In re Cannavest Corp. Securities Litigation*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................6

*Cavello Bay Reinsurance Ltd.* v. *Stein*,
No. 18 Civ. 11362 (KMK), 2020 WL 1445713 (S.D.N.Y. Mar. 25, 2020) ...........................18

*City of Brockton Retirement System* v. *Shaw Group Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)..................................................................2, 11

*City of Omaha Police & Fire Retirement System* v. *Evoqua Water
Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)......................................................................4

*City of Warren Police & Fire Retirement System* v. *Foot Locker, Inc.*,
412 F. Supp. 3d 206 (E.D.N.Y. 2019) ..................................................................1, 5

*City of Warren Police & Fire Retirement System* v. *World Wrestling Entertainment, Inc.*,
   477 F. Supp. 3d 123 (S.D.N.Y. 2020)......................................................................18

*Crowell* v. *Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) ...........................................................................4

*Das* v. *Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018).......................................................................3

*In re Diebold Nixdorf, Inc., Securities Litigation*,
   No. 19 Civ. 6180 (LAP), 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ...........................7, 15

*ECA, Local 134 IBEW Joint Pension Trust of Chicago* v. *JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...........................................................................3, 4, 15

*In re Fairway Group Holding Corp. Securities Litigation*,
   No. 14 Civ. 0950 (LAP) (AJP), 2015 WL 249508 (S.D.N.Y. Jan, 20, 2015) ........................6

*In re Federated Department Stores, Inc. Securities Litigation*,
   No. 00 Civ. 6362 (RCC), 2004 WL 444559 (S.D.N.Y. Mar. 11, 2004)................................4

*Fresno County Employees' Retirement Association* v. *comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017).......................................................................8

*Freudenberg* v. *E*Trade Financial Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010).......................................................................16

*Gould* v. *Winstar Commcunications, Inc.*,
   692 F.3d 148 (2d Cir. 2012)...................................................................................12

*In re Grupo Televisa Securities Litigation*,
   368 F. Supp. 3d 711 (S.D.N.Y. 2019).......................................................................6

*Hall* v. *The Children's Place Retail Stores, Inc.*,
   580 F. Supp. 2d 212 (S.D.N.Y. 2008).......................................................................7

*Janbay* v. *Canadian Solar, Inc.*,
   No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................2, 15, 16

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001)...................................................................................1, 4

*Lachman* v. *Revlon, Inc.*,
   487 F. Supp. 3d 111 (E.D.N.Y. 2020) ......................................................................14

*Malin* v. *XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ......................5

*In re MSC Industrial Direct Co.*,
    283 F. Supp. 2d 838 (E.D.N.Y. 2003) ................................................................................2

*In re Medicis Pharmaceutical Corp. Securities Litigation*,
    Nos. 08 Civ. 1821 (PHX) (GMS), 08 Civ. 1870 (PHX) (GMS), 08 Civ. 1964
    (PHX) (GMS), 2010 WL 3154863 (D. Ariz. Aug. 9, 2010)...................................... 7-8

*In re MicroStrategy, Inc. Securities Litigation*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................... 8-9

*Norfolk County Retirement System* v. *Ustian*,
    No. 07 Civ 7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009)............................................10

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................................6, 7

*Oklahoma Firefighters Pension & Retirement System* v. *Lexmark
    International, Inc.*,
    367 F. Supp. 3d 16 (S.D.N.Y. 2019)........................................................................10

*In re Omnicom Group., Inc. Securities Litigation*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2009), *aff'd*, 591 F.3d 501 (2d Cir. 2010) .......................2, 17

*Plumbers & Pipefitters National Pension Fund* v. *Orthofix International N.V.*,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................9

*In re PXRE Group, Ltd. Securities Litigation*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom.*, *Condra* v. *PXRE Grp.
    Ltd.*, 357 F. App'x 393 (2d Cir. 2009) ...................................................................9

*Reilly* v. *U.S. Physical Therapy, Inc.*,
    No. 17 Civ. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018)...............................13

*In re Salix Pharmaceuticals, Ltd.*,
    No. 14 Civ. 8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ............................12

*In re Scholastic Corp. Securities Litigation*,
    252 F.3d 63 (2d Cir. 2001)........................................................................................10

*In re Scottish Re Group Securities Litigation*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007)........................................................................10

*SEC* v. *Alexander*,
    No. 00 Civ. 7290 (LTS) (HBP), 2004 WL 1468528 (S.D.N.Y. June 28, 2004)....................11

*SEC* v. *Egan*,
    994 F. Supp. 2d 558 (S.D.N.Y. 2014)........................................................................8

*SEC* v. *Gold*,
No. 05 Civ. 4713 (JS) (MLO), 2006 WL 3462103 (E.D.N.Y. Aug. 18, 2006) ........................8

*SEC* v. *Sandifur*,
No. 05 Civ. 1631, 2006 WL 538210 (W.D. Wash. Mar. 2, 2006)...........................................11

*SEC* v. *Takeyasu*,
No. 17 Civ. 4866 (GHW), 2018 WL 2849777 (S.D.N.Y. June 11, 2018)................................8

*Shaffer Smith, 2424, LLC* v. *Foster*,
168 F. Supp. 3d 654 (S.D.N.Y. 2016).....................................................................................4

*In re Silver Wheaton Corp. Securites Litigation*,
No. 17 Civ. 5146 (CAS) (JEMx), 2016 WL 3226004 (C.D. Cal. June 6, 2016)....................15

*South Cherry Street LLC* v. *Hennessee Group LLC*,
573 F.3d 98 (2d Cir. 2009)............................................................................................2, 3, 5

*In re Take-Two Interactive Securities Litigation*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................................................................................14

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................1, 2, 14

*Topping* v. *Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)......................................................................................16

*Tung* v. *Bristol-Myers Squibb Co.*,
412 F. Supp. 3d 453 (S.D.N.Y. 2019).....................................................................................10

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .................................9

*Varghese* v. *China Shenghuo Pharmaceutical Holdings Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009).....................................................................................6

*In re Veeco Instruments, Inc. Securities Litigation*,
235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................................................8

*In re Vivendi, S.A. Securities Litigation*,
838 F.3d 223 (2d Cir. 2016)...................................................................................................17

*Washtenaw County Employees Retirement System* v. *Avid Technology, Inc.*,
28 F. Supp. 3d 93 (D. Mass. 2014) ...................................................................................9-10

*Woolgar* v. *Kingstone Cos., Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020)......................................................................................4

*Wyche* v. *Advanced Drainage Systems, Inc.*,
    No. 15 Civ. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*,
    710 F. App'x 471 (2d Cir. 2017) ............................................................................8

*Zhong Zheng* v. *Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ............................................................ 12-13

**Statutes**

15 U.S.C. § 78t(a) ......................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that his Complaint is a thinly veiled attempt to convert Cronos's restatement of its accounting treatment of some contracts with commercial counterparties into a supposed scheme to defraud investors.  As demonstrated in Defendants' Motion to Dismiss, Plaintiff has not alleged any fraudulent intent, and two dispositive points stand entirely unrebutted. *First*, Plaintiff does not dispute that the Complaint does not allege any Defendant's motive to defraud investors.   *Second*, the Complaint fails to point to a single particularized fact—in a document, report, presentation, communication, witness statement, or otherwise—showing that any Defendant "'knew facts or had access to information suggesting that their public statements were not accurate.'"  *City of Warren Police & Fire Ret. Sys.* v. *Foot Locker, Inc.*, 412 F. Supp. 3d 206, 228 (E.D.N.Y. 2019).   Plaintiff's failure to plead facts giving rise to *any* inference of scienter—much less one that is "strong," "cogent and at least as compelling as any opposing inference," *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)—is fatal to his claims.

With respect to "motive and opportunity," the Opposition concedes that the Complaint pleads no legally cognizable theory.  (Opp. at 21-22.)  Instead, to rescue his theory that Defendants acted recklessly, Plaintiff attempts to rely on allegations that Defendants sought to "post strong results"—but such allegations cannot plead motive because they are common to all executives. Plaintiff's effort to "combine inadequate allegations of motive with inadequate allegations of recklessness . . . to demonstrate scienter" fails as a matter of law.  *Kalnit* v. *Eichler*, 264 F.3d 131, 141 (2d Cir. 2001).

Fatally, the Opposition fails to identify a single fact suggesting that any Defendant knew that any statement was false when made or any "'*specific* contradictory information'" possessed by any Defendant "*at the time they made* any alleged false or misleading statement."  *In re Adient*

*plc Sec. Litig.*, 2020 WL 1644018, at *27 (S.D.N.Y. Apr. 2, 2020) (emphases added).  Without

such allegations, the Complaint falls far short of alleging that Defendants acted with "'an extreme

departure from the standards of ordinary care.'"  *S. Cherry St. LLC* v. *Hennessee Grp. LLC*, 573

F.3d 98, 109 (2d Cir. 2009).  Plaintiff's theories distill down to pointing to the restatement and

then, with the benefit of hindsight, asserting that the accounting error must have been obvious and

that, based on their professional qualifications, as well as the amounts involved, the Individual

Defendants acted recklessly.  This "amalgam of suggestions" is insufficient to plead scienter, *City

of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008), and adopting

Plaintiff's logic would lead to virtually any restatement automatically inferring scienter—a result

that courts have conclusively rejected.  *See In re MSC Indus. Direct Co.*, 283 F. Supp. 2d 838, 849

(E.D.N.Y. 2003) ("A restatement, by itself, is insufficient to plead a securities fraud claim.").

Finally, Plaintiff's Opposition shows that the Complaint fails to plead loss causation for

two purported "corrective disclosure" dates.  On one date, Cronos announced that the release of

its financial statements would be delayed.  Plaintiff cannot explain how this "reveal[ed] the truth

that" Defendants "engaged in . . . any wrongdoing asserted in the Complaint."  *Janbay* v. *Canadian

Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012).  As to the other date—which

came *after* Cronos had disclosed the restatement and its amount and this lawsuit had been filed—

Plaintiff points to nothing that was not "facts already known to the market."  *In re Omnicom Grp.,

Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2009), *aff'd*, 591 F.3d 501 (2d Cir. 2010).

## ARGUMENT

**I.**    **THE OPPOSITION CONFIRMS THAT PLAINTIFF HAS NOT PLED THE
NECESSARY STRONG INFERENCE OF SCIENTER.**

Plaintiff must meet the "[e]xacting pleading requirement[]" of the PSLRA, *Tellabs*, 551

U.S. at 313, by pleading "'with particularity facts giving rise to a *strong* inference that the

defendant acted with' . . . an intent to 'deceive, manipulate, or defraud.'" *ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("*IBEW*") (quoting 15 U.S.C. § 78u-4(b)(2) and *Tellabs*, 551 U.S. at 319).   To qualify as "strong," the inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  Plaintiff does not dispute that his Complaint must meet this strict pleading standard.  Plaintiff's allegations of scienter—which concede the absence of a legally sufficient motive—boil down to little more than that Cronos issued a restatement.  This is insufficient.

### A.   Plaintiff Admits the Complaint Does Not Allege That Any Defendant Had Motive and Opportunity to Commit Fraud.

Plaintiff's Opposition concedes that the Complaint's allegations "are not sufficient" to plead "motive and opportunity," one of the two ways a plaintiff can plead scienter.  (Opp. at 21-22.)  Plaintiff is forced to make this crucial admission because the Complaint's only theory of motive—"Defendants' general motives to post strong results"—is "extremely common" to all executives and does not indicate that any Individual Defendant stood to gain any personal benefit from the alleged misstatements.  (Opp. at 21-22); *see S. Cherry St.*, 573 F.3d at 109 ("goals that are 'possessed by virtually all insiders'" are insufficient to plead scienter (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000))).  This concession is critical.  Where Plaintiff has failed to plead an adequate motive, "'the strength of the circumstantial allegations must be correspondingly greater.'"   *Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (quoting *Kalnit*, 264 F.3d at 142).  Plaintiff does not dispute this well-established principle either. *See Woolgar* v. *Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 233 (S.D.N.Y. 2020) ("'circumstantial allegations'" must be "'correspondingly greater'" where plaintiff fails to allege motive).

In an effort to salvage his claim, Plaintiff argues that the alleged "circumstances" here were "highly suspicious." (Opp. at 22.) The Complaint, however, pleads no facts establishing any "highly suspicious" circumstances (*see infra* Part I.B); inadequate allegations of "motive and opportunity" do not become adequate merely because Plaintiff rebrands them as allegations of conscious misbehavior or recklessness. Indeed, Plaintiff cites no authority adopting this approach, and case law rejects similar attempts to bootstrap deficient motive allegations. *See Kalnit*, 264 F.3d at 141 (rejecting attempt "to combine inadequate allegations of motive with inadequate allegations of recklessness . . . to demonstrate scienter").[1]

To the extent the Court at all credits Plaintiff's deficient motive allegations, it "must [also] consider . . . any competing inferences rationally drawn from the facts alleged." *IBEW*, 553 F.3d at 198. Here, Plaintiff does not dispute that the Individual Defendants did not sell—and actually *increased*—their Cronos holdings during the alleged class period, which "negat[es] any inference of scienter."[2] *Abbad* v. *Amman*, 285 F. Supp. 2d 411, 418 n.5 (S.D.N.Y. 2003). Recognizing this problem, Plaintiff argues that the Court should ignore these increased stock holdings because they

---

[1]    *In re Federated Dep't Stores, Inc., Sec. Litig.*, 2004 WL 444559, at *4 (S.D.N.Y. Mar. 11, 2004) ("Plaintiffs' argument that their allegations of motive and opportunity do not 'stand alone' because they have also alleged circumstantial evidence of conscious misbehavior improperly conflates the two separate means of pleading scienter. The two methods of pleading scienter are separate and distinct.").

[2]    Notwithstanding that plaintiffs commonly seek to allege motive by pointing to "unusual" "[i]nsider sales" of the company's stock, *City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020), Plaintiff argues that "for an executive to buy stock" also is "perfectly consistent" with fraud. (Opp. 23 n.5.) Courts have not adopted Plaintiff's position, which would render *any* action by a defendant "consistent" with fraud. *See Shaffer Smith, 2424, LLC* v. *Foster*, 168 F. Supp. 3d 654, 659-60 (S.D.N.Y. 2016) (no scienter where allegation of motive "*could* be consistent" with fraud). Indeed, *Crowell* v. *Ionics, Inc.*, 343 F. Supp. 2d 1, 15 (D. Mass. 2004), on which Plaintiff relies (Opp. at 23 n.5), did not adopt Plaintiff's theory. *Crowell* reaffirmed the well-settled principle that "[t]he absence of insider trading . . . weaken[s] a case for scienter." *Id.*

are disclosed in SEC Form 4 filings not referenced in the Complaint. The Court should decline Plaintiff's invitation to act in ignorance, as courts in this Circuit "routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents." *Abely* v. *Aeterna Zentaris Inc.*, 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013).[3]

### B. Plaintiff's Reliance on the Restatement Is Not Enough to Plead Conscious Misbehavior or Recklessness.

Plaintiff's Opposition underscores that the Complaint falls far short of alleging particularized facts that Defendants' conduct was "highly unreasonable" and "an extreme departure" from the standards of ordinary care—*i.e.*, that they exhibited "[a]n *egregious* refusal to see the obvious." *S. Cherry St.*, 573 F.3d at 109. The Complaint's allegations boil down to little more than that Cronos disclosed an accounting error and restatement. Fundamentally, for the Complaint to survive under a theory of conscious misbehavior or recklessness, Plaintiff must allege Defendants "knew facts or had access to information suggesting that their public statements were not accurate." *City of Warren*, 412 F. Supp. 3d at 228 (quoting *Emps.' Ret. Sys. of Gov't of V.I.* v. *Blanford*, 794 F.3d 297, 306 (2d Cir. 2015)). The Opposition points to no such allegations in the Complaint.

#### (i) Plaintiff's Scienter Pleading Burden Is Not Met by Pointing to the Restatement.

Plaintiff cannot escape the basic point that "'[a] Restatement of earnings, without more, does not support a strong inference of fraud, or for that matter, a weak one.'" *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 564 (S.D.N.Y. 2004). Nor can Plaintiff avoid the settled principle

---

[3]    *See also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 582-83 (S.D.N.Y. 2011) ("Forms 3, 4, and 5 are required SEC disclosures and may be considered for the truth of their contents."); *Malin* v. *XL Capital Ltd.* 499 F. Supp. 2d 117, 133 (D. Conn. 2007) ("SEC Forms 3, 4 and 5 . . . are routinely accepted by courts on motions to dismiss securities fraud complaints and are considered for the truth of their contents."), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

that "allegations of [accounting] violations or accounting irregularities . . . alone" are not enough. *Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

Plaintiff contends that a "violation of accounting rules supports" inferring scienter. (Opp. at 17.) But the cases on which Plaintiff relies all contained particularized allegations well beyond an accounting violation. (*Id.* at 17-18.) *In re Fairway Group Holding Corp. Securities Litigation* recognized that "GAAP violations standing alone are not sufficient," and relied on allegations including statements of confidential witnesses from a "broad swath of [the company's] hierarchy" detailing how the company "intentionally concealed its shortcomings from the investing public." 2015 WL 249508, at *15-16 (S.D.N.Y. Jan. 20, 2015). And in *Varghese* v. *China Shenghuo Pharmaceutical Holdings, Inc.*, the complaint alleged a resignation email from a director on the Audit Committee expressing concerns about "poor corporate governance" and how the company was "unwilling to be educated." 672 F. Supp. 2d 596, 603 (S.D.N.Y. 2009). Plaintiff pleads nothing similar here.

Similarly, Plaintiff argues scienter is inferred by Cronos's disclosure, issued in conjunction with the restatement, that its auditor found that "the Company did not maintain effective internal control over financial reporting as of December 31, 2019." (Opp. at 18; *see* Ex. 5 at Ex. 23.1.)[4] Not so. The cases concerning internal controls deficiencies on which Plaintiff relies (Opp. at 18) all include particularized allegations that the defendants were aware of the internal controls deficiencies at the time of the alleged misstatements, which this Complaint lacks. *See In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 722 (S.D.N.Y. 2019) (scienter allegations included "testimony" concerning bribes, which were "corroborated by . . . ledger" and "criminal information"); *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 246-47 (S.D.N.Y. 2018)

---

[4]     All exhibit citations are to the Declaration of David M.J. Rein, dated February 8, 2021.

(confidential witness statement and allegations defendant was aware of—and ignored—a letter from an "outgoing auditor concerning the deficiencies of the Company's internal financial controls"); *Hall* v. *The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 231-33 (S.D.N.Y. 2008) (confidential witness "testimony" that company had "knowledge that its positive statements were unwarranted" and that CEO engaged in "repeated and knowing violations of the Company's internal controls").

   *(ii)*  ***Purported "Obviousness" and Size of the Restatement.*** In another effort to transform the restatement itself into a scienter pleading, Plaintiff directs the Court to the supposed "obviousness" and "magnitude" of the restatement as inferring fraudulent intent.  (Opp. at 11-14.) Simply attaching characterizations to the restatement cannot save the Complaint from dismissal.

   Plaintiff's lead point is that Defendants did not contest the "obviousness" of the accounting issues.  (Opp. at 11.)  This is wrong.  The Complaint section containing Plaintiff's scienter allegations never once mentions "obviousness" as a basis for scienter.  (Compl. ¶¶ 129-38.)  And the Complaint paragraph that Plaintiff contends alleges "obviousness" (Opp. at 11 (citing Compl. ¶ 133)) in fact alleges the "egregiousness" of the accounting, which Defendants directly addressed. (*See* Mot. at 12-13.)

   In any event, whichever label Plaintiff attaches to the restatement ultimately is irrelevant. Plaintiff's characterization of "obviousness" (or "egregiousness") is based on hindsight, not particularized facts.  "Hindsight, although 20/20, cannot be used to prove securities fraud."  *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *12 (S.D.N.Y. Mar. 30, 2021); *see Novak*, 216 F.3d at 309 ("we have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight'") (citation omitted)).  As *In re Medicis Pharmaceutical Corp. Securities Litigation*, on which Plaintiff relies (Opp. at 11), recognizes, "[a] plaintiff . . . cannot merely point to a[n

accounting] principle and contend that a correct interpretation was simple or obvious."  2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010).

To meet his pleading burden, Plaintiff must do more than depict accounting treatment as "obvious" or "egregious"; rather, Plaintiff must provide particularized "allegations indicating that Defendants also possessed and ignored contrary facts."  *Wyche* v. *Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *17 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).  None of Plaintiff's authorities (Opp. at 11-12) suggest any different standard.  *See SEC* v. *Egan*, 994 F. Supp. 2d 558, 567 (S.D.N.Y. 2014)[5] (scienter where defendant "confronted with multiple 'red flags' indicating fraud"); *Fresno Cty. Emps.' Ret. Ass'n* v. *comScore, Inc.*, 268 F. Supp. 3d 526, 552-55 (S.D.N.Y. 2017) (scienter where "very potent" allegations of "insider trading" and "campaign" by defendants "to placate the market" on "accounting practices").

Plaintiff also tries to infer scienter by comparing his allegations to entirely different accounting principles concerning "premature revenue recognition." (Opp. at 11-12.)  Even putting aside the inapplicability of the separate accounting principle, the cases on which Plaintiff relies contain particularized scienter allegations well beyond Plaintiff's conclusory approach here, only underscoring the Complaint's shortcomings.  *See In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 232 (S.D.N.Y. 2006) (confidential witness allegations of "fictitious customer sign-offs," instruction to "bury" accounting issues, and accounting staff "dramatically reduced" by 75% which weakened "internal accounting controls"); *In re MicroStrategy, Inc. Sec. Litig.*, 115

---

[5]       Throughout the Opposition, Plaintiff relies on cases brought by the SEC.  (*See* Opp at 11, 14, 18-19, 23.)  Those cases are irrelevant here because "it is well settled that the SEC . . . is not subject to the heightened scienter pleading requirements of the [PSLRA]."  *SEC* v. *Gold*, 2006 WL 3462103, at *5 n.3 (E.D.N.Y. Aug. 18, 2006); *see also SEC* v. *Takeyasu*, 2018 WL 2849777, at *15 (S.D.N.Y. June 11, 2018) ("[The SEC] is not required to satisfy the pleading requirements of the [PSLRA].").

F. Supp. 2d 620, 640-41 (E.D. Va. 2000) (scienter where CEO's statements reflected a "cavalier and manipulative attitude toward disclosure requirements" and defendants made "attempts at covering-up the truth").

Nor can Plaintiff meet his burden to plead with particularity a strong inference of conscious misbehavior or recklessness by pointing to the "magnitude" of the restatement.  (Opp. at 12-14.) Plaintiff is forced to concede (Opp. at 13) the fundamental point that "'the size of the [alleged] fraud alone does not create an inference of scienter.'"  *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009), *aff'd sub nom.*, *Condra* v. *PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009).  Besides "[t]he magnitude of the restatement," Plaintiff must plead "other circumstantial evidence to suggest scienter."  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014).

Plaintiff claims—without citing specifics—to have pled "numerous circumstantial facts" (Opp. at 13), but the cases on which Plaintiff relies highlight the Complaint's deficiency.  (Opp. at 12-13.)  In *Plumbers & Pipefitters National Pension Fund* v. *Orthofix International N.V.*, the restatement included a "roughly 1600% decrease" in earnings for one of the affected years.  89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015).  Nonetheless, Judge Koeltl held scienter had *not* been adequately pled against the CEO; the pleadings were adequate only as to other executives whose knowledge and conduct were alleged in detail by statements from three confidential witnesses "each of whom played some role" in the transactions at issue.  *Id.* at 615.  Similarly, in *Washtenaw County Employees Retirement System* v. *Avid Technology, Inc.*, notwithstanding that the restatement concerned "a large number of transactions over . . . five years," the court *dismissed* claims against one defendant for failure to plead scienter, only allowing claims to proceed against two other defendants where allegations included insider trading and statements from a

"confidential witness" who "attended weekly meetings" concerning the accounting issues.  28 F. Supp. 3d 93, 111, 113, 115 (D. Mass. 2014).[6]  Yet again, the Complaint here contains no similar allegations.

>    ***(iii)    Individual Defendants' Sophistication***.  Plaintiff also argues that the Individual Defendants' professional backgrounds as, respectively, a lawyer and auditor is a proxy for scienter.  (Opp. at 18-19.)   That position has been rejected by the case law, which recognizes that "[a]llegations of a defendant's experience and expertise . . . are insufficient to raise an inference of scienter."  *Abely*, 2013 WL 2399869, at *18.  Senior corporate executives at virtually all public companies possess professional experience and could be labelled sophisticated.  Accordingly, the law requires a particularized pleading that "'specifically show[s] how or why the defendant should have believed [the challenged statements] to be inaccurate.'"  *Tung* v. *Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019).  Plaintiff's pleading does not.

Plaintiff's authorities show what is lacking here:  particularized allegations of knowledge and conduct.  (Opp. at 18-19); *see In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) (alleging "contemporaneous circumstances" "of which [defendants] were aware"); *Atlas* v. *Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1156 (S.D. Cal. 2008) (scienter where complaint alleged defendants "knew their public statements . . . were false and misleading,"

---

6       *See also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (scienter where "complaint contains detailed allegations as to what defendants knew on a daily, weekly and monthly basis . . . while at the same time making public statements that painted a different picture"); *Okla. Firefighters Pension & Ret. Sys.* v. *Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 26, 37 (S.D.N.Y. 2019) (defendants participated in "monthly calls" with "internal slide decks," which "bel[ied] the accuracy of their public statements"); *Bear Stearns*, 763 F. Supp. 2d at 503-04 (S.D.N.Y. 2011) (scienter where complaint relied on government report and "confidential witness statements" concerning defendants' knowledge);  *Norfolk Cty. Ret. Sys.* v. *Ustian*, 2009 WL 2386156, at *8, *10 (N.D. Ill. July 28, 2009) ("compelling inference of scienter" from "[p]ersonal profit" of defendants and allegations that defendants "ignored numerous red flags indicating inherent problems with . . . accounting and internal controls").

as shown by "allegations of several confidential witnesses" and "[n]umerous former employees"). Further, the reference to the defendants' "sophistication" in *SEC* v. *Alexander* is wholly inapposite because it concerned the factors for issuing a permanent injunction on a default judgment motion, not the pleading requirements for a securities fraud claim. 2004 WL 1468528 (S.D.N.Y. June 28, 2004). And *SEC* v. *Sandifur* is inapplicable because its scienter ruling rests on the principle that "the more stringent pleading requirements set forth in the [PSLRA] do not apply to enforcement actions brought by the Commission." 2006 WL 538210, *7 (W.D. Wash. Mar. 2, 2006).

    *(iv)    Desire to Grow Revenues*. Plaintiff next asserts that Cronos was "primarily valued on its ability to grow revenues" and the fact that the restatement required a reduction in reported revenues was "suspicious." (Opp. at 14.) To begin, virtually all restatements lead to a negative change to a company's financial reporting and thus, under Plaintiff's theory, essentially every restatement would be deemed "suspicious" and infer scienter. But the law does not recognize Plaintiff's *per se* theory with respect to restatements. Instead, it is "well settled that [the] mere fact of a restatement . . . does not support a strong, or even a weak, inference of scienter." *City of Brockton*, 540 F. Supp. 2d at 472.

    Further, revenues are a measure of financial performance used by all corporations, not just Cronos. In any event, the analyst reports on which the Complaint relies undercut Plaintiff's revenue-focused theory, noting that "investors should focus on [Cronos's] strategic partnerships, balance sheet strength, M&A optionality, management quality, access to U.S. consumers, investments in R&D, intellectual property and distribution footprint rather than placing too much emphasis on 2019 results in Canada." (Ex. 10 at 2.) Another analyst posed the question "why would the company be aggressive on something which was already so tiny, its revenue, when said rev[enue] is still not a material driver of value?" (Ex. 11 at 1.)

Nor is Cronos's alleged desire to grow revenues—a goal shared by all businesses—anything like the cases purportedly finding "suspicious" circumstances relied on by Plaintiff. (Opp. at 14.)  Those cases are either inapposite or plead circumstances well beyond a motive to grow revenues.  For example, Plaintiff relies on *SEC* v. *DiMaria*, but does not mention that decision's express recognition that the SEC (unlike Plaintiff) "'need not satisfy the pleading requirements under the Private Securities Litigation Reform Act.'"  207 F. Supp. 3d 343, 354 (S.D.N.Y. 2016).  Even there, the SEC pled that one defendant "ordered . . . additional . . . revenue booked without justification," "lashed out against those who thwarted his plan" to inflate revenue, and provided "*post hoc* and incorrect explanations for [accounting] entries" and that another defendant "worked to conceal the scheme from [the company's] auditor."  *Id.* at 355-57.  Plaintiff also relies on other cases, neglecting to mention that they consider claims against auditors and adjudicate the different question of whether there were "red flags" sufficient to alert a "reasonable auditor."[7]  And, unlike Plaintiff's generalized allegations here, in *In re Salix Pharmaceuticals, Ltd.*, plaintiffs "identified specific reports *and* statements containing information" available to defendants that contradicted their public disclosures.  2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016).

> *(v)*    *Core Operations*.    In the Complaint, Plaintiff expressly invokes the "core operations" doctrine to support his scienter pleading.  (*See* Compl. ¶ 132.)  This doctrine allows, under very limited circumstances involving the "core operations" of the company, "'an

---

[7]    *See Gould* v. *Winstar Commc'ns, Inc.*, 692 F.3d 148, 159-60 (2d Cir. 2012) (addressing summary judgment standard for auditor liability; finding triable issue of scienter where auditor "repeatedly failed to scrutinize serious signs of fraud" and "learned of and advised against the use of indisputably deceptive accounting schemes, but eventually acquiesced in the schemes by issuing an unqualified audit opinion"); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004) (alleging "series of 'red flags' . . . that [auditor] either ignored, or should have discovered through reasonable diligence").

inference . . . that high-level officers and directors had knowledge of . . . facts by virtue of their positions within the company.'" *Zhong Zheng* v. *Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019).  In moving to dismiss, Defendants demonstrated that, not only is the continuing validity of the "core operations" doctrine dubious, but Plaintiff has not satisfied it here.

In his Opposition, Plaintiff does not dispute that his pleading does not meet the standards required to invoke the core operations doctrine.  (Opp. at 15-17.)  For example, Plaintiff does not claim to have pled that the MediPharm transactions comprised "nearly all" of Cronos's business, or to have pled any Defendant's knowledge of "contradictory facts of critical importance."  (Mot. at 14-15.)  Instead, Plaintiff urges the Court to make the inference that the Individual Defendants had culpable knowledge based on their positions—in reliance on other allegations and "inferences."  (Opp. at 16-17.)  Plaintiff characterizes this as a "modest request" (Opp. at 16), but, in fact, it would completely rewrite the core operations doctrine.  Instead of the circumscribed approach taken by the case law, Plaintiff would have this Court expand the doctrine to be satisfied by any other "inferences" raised by a plaintiff.  The Court should decline Plaintiff's invitation to revolutionize the core operations doctrine.

*(vi)* ***SOX Certifications***.  It is well-settled that, absent allegations that the certifying Defendant "had reason to know" of their inaccuracy—which Plaintiff does not allege here—SOX certifications "add nothing substantial" to the scienter allegations.  *Reilly* v. *U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018) (internal quotation marks omitted). Plaintiff seeks to reverse this rule and argues that "[b]y attesting" to having "review[ed]" the financial statements, the certifying Individual Defendants "should be charged with knowledge" of the accounting errors.  (Opp. at 19.)  If Plaintiff's position were adopted, the signing of SOX certifications would always mechanically lead to a sufficient pleading of scienter.  Plaintiff's

authority does not support this standard.  (Opp. at 20); *see In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 304 (S.D.N.Y. 2008) (scienter allegations based on SOX certifications "fall far short of the mark" absent allegations defendant possessed "specific contrary information").

Plaintiff also does not dispute that the SOX certifications are "opinion statements."  (Opp. at 9.)  Such statements are "only actionable if the opinion turns out to be incorrect *and* the speaker did not genuinely believe it when the statement was made."  *Lachman* v. *Revlon, Inc.*, 487 F. Supp. 3d 111, 135 (E.D.N.Y. 2020).  Plaintiff points only to the Complaint's deficient, conclusory scienter allegations to allege the Individual Defendants did not believe their own statements.  (Opp. at 9.)  Accordingly, Plaintiff's claims based on the SOX certifications also should be dismissed because they do not allege a material misstatement.

(vii)    ***The Cannalysts Article***.  Plaintiff's final theory of scienter is that Defendants must have had knowledge that their public statements about Cronos were false because a writer named "GoBlueCdn" published an article on The Cannalysts blog, describing himself as wearing a "tinfoil hat adjusted tightly," and speculating about "the **potential** for Aurora," a competitor of Cronos, "to inflate Sales, Gross Margin and EBITDA."  (Compl. ¶ 136, Ex. 9 at 1, 5.)  Plaintiff asserts that GoBlueCdn's "criticism was well publicized," but points to no Complaint allegation supporting this.  (Opp. at 20.)  Plaintiff also describes this article as addressing "issues facing [the] industry" (Opp. at 21), but nothing in the article alleges any industry-wide issues.  (*See* Ex. 9.)

In short, Plaintiff asks that the Court assume that Defendants must have known that their statements were false based on a single article on a blog, discussing a single competitor and not Cronos or the industry, and making allegations that the "tinfoil hat"-wearing author conceded were speculative about unrelated transactions.  Plaintiff's *Palsgraf*-like chain of speculation does not meet the PSLRA's "[e]xacting" requirement, *Tellabs*, 551 U.S. at 313, to "plead 'with particularity

-14-

facts giving rise to a *strong* inference that the defendant acted with' . . . an intent 'to deceive, manipulate or defraud.'" *IBEW*, 553 F.3d at 198.[8]

*     *     *

Plaintiff concedes the Complaint does not plead motive and opportunity, but to meet his "correspondingly greater" burden to plead particularized facts showing conscious misbehavior or recklessness, Plaintiff does little more than offer assorted characterizations of the restatement itself.  Plaintiff's Opposition seeks to obfuscate this clear-cut pleading deficiency by arguing that "taken together" (Opp. at 10) the Complaint's allegations strongly infer scienter.  They do not.  As Judge Preska recently reaffirmed when dismissing a complaint that similarly tried to plead scienter by bundling inadequate allegations, Plaintiff cannot escape the "elementary arithmetic" that "'zero plus zero' (plus zero plus zero plus zero) 'cannot equal one.'"  *Diebold Nixdorf*, 2021 WL 1226627, at *15 (quoting *Reilly*, 2018 WL 3559089, at *19).

## II.    THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION FOR TWO PURPORTED CORRECTIVE DISCLOSURE DATES.

*February 24, 2020.*  Defendants demonstrated in their Opening Brief that Plaintiff had not pled loss causation for February 24, 2020 because nothing "reveal[ed] the [alleged] truth that [Cronos] had engaged in . . . any wrongdoing asserts in the Complaint."  *Janbay*, 2012 WL 1080306, at *15.  Plaintiff concedes that the sole supposed "corrective disclosure" on February 24,

---

[8]     Plaintiff's authorities (Opp. at 21) are not analogous.  *See In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at *10-12 (C.D. Cal. June 6, 2016) (scienter pleading for tax exposure misstatements included confidential witness's allegations that defendants were "heavily involved" in tax audit and "withheld documents or information from their independent auditors," and defendants' awareness of a "highly publicized" "broadly similar" CDN$800 million tax assessment against competitor); *Ark. Teacher Ret. Sys.* v. *Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) ("[k]nowledge of . . . problems" with inventory included "worthless" inventory at the company and "problems" "well-publicized by other companies . . . and widespread in the industry").

-15-

2020 was Cronos's statement that "[t]he Company has had a delay in the completion of its financial statements and will make a further announcement in a subsequent press release." (Compl. ¶ 93.) To plead loss causation, "there must be some identification of the disclosure of the *fraud* that causes a drop in stock price." *Bensley* v. *FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011). Plaintiff does not identify anything about this statement that revealed a fraud. Plaintiff acknowledges that this statement was "limited in detail" and merely informed investors that "some issue" "was causing a delay in financial reporting." (Opp. at 24.) "Some issue" is not disclosure of a fraud.[9]

Plaintiff's attempts to distinguish Defendants' authorities are unavailing. Plaintiff claims (Opp. at 24) that *Janbay* v. *Canadian Solar, Inc.* held that loss causation was not pled because the "complaint failed to plead any false statements." The decision states no such thing. Rather, Judge Sweet explained that where a disclosure does not "reveal any 'relevant truth' about [a] purported fraud" it does "not qualify as 'corrective' and cannot establish loss causation." 2012 WL 1080306 at 15. Accordingly, Judge Sweet recognized that "[t]he announcement of a delay in the reporting of [defendant's] financials does not establish loss causation because it fails to reveal the truth that [the defendant] had engaged in . . . any wrongdoing asserted in the Complaint." *Id.*[10]

---

[9]     Plaintiff relies on *Freudenberg* v. *E*Trade Financial Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010), to argue that a "corrective disclosure" need not be "a 'mirror image' tantamount to a confession of fraud." (Opp. at 24.) But *Freudenberg* also states that Plaintiff must plead that "the 'truth' about the company's underlying condition, when revealed, cause[d] the 'economic loss.'" *Freudenberg*, 712 F. Supp. 2d at 202. A statement revealing merely "some issue" does not meet this standard.

[10]     Contrary to Plaintiff's assertion (Opp. at 18), the loss causation allegation in *Topping* v. *Deloitte Touche Tohmatsu CPA* was not defective because of when plaintiff sold his shares, but rather because the purported corrective disclosure "included no details that would have informed shareholders about fraudulent activities at the Company." 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015).

Plaintiff seeks to avoid his failure to allege revelation of any fraud by pointing to a generalized statement in the Complaint that "[t]he stock declines were caused by . . . materializations of the previously undisclosed risks." (Opp. at 25; Compl. ¶ 144.) But, even reframed this way, Plaintiff has not alleged, as he must, that his loss was caused by the "'relevant truth . . . leak[ing] out'" on that date. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) (quoting *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 342 (2005)); *see also id.* at 261-62 ("'materialization of risk' [is] reflective of the principle that 'to establish loss causation, [plaintiffs must show that a] . . . misstatement or omission concealed *something* from the market that, *when disclosed*, negatively affected the value of the security" (quoting *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161,173 (2d Cir. 2005))). Revelation of "some issue" plainly did not disclose the "relevant truth" about the accounting restatement.

***March 30, 2020.*** In their Opening Brief, Defendants demonstrated that Plaintiff had not pled loss causation for March 30, 2020 because Plaintiff alleged no information released on that date that was not "facts already known to the market." *Omnicom*, 541 F. Supp. 2d at 554. In response, Plaintiff identifies no substantive new information that the market did not know before March 30. This should not be surprising as the original complaints in this action were filed several weeks *before* this purported "corrective disclosure" date.

In straining for supposed "new information," Plaintiff states that Cronos's March 30 disclosure contained "fully restated financials" and "acknowledged that the restatements were needed 'to correct misstatements.'" (Opp. at 25.) But, as Plaintiff admits in the Complaint, Cronos had *previously* disclosed that it would be restating its financials to reduce net revenues by the amounts that were reflected in the March 30 financials. (Compl. ¶¶ 104, 107.) Plaintiff points to nothing in the "fully restated financials" that the market did not know from Cronos's earlier

disclosures about this forthcoming correction.  Plaintiff claims the fact that MediPharm was removed "from the list of the Company's largest customers" was newly-revealed information on March 30.  (Opp. at 25.)  In the Complaint, however, Plaintiff concedes that analysts had "identified MediPharm as the likely counter-party to the relevant transactions" almost four weeks earlier.  (Compl. ¶ 103.)  Nor did the disclosure that Cronos and its auditor acknowledged weaknesses in the company's internal controls over financial reporting add anything new to the equation.  (Opp. at 25.)  As the Complaint recognizes, Cronos previously disclosed on March 17 that "based on the 'recommendation of the Audit Committee . . . and after consultation with [Cronos's auditor] KPMG LLP'" Cronos's "'prior financial statements for these periods should . . . no longer be relied upon.'"[11]  (Compl. ¶ 104.)[12]

## CONCLUSION

Plaintiff provides no explanation of how he would amend to cure the Complaint's deficiencies (Opp. at 26) and "has already had an opportunity to amend in the face of similar arguments from Defendants" in their pre-motion letter.  *Cavello Bay Reinsurance Ltd.* v. *Stein*, 2020 WL 1445713, at *11 (S.D.N.Y. Mar. 25, 2020).  (*See* ECF Nos. 40-41.)  Accordingly, for the foregoing reasons and those set forth in Defendants' Opening Brief, the Complaint should be dismissed with prejudice.

---

[11]    Because Plaintiff alleges no new information released on the March 30 purported "corrective disclosure" date, this case is nothing like *City of Warren Police & Fire Ret. System* v. *World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 138 (S.D.N.Y. 2020) (Opp. at 25, 26) (alleging "lower-than-expected income projections" and "revelations about the failed media rights deal" on corrective disclosure dates).  That Cronos's stock price declined on March 30 (Opp. at 25-26) does not plead loss causation without also alleging that the market learned new information about the alleged fraud, especially where Cronos's March 30 amended 10-K provided other information, such as a $29.4 million write-down on inventory driven by falling prices.  (Ex. 5 at 36.)

[12]    Because Plaintiff does not plead a primary Exchange Act violation, his Section 20(a) control person liability claim must also be dismissed.  *See* 15 U.S.C. § 78t(a).

Dated: April 22, 2021
     New York, New York

Respectfully submitted,


 /s/ David M.J. Rein
Sharon L. Nelles
David M.J. Rein
A. Christopher Brown
Samantha R. Briggs
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:      (212) 558-4000
Facsimile:      (212) 558-3588
*nelless@sullcrom.com*
*reind@sullcrom.com*
*brownac@sullcrom.com*
*briggss@sullcrom.com*


*Attorneys for Defendants Cronos Group Inc.,*
*Michael Gorenstein, and Jerry F. Barbato*

-19-