# Labaton Sucharow

**Carol C. Villegas**
Partner
212 907 0824 direct
212 907 0700 main
212 883 7524 fax
cvillegas@labaton.com

New York Office
140 Broadway
New York, NY 10005

January 24, 2022

**Via ECF**

The Honorable Eric N. Vitaliano
United States District Judge
United States District Court, Eastern District of New York,
225 Cadman Plaza East
Brooklyn, New York 11201

RE:  *In re Cronos Group Inc. Securities Litigation*,
       No. 2:20-cv-01310-ENV-SIL (E.D.N.Y.)

Dear Judge Vitaliano:

On behalf of Lead Plaintiff Keith D. Norman, we respectfully write in response to Defendants' Letter regarding the Notice of Supplemental Authority ("Ds' Ltr."), ECF No. 50, which concerned the recent out-of-district and nonbinding opinion, *Woodley v. Wood*, No. 20 Civ. 2357 (ER), 2022 WL 103563 (S.D.N.Y. Jan. 11, 2022). Defendants' assertion that *Woodley* "further supports" their Motion to Dismiss, Ds' Ltr. at 1, is nothing more than an attempt to renew their misplaced argument that Plaintiff's allegations are a mere series of disparate facts, which each independently cannot establish scienter, and therefore, collectively cannot establish scienter, *see* MtD, ECF No. 45-1 at 9. This assertion fails for two reasons.

**First**, while Plaintiff pleads many facts supporting a finding of scienter, it is abundantly clear that Defendants *knew* the Company's revenue was overstated because (1) the Company had both a supply contract (where it *paid* MediPharm for cannabis) and what it accurately described as a "fee for service" agreement (where it *paid* MediPharm to refine cannabis); (2) these contracts were enormously significant to Cronos and required it to *spend* more than its total revenues for 2017 and 2018 combined, and yet, (3) under these agreements wherein Cronos was *paying* MediPharm, Cronos claimed MediPharm was one of *its* three largest *customers* and fraudulently booked 39% and 40% of its revenue in 1Q19 and 3Q19, as supposedly arising from these agreements. *See* Amended Complaint, ECF No. 37 at ¶¶47-73 (cited as "¶_").

Courts can draw common sense inferences regarding what information is known to Defendants based on well pled facts. *See In re Avon Sec. Litig.*, No. 19-cv-1420 (CM), 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 490 (S.D.N.Y. 2004). These facts are more than sufficient to establish that it is at least as likely as not that Defendants knew the revenue was overstated, which is all that is required at this stage. *Tellabs, Inc. v. Makor Issues & Rts.*, *Ltd.*, 551 U.S. 308, 323 (2007); *Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 39 (S.D.N.Y. 2019) (a "tie . . . goes to the plaintiff").

**Labaton Sucharow**

Carol C. Villegas
January 24, 2022
Page 2

While plaintiffs in *Woodley* claimed the accounting at issue was "not a complex process," it comes nowhere near the simplicity of the fraud here.  In *Woodley*, defendants discovered "an error related to the transfer of certain unevaluated leasehold costs to the amortization base," which was in violation of a highly complex accounting method—the full-cost accounting approach—that is entirely unique to the oil and gas industry.  *Woodley*, 2022 WL 103563, at *2.  Far from holding the simplicity of a fraud cannot support a finding of scienter, Judge Ramos merely held that plaintiffs had "not explained their conclusion that the reconciliation process is not a complex process and have not otherwise shown that the accounting errors were so patently wrong as to be obvious indicators of fraud."  *Id.* at *8.  Plaintiff clears this bar with ease; understanding the false accounting here requires no greater insight than knowing the difference between a service provider (who you pay) and a customer (who pays you).

**Second**, Defendants are wrong as to the standard for assessing scienter.  The Court must consider "whether **all** of the facts alleged, **taken collectively**, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs*, 551 U.S. at 323 (emphasis added).  Defendants insinuate that because the allegations in *Woodley* were insufficient on the facts of that case, such allegations are irrelevant to the scienter analysis.  However, as Plaintiff's Opposition made clear, the indicia of scienter cited by Plaintiff are frequently recognized as supporting the inference of scienter.  *See* MtD Opp., ECF No. 46, at 10-20.  What Defendants are missing in their recitation of *Woodley*, is that the relevance of supporting indicia of scienter is always determined by the factual context of the allegations.

As stated above, the most critical fact is the simplicity of Defendants' fraud.  Thus, the sophistication of CEO Gorenstein having previously been a Sullivan and Cromwell LLP lawyer, and General Counsel, and CFO Barbato having previously served as a former Senior Auditor for a publicly traded company, are not to be analyzed in isolation or merely as part of a list of disparate factors, they are relevant because these facts elevate the common sense notion that they were not ignorant of the obvious difference between a supplier and a customer or of the fact that transferring raw goods as part of a "fee for service" agreement is not a sale.  *See* ¶¶24-25, 102.

Likewise, the magnitude of the restatement here is not taken in isolation or as merely one fact among a list, rather it highlights (along with the other allegations, such as the size of the MediPharm agreements when compared to prior revenue), that this falsely booked revenue was of such significance that it could not have been the result of mere oversight.  ¶109.

In the same way, each of the indicia of scienter discussed in the Opposition are indeed relevant to the allegations here.  Furthermore, the Complaint alleges far more than *Woodley*.  For example, Defendants inflated revenues by 39% in 1Q19, which conveniently and suspiciously was **just enough** false revenue to place Cronos in line with analyst expectations.  ¶¶47-50, 109.  As another example, Defendants were on notice of highly similar allegations raised against one of its largest competitors, Aurora, whom Cronos was also heavily invested in.  ¶¶136-37.

**Labaton Sucharow**

Carol C. Villegas
January 24, 2022
Page 3

For the reasons stated above, *Woodley* should be disregarded as inapposite and nonbinding, and Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

**LABATON SUCHAROW LLP**

/s/ *Carol C. Villegas*
Carol Villegas
Christine M. Fox
Jake Bissell-Linsk
Charles Farrell
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-818-0477
Email: cvillegas@labaton.com
    cfox@labaton.com
    jbissell-linsk@labaton.com
    cfarrell@labaton.com

*Counsel for Lead Plaintiff Keith D. Norman*
*and Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
Email: brian@schallfirm.com
    rina@schallfirm.com

*Additional Counsel for Lead Plaintiff Keith D. Norman*

cc:    All counsel of record (via ECF)