# EXHIBIT C



| Capital | Tribunal | 22nd Floor | 22e étage |
| Markets | des marchés | 20 Queen Street West | 20, rue Queen ouest |
| Tribunal | financiers | Toronto ON M5H 3S8 | Toronto ON M5H 3S8 |

Citation: *Cronos Group Inc (Re)*, 2022 ONCMT 31
Date: 2022-10-24
File No. 2022-23

# IN THE MATTER OF
## CRONOS GROUP INC. and WILLIAM HILSON

## ORAL REASONS FOR APPROVAL OF SETTLEMENTS

### (Subsection 127(1) and section 127.1 of the *Securities Act*, RSO 1990, c S.5)

**Adjudicators**:  Timothy Moseley (chair of the panel)
William J. Furlong

**Hearing**:  By videoconference, October 24, 2022

**Appearances**:  Rikin Morzaria     For Staff of the Ontario Securities Commission

Andrea Laing     For Cronos Group Inc.
Tim Andison

Melissa MacKewn     For William Hilson
Kate McGrann

**ORAL REASONS FOR APPROVAL OF SETTLEMENTS**

*The following reasons have been prepared for publication, based on the reasons delivered orally at the hearing, as edited and approved by the panel, to provide a public record of the oral reasons.*

[1]    Staff of the Ontario Securities Commission has made allegations against Cronos Group Inc., a TSX- and NASDAQ-listed company with a market capitalization of approximately $1.2 billion as of the end of August, 2022. Cronos is a licensed cannabis producer in Canada with international production and distribution.

[2]    Staff alleges that over a period of several years Cronos improperly recognized $7.6 million of revenue from three separate transactions, and that Cronos overstated its U.S. goodwill and U.S. intangible assets by approximately US$235 million.

[3]    Staff has also alleged that William Hilson, Cronos's Chief Commercial Officer at the relevant time, failed to take appropriate steps to address the handling of revenue recognition issues by Cronos for one of the subject transactions, in which Hilson played a significant role. Hilson had previously been Cronos's Chief Financial Officer, although he was no longer in that role when he was involved in the transaction.

[4]    Staff, Cronos and Hilson seek approval of two settlement agreements they have entered into, one between Staff and Cronos, and the other between Staff and Hilson. We conclude that it would be in the public interest to approve both settlements, for the following reasons.

[5]    We begin with the factual background, which is set out in detail in the settlement agreements. We summarize the most important facts here.

[6]    The first revenue recognition error occurred in the first quarter of 2019. It was an improper recognition of revenue of approximately $2.5 million relating to a combination of two wholesale transactions that were entered into in contemplation of one another and that lacked commercial substance.

[7]    The second error occurred in the third quarter of 2019. It was a similar problem involving the same third party. This time the error flowed from three wholesale

1

transactions that were entered into in contemplation of one another, resulting in an improper recognition of revenue of approximately $2.1 million.

[8]     Hilson was not involved in the first two revenue recognition errors. However, in the third, which also took place in the third quarter of 2019, Hilson played a significant role. This third error flowed from a wholesale transaction that resulted in an improper recognition of $3 million in revenue.

[9]     Cronos later determined that its previously issued unaudited interim financial statements for the first, second and third quarters of 2019 had not been prepared in accordance with generally accepted accounting principles, or **GAAP**. In March 2020, Cronos announced that those financial statements would be restated and reissued and that they should no longer be relied upon. Later that month, Cronos filed the restated interim financial statements and reported material weaknesses in its internal controls over financial reporting, including about segregation of duties and treatment of non-routine transactions.

[10]    Less than two years later, a different kind of accounting problem arose. Cronos determined that in its unaudited interim financial statements in early 2021, it had failed to recognize impairment charges for goodwill and intangible assets relating to its U.S. reporting unit, thereby overstating virtually all of its U.S. goodwill and a significant portion of its U.S. intangible assets by an aggregate amount of US$234.9 million. Cronos announced that it would be required to restate its previously issued financial statements, which should no longer be relied upon.

[11]    In February 2022, Cronos issued restated interim financial statements for the first and second quarters of 2021, and it reported related material weaknesses in its internal controls over financial reporting, including about Cronos's not having accounting personnel who were appropriately experienced with U.S. GAAP.

[12]    Cronos has admitted that by making these errors, it failed to file interim financial statements prepared in accordance with GAAP, contrary to section 77 of the *Securities Act*.[1]

---

[1] RSO 1990, c S.5

2

[13]   Hilson has admitted that with respect to the third revenue recognition error, he understood that Cronos had to properly account for the transaction in its interim financial statements. While Hilson was not required to certify or approve the quarterly financial statements, he did sign a certification that the interim financial statements were accurate as they related to his area of responsibility.

[14]   Hilson acknowledges that he failed to take appropriate steps, including not ensuring that an analysis of revenue recognition in respect of the third transaction had been prepared and considered by Cronos prior to its completion of the interim financial statements, and that his conduct was contrary to the public interest.

[15]   There are mitigating factors in the case of both Cronos and Hilson.

[16]   Cronos had mechanisms in place for employees to submit internal tips and complaints. Cronos acted promptly to evaluate employee complaints, including by conducting an internal investigation supervised by its Audit Committee. This led to the discovery of the accounting errors. Cronos also promptly reported information to the Commission, and cooperated with Commission staff throughout the investigation. Finally, Cronos took remedial steps with respect to the weaknesses in internal controls.

[17]   In addition, both Cronos and Hilson have reached a timely resolution of these allegations. By doing so, they have accepted responsibility, and they have saved significant resources on the part of Staff and this Tribunal.

[18]   That brings us to the sanctions and other measures that the parties have agreed to.

[19]   Staff and Cronos have agreed that Cronos will pay an administrative penalty of $1.3 million and costs of $40,000. Cronos paid those amounts prior to today's hearing. Also, as outlined in Schedule "A" of the settlement agreement, Cronos will submit to a review by an independent consultant, acceptable to the Commission and paid for by Cronos, of practices and procedures including Cronos's compliance with requirements relating to internal controls over financial reporting.

3

[20]    Staff and Hilson have agreed that Hilson will make a voluntary payment of $50,000 to the Commission and pay costs of $20,000. Those amounts were also paid prior to today's hearing. In addition, Hilson will be prohibited from acting as a director or officer of any reporting issuer for one year.

[21]    We have reviewed the settlement agreements in detail, and we had the benefit of separate confidential settlement conferences with counsel for each of the two parties.

[22]    Our role at this settlement hearing is to determine whether the negotiated results fall within a range of reasonable outcomes, and whether it would be in the public interest to approve the settlements. This Tribunal respects the negotiation process and accords significant deference to the resolutions reached by the parties.

[23]    The sanctions agreed to by Staff and Cronos underscore the importance of complete and accurate disclosure, and of effective financial controls. When a public company issues inaccurate financial statements, and has inadequate controls, investors are making decisions based on deficient information, and the company thereby undermines confidence in Ontario's capital markets. Cronos's misconduct here is serious and warrants a serious response. Cronos's responsible conduct in identifying and addressing the errors and control weaknesses is a significant mitigating factor.

[24]    As for Hilson, given his senior role, his professional accounting designation, and his capital markets knowledge and experience, his failure to take appropriate steps to address the handling of revenue recognition was also serious.

[25]    The agreed-upon sanctions against both Cronos and Hilson will achieve both specific and general deterrence, and they properly reflect the serious nature of the misconduct. The independent review of Cronos's controls will help to restore investor confidence in Cronos and in the capital markets generally.

4

[26]    It is in the public interest for us to approve the settlements, and we will therefore issue orders substantially in the form of the drafts attached to the settlement agreements.

Dated at Toronto this 24th day of October, 2022

*"Timothy Moseley"*                           *"William J. Furlong"*
Timothy Moseley                            William J. Furlong

5