**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CRONOS GROUP INC. SECURITIES LITIGATION | Civil Action No. 2:20-cv-01310-ENV-SIL |

**LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR
RECONSIDERATION OR MODIFICATION OF THE COURT'S
NOVEMBER 11, 2023 ORDER DISMISSING THE AMENDED COMPLAINT**

January 12, 2024

Lead Plaintiff Keith D. Norman ("Plaintiff") submits this Reply in Further Support of His Motion for Reconsideration (ECF Nos. 59, 60, the "Reconsideration Motion" or "MFR") of the Court's November 11, 2023 Order Dismissing the Amended Complaint (ECF No. 37, the "AC") with prejudice (ECF No. 57, the "MtD Order") and in response to Defendants' December 29, 2023 opposition to the Reconsideration Motion (ECF No. 61, the "Opposition" or "DB").

The Reconsideration Motion is "narrowly directed to the issue of whether it was proper to render a dismissal with prejudice." *See* MFR at 1, 4 & n.1. The Court should reject Defendants' invitation to expand the scope of the Reconsideration Motion to encompass other issues (*see e.g.*, DB at 9-11 (analysis of the adequacy of scienter allegations in a not-yet-filed proposed amendment)) that go well beyond the scope of the discrete issue before the Court. Defendants will have opportunities to argue futility after Plaintiff seeks leave to amend, but Plaintiff cannot file that motion until the prejudice ruling is reconsidered.

Dismissal with prejudice is inconsistent with this Court's practice in assessing pleadings under Rule 9(b). *E.g.*, *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 104-05 (E.D.N.Y. 2021) (Vitaliano, J.). It is also inconsistent with Second Circuit law. *E.g.*, *Pasternak v. Schrader*, 863 F.3d 162, 175 (2d Cir. 2017); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189-90 (2d Cir. 2015); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Defendants cite no circuit-level authority to challenge the clear instruction from the Second Circuit that, in situations like this, dismissal with prejudice is inappropriate.

## I.    ARGUMENT

"A motion for reconsideration requires the movant to 'point to controlling decisions or data that the court overlooked—matters . . . that might reasonably be expected to alter the conclusion.'" MFR at 5 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Plaintiff points to such a controlling decision: *Loreley*. *See* MFR at 5-10 (citing 797 F.3d at 190-91).

A.    **Defendants Disregard *Loreley*'s Controlling Rule in Favor of Weak and Irrelevant Factual Distinctions**

Rather than recognize the straightforward **rule** in *Loreley* limiting courts' discretion to deny plaintiffs an opportunity to seek to amend, Defendants offer a deeply misguided attempt to distinguish from the facts of *Loreley*. *See* DB at 4-11. The legal rule from *Loreley* is as follows:

> Our opinion today, of course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility—none of which were a basis for the denial here. No improper purpose is alleged. And while leave may be denied where amendment would [be] futile, the approach taken by the district court was not rooted in futility. Rather, ***the court treated [p]laintiffs' decision to stand by the complaint after a preview of [d]efendants' arguments—in the critical absence of a definitive ruling—as a forfeiture of the protections afford by Rule 15. This was, in our view, premature and inconsistent with the course of litigation prescribed by the Federal Rules.***

797 F.3d at 190 (emphasis added and citations omitted).

Defendants try to cabin this rule to the exact procedural posture of *Loreley*. *See* DB at 4-5. Nothing in *Loreley* suggests its rule is limited to its facts. However, the substance of Defendants' distinction is also nonsensical. Specifically, Defendants note that in *Loreley*, Plaintiff chose not to amend when the court invited such amendment during a pre-motion to dismiss conference, following letter briefing. 797 F.3d at 169. Thus, Defendants conclude *Loreley* only applies to denials of leave to amend where Plaintiff declined an invitation to amend at a pre-motion conference, whereas here, no such conference occurred. *See* DB at 4-5. But as a distinction this makes no sense. Indeed, it would be facially illogical to impose a harsher rule in situations where a plaintiff was not explicitly invited to amend, as here, than where the parties exchanged pre-motion letter briefs previewing their motion to dismiss arguments. In other words, here, Plaintiff received **no** indication from the Court, during a pre-motion conference or otherwise, that it suspected the AC failed to meet the heightened pleading standards of the PSLRA, whereas in *Loreley*, dismissal with prejudice was inappropriate ***even where*** plaintiffs received such warnings.

2

Further, Defendants gratuitously label Plaintiff's decision to wait for the Court's MtD Order as a "[p]oor strategic choice[]," which somehow warrants dismissal with prejudice.  *See* DB at 4-7.  This directly contradicts *Loreley*, which held: "[at the time of plaintiff's request for leave to amend], **there was no decision yet as to the precise defects**, such that a proposed cure would have been in order as part of the request to amend."  797 F.3d at 190-91 (emphasis added).  Contrary to Defendants' suggestion that their arguments in motion to dismiss briefing provides the "guidance" *Loreley* identifies, it is strictly within the Court's purview to provide that guidance—through an order or instruction during proceedings—not a party to the litigation.  *See id.*; *see also Kusnier v. Virgin Galactic Holdings, Inc.*, 639 F. Supp. 3d 350, 390 (E.D.N.Y. 2022) (granting leave to amend "[b]ecause this is the first time I have ruled on the legal sufficiency of any of plaintiffs' claims, when plaintiffs requested leave to amend they were not in a position to propose a cure"); *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 723 (S.D.N.Y. 2018) (finding leave to amend proper following grant of motion to dismiss where plaintiff "has not had the benefit of a ruling that highlights the precise defects of the complaint") (internal quotations omitted).  Indeed, in *Loreley*, plaintiffs also had the "guidance" of defendants' pre-motion letter, briefing, **and** oral argument—as well as a warning from the Court—but the Second Circuit determined it exceeded the bounds of the district court's discretion to grant the motion to dismiss with prejudice.

*Loreley* is not only controlling law but also grounded in sound reasoning.  Defendants advocate for an illogical rule that would require plaintiffs to amend every time new information arises, in the absence of any court guidance on the pleadings.  *See* DB at 5-7.  This carousel of pleading and re-pleading would grind litigation to a halt and waste tremendous resources by requiring amendment upon every incremental factual development.  Recognizing this absurdity, *Loreley* explicitly held—***on the exact same issue presented here***—that the decision to stand on

3

and test their belief that the strong inference of scienter was adequately pled did not justify dismissal with prejudice. 797 F.3d at 191 ("The district court's rejection of [p]laintiffs' position that the strength-of-inference requirements had been met by the facts set forth in the original complaint was, without more, insufficient reason to bar [p]laintiffs from repleading.").

Unsurprisingly, the cases Defendants cite do nothing to subvert *Loreley*'s clear and controlling rule. *See* DB at 2-3. Defendants cite *Van Buskirk v. United Group of Cos.*, which dealt with a jurisdictional issue and whether the district court overlooked evidence that would alter its final substantive ruling (*i.e.*, a finding of futility based on the proposed remedy to the jurisdictional defect), **_not_** the standard for when Plaintiff should be given an opportunity to *seek* leave to amend. *See* DB at 2 (citing 935 F.3d 49, 55 (2d Cir. 2019)). Defendants' citation of *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.* is even further afield. *See* DB at 2-3 (citing 2022 WL 2664355, at *7 (E.D.N.Y. Apr. 26, 2022)). Unlike this case and unlike *Loreley*, *Sasson* was not a Rule 9 case, and the plaintiff acknowledged its "failure to plead any facts" to support its theory because it "mere[ly] hope[d] that further evidence will be uncovered in discovery." 2022 WL 2664355, at *7. This scenario falls outside of *Loreley*'s concern that plaintiffs should be entitled to an opportunity to seek leave to amend with "guidance" from the court if heightened pleading standards apply. *Id.*[1]

---

[1] Defendants mistakenly rely upon *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld* for the proposition that the Court properly denied leave to amend without explanation because plaintiff "had an opportunity to assert the amendment earlier . . . [so] a court may exercise its discretion more exactly." DB at 5-6 (citing 921 F.2d 409, 418 (2d Cir. 1990)). *State Trading* was an appeal from a **summary judgment** decision and implicated a motion for leave to amend pursuant to Rule 15. 921 F.2d at 410, 417-18. Also outside of the motion for reconsideration context, Defendants curiously cite *North American Olive Oil Association v. D'Avolio, Inc.* for the proposition that a plaintiff "was made aware of the defects" in the subject complaint but fail to note that: (1) *D'Avolio* is a motion to dismiss order that analyzes plaintiffs' request for leave to amend in depth, unlike here; and (2) Defendants in *D'Avolio* had made four motions to dismiss in total. DB at 1-2 (citing 457 F. Supp. 3d 207, 232-33 (E.D.N.Y. 2020)).

4

In contrast, in legions of cases alleging fraud similar to this one, courts have faithfully applied *Loreley*. *E.g., Barron v. Helbiz, Inc.*, 2021 WL 4519887, at *3-4 (2d Cir. Oct. 4, 2021) (applying *Lorely* in §10(b) fraud case); *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 239 (S.D.N.Y. 2023) (same); *Kusnier*, 639 F. Supp. 3d at 390 (same); *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *20-21 (S.D.N.Y. Sept. 29, 2022) (same); *In re E-House Sec. Litig.*, 2021 WL 4461777, at *18 (S.D.N.Y. Sept. 29, 2021) (same); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 312-13 (S.D.N.Y. 2021) (same); *Okla. L. Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at *10 (S.D.N.Y. Jan. 10, 2020) (same); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 308-09 (S.D.N.Y. 2019) (same); *Fries*, 285 F. Supp. 3d at 723 (same); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 656-57 (S.D.N.Y. 2015) (same); *Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *4 (S.D.N.Y. Nov. 9, 2023) (Rule 9(b) fraud case); *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 2015 WL 5439217, at *6-7 (S.D.N.Y. Sept. 14, 2015) (same).

**B.    Defendants' Misconstrue the "Overlooked" Authority Rule**

In a tacit acknowledgement of *Loreley*'s direct applicability to Plaintiff's Reconsideration Motion, Defendants invoke a self-serving slogan that "Not Discussing a Case Does Not Render It 'Overlooked.'" DB at 3. This truism seeks to vacate the legal standard itself—while not every issue must be discussed explicitly, the "overlooked" standard clearly applies here where no discussion in the MtD Order addressed the basis for dismissing with prejudice contrary to *Loreley*.

Defendants' proffered rule would seem to be that, where a plaintiff cites controlling authority that the district court's ruling contradicts and the district court does not address that authority, a plaintiff is not entitled to seek reconsideration, based on the possibility that the district court considered, but did not discuss. This rule would render reconsideration based on overlooked authority pointless, as it is difficult, if not impossible, to prove a negative.

5

The Defendants' attempts to tie the overlooked guidance from the Second Circuit in *Loreley* to decisions finding reconsideration not warranted fall flat.  Indeed, in *Kassman v. KPMG, LLP*, the court denied reconsideration and found that it had "implicitly" rejected an expert's "rebuttal analysis" by citing to four separate findings in its original opinion analyzing the subject matter of the expert's analysis.  2018 WL 6725306, at *1 (S.D.N.Y. Dec. 21, 2018).  Here, denial of leave to amend was ordered without any analysis or stated reason.  Further, Defendants' attempt to equate an expert's "rebuttal analysis" with controlling Second Circuit law fails.  In the same hapless fashion, Defendants put forth *In re N.Y. Cmty. Bancorp, Inc., Sec. Litig.,* 244 F.R.D. 156, 159 (E.D.N.Y. 2007), in which the court denied a motion for reconsideration where the plaintiff argued it could "recast the Complaint to make clearer the materiality of Defendants' misrepresentations and omissions," but this ***pre-Loreley*** ruling on the merits of a proposed amendment that would have sought to "recast" prior allegations says nothing about when controlling law has been "overlooked."

Similarly, Defendants' other authority falls short.  In *Devinsky v. Kingsford*, another ***pre-Loreley*** case, the court found, in rejecting a motion for reconsideration of dismissal of the plaintiff's negligence claim, it was determinative that "[t]he case consisted of nearly twenty parties, an amended complaint with ten causes of action, and multiple cross motions to dismiss followed by multiple cross motions for summary judgment."  2008 WL 2704338, at *2-*3 (S.D.N.Y. July 10, 2008).  On *Devinsky*'s crowded context, it *may* be reasonable to assume that some issues not explicitly addressed were considered (*i.e.*, not overlooked), but that is not the case here, where there is no discussion in the MtD Order explaining why dismissal was made with prejudice.  In *Elkowitz v. UnitedHealthcare of N.Y., Inc.*, the court found it determinative that the motion "simply reiterates [the party's] original arguments made in support of its motion to

6

dismiss" in rejecting the motion for reconsideration. 2021 WL 2810040, at *1 (E.D.N.Y. July 6, 2021). This has no bearing on the Reconsideration Motion, which is not targeted to the merits of Plaintiff's claims but on the narrow issue of dismissal with futility.

**C.     Amendment Would Not Be Futile Should the Court Grant Plaintiff the Opportunity to Amend**

As Plaintiff touched upon in the Reconsideration Motion, an amendment would not be futile (*see* MFR at 8-9); however, Plaintiff's exemplars in the Reconsideration Motion do not comprise every fact he would raise in an amendment in order to bolster the scienter allegations in accordance with the Court's findings in the MtD Order. Indeed, Plaintiff has not submitted any proposed amended pleading. The issue before the Court is merely whether the denial with prejudice should be reversed, so that procedurally Plaintiff may then seek leave to amend, submitting a proposed amended complaint that could then be evaluated as futile or not. This initial step requesting reconsideration is required because, following entry of dismissal with prejudice, it would have been procedurally improper for Plaintiff to file a Rule 15 motion to amend. Thus, the relevance of futility, at this stage, is exceedingly narrow, and only sneaks in at all, insofar as one could imagine a case with no hope of revival—such as in the case of a dismissal based on the statute of limitations. Thus, Plaintiff noted several new facts, from a source of many others, that he may draw upon in amending the Complaint to cure the deficiencies identified in the MtD Order.

Even though a futility analysis is premature in connection with Plaintiff's Reconsideration Motion, Defendants nevertheless raise futility arguments against an amended pleading that is of their own imagination. *See* DB at 7-11. Revealing Defendants' confusion as to the appropriate analysis for the relief that Plaintiff seeks in the Reconsideration Motion, Defendants seem unsure of the argument they are trying to make. First, Defendants claim, "reconsideration should be denied on the independent ground that it would be futile" (DB at 2), though futility is not a concept

7

for the Court to consider when assessing the Reconsideration Motion. Subsequently, Defendants argue, "Plaintiffs proposed amendment would be futile" (DB at 7), but the Reconsideration Motion is not a motion to amend, and Plaintiff has not submitted a proposed amendment.

Further evidencing their confusion, Defendants cite an inapposite case, *Mirkin v. XOOM Energy, LLC*, which analyzed a proposed amended complaint. *See* DB at 7 (citing 2018 WL 6381456, at *3 (E.D.N.Y. Dec. 6, 2018)). Further distinguishing *Mirkin* from this case is that the *Mirkin* "plaintiffs cite[d] no facts or law that [the court] overlooked." *Id.* at *3.[2] Rather, the *Mirkin* plaintiffs argued that the court "did not place sufficient weight on new allegations [plaintiffs] argue[d] are more important than [the court] found them to be." *Id.* Additionally, Defendants cite motion for reconsideration decisions following adjudication of motions for summary judgment, including one where a movant tried to rehash the merits of a summary judgment decision by "cit[ing] only cases already cited in her" briefs. *See* DB at 4 (citing *Stinson v. Houslanger & Assocs. PLLC*, 2022 WL 1173414, at *1 (S.D.N.Y. Apr. 20, 2022); *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010)). Through his Reconsideration Motion, Plaintiff is not rehashing the merits of the Court's dismissal of his claims. Rather, Plaintiff is seeking reversal of the dismissal with prejudice to seek leave to amend the Complaint to bolster the claims with new facts, and he properly cites both the "overlooked" authority (*Loreley*) and new law reinforcing that dismissal with prejudice was improper. *See, e.g., Esquibel*, 2023 WL 7412169 at *4; *Bristol-Myers*, 658 F. Supp. 3d at 238-39.

---

[2] Another case Defendants cite has this same flaw, as the plaintiff "d[id] not identify controlling principles the Court overlooked that would alter the outcome." *See* DB at 4 (citing *Thomas v. iStar Fin., Inc.*, 520 F. Supp. 2d 478, 481 (S.D.N.Y. 2007)). Plaintiff **has** identified such controlling law here.

As the Reconsideration Motion notes, the Regulatory Orders, from both the U.S. Securities and Exchange Commission and Ontario Securities Commission, which found that Mr. Hilson "willfully violated" the federal securities laws and that he "admitted that he failed to take appropriate steps to ensure the accuracy of Cronos's financial statements" is "just one example" of the "significant new source of factual material" Plaintiff could draw upon when drafting an amended complaint. *See* MFR at 9 (citing ECF No. 54 at 2). In response, Defendants overstate the holding of *Jackson v. Abernathy*. *See* DB at 9 (citing 960 F.3d 94, 98 (2d Cir. 2020)). As an initial matter, the *Jackson* plaintiff did "not identif[y] any individual whose scienter may be imputed to the Corporate Defendants" and alleged only "collective corporate scienter" on appeal. 960 F.4th 94 at 98-99. Furthermore, despite the Defendants' claim that *Jackson* stands for the proposition that "scienter may only be imputed from individuals" in two situations (*see* DB at 9), *Jackson* states, "most courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter." *See* 960 F.3d at 98. As the former Chief Financial Officer and Chief Commercial Officer of Cronos, who has admitted "he failed to take appropriate steps to ensure the accuracy of Cronos's financial statements" (MFR at 9), Mr. Hilson is plausibly "involved in the dissemination of the fraud." 960 F.3d at 98. This is in stark contrast to *Jackson*, where three employees "knew of problems," but "did not themselves possess scienter" and where no "connective tissue" was alleged. *See id.* at 99.

## II.   CONCLUSION

For the foregoing reasons and those stated in the Reconsideration Motion, Plaintiff respectfully requests the Court reconsider its denial of his request for leave to amend the Complaint in the MtD Order and grant Plaintiff leave to file a Second Amended Complaint.

DATED: January 12, 2024

LABATON KELLER SUCHAROW LLP

*/s/ Carol C. Villegas*
Carol Villegas
Christine M. Fox
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-818-0477
Email: cvillegas@labaton.com
       cfox@labaton.com
       jbissell-linsk@labaton.com

*Counsel for Lead Plaintiff Keith D. Norman and Lead Counsel for the Class*


THE SCHALL LAW FIRM
Brian Schall
Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
Email: brian@schallfirm.com
       rina@schallfirm.com

*Additional Counsel for Keith D. Norman*