5, on behalf of a class of all persons and entities who purchased or otherwise acquired securities by Defendant Cronos Group Inc. ("Cronos") against Cronos and two of its senior executives, CEO Michael Gorenstein and CFP Jerry F. Barbato (collectively, "Defendants"). The Consolidated Amended Class Action Complaint alleges that from May 9, 2019, through March 30, 2020, the price of Cronos securities was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions. (*See generally* ECF No. 66.)

On May 19, 2025, the parties engaged in private mediation with Robert Meyer of JAMS which resulted in an agreement in principle to settle the action. (*See* ECF No. 67; *see also* No. 78-1 at p. 13.) On December 2, 2025, the parties filed their motion for preliminary approval of the class action settlement. (ECF No. 78.) Shortly thereafter, the Hon. Eric N. Vitaliano referred the motion for approval of the proposed class action settlement to the undersigned for a Report and Recommendation. (*See* Electronic Order dated December 8, 2025.)

The parties are now before the Court on whether objections by a putative class members to preliminary approval of the proposed class action settlement are "procedurally proper." On December 15, 2025, James Jeffcoat ("Jeffcoat"), a putative class member in this case and a court-appointed representative plaintiff in *Harpreet Badesha v. Cronos Group Inc. et al.*,[1] expressed his intention to "object to preliminary approval of the proposed settlement in" this action. (ECF No. 82, Jeffcoat Decl. at ¶¶ 2-3; *see* ECF No. 83, Garth Decl. at ¶¶ 4-5.) Specifically, Jeffcoat wishes to object before the scheduled hearing because the proposed settlement "purports to release all 'claims asserted in the Ontario Action . . . that arise out of or

---

[1] The *Badesha* action is a securities fraud class action pending in the Ontario Superior Court (No. CV-20-00641990-00CP) (Ontario Sup. Ct. Justice) that involves claims under the Ontario Securities Act arising from substantially the same events at issue in this action. (*See* ECF No. 78-1 at pp. 11-13); *Compare* (ECF No. 66 at ¶¶ 12-17, ¶¶ 83-101), *with Badesha* Amended Statement of Claim (ECF No. 83-1 at ¶¶ 50, 52-90).

2

are based on the purchase acquisition, or sale of Cronos publicly traded common stock on the NASDAQ, or any other public U.S. market for trading stocks, during the Class Period.'" (ECF No. 81 (citing ECF No. 78-3 (Settlement Agreement) at p. 20, § 1(yy)(iv)). Jeffcoat also "intend[s] to object to the proposed notice." (ECF No. 82, Jeffcoat Decl. at ¶ 3.) Jeffcoat avers that "Defendant is attempting to use the flailing U.S. lawsuit" as a "vehicle to settle the more valuable Canadian securities claims in the Ontario Action." ECF No. 81 at p. 2; *see* ECF No. 83, Garth Decl. at ¶¶ 7, 9, 11 (explaining the value of the Ontario lawsuit). Consequently, Jeffcoat requests that the Court enter a briefing schedule on his planned objections because he has not obtained the consent from the other parties who contend that "objections to preliminary approval are 'not procedurally proper.'" (ECF No. 81 at p. 3.)

Following Jeffcoat's letter, the undersigned directed any opposition be filed by December 18, 2025. (Electronic Order dated December 17, 2025). Counsel for Lead Plaintiff Keith Norman filed a response (ECF No. 87) as did counsel for Defendants (ECF No. 88). Both letters echo the idea that shareholder objection at this stage is "premature," "strongly disfavored," and that Jeffcoat's objections *will* be heard but at the appropriate time—prior to final settlement approval. (ECF No. 87 at p. 2 (emphasis in original); ECF No. 88 at p. 1.) Though not permitted by this Court, Jeffcoat filed a reply on December 22, 2025. (ECF No. 89.)

For the reasons that follow, the Court denies Jeffcoat's request for a briefing schedule and finds that objections to preliminary approval to be procedurally improper at this juncture.

## **DISCUSSION**

Under Rule 23(e) of the Federal Rules of Civil Procedure, any class action settlement requires judicial approval, which occurs in two stages: "(1) preliminary approval, where prior to notice to the class a court makes a preliminary evaluation of fairness, and (2) final approval,

3

where notice of a hearing is given to class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y. 2019) (cleaned up). In determining whether a settlement warrants preliminary approval, a district court considers whether it "will likely be able to" approve the settlement under Rule 23(e)(2) — that is, whether it will likely find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 604 (W.D.N.Y. 2011) (noting that the district court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion.") (quoting *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)).

Preliminary approval of a settlement agreement is "the first step in the settlement process" and requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties. *Clark v. Ecolab*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Herbert B, Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg"*) § 11.25 (4th ed. 2002). Indeed, preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input." *In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) (citing *Clark*, 2009 WL 6615729, at *3))

As such, "a plaintiffs' dissatisfaction with certain settlement terms is not a bar to preliminary approval." *Id.* at *2, *3. Notably, "the *proper time* for the Court to consider objections to a settlement is at the final approval hearing." *Id.* at *2 (granting plaintiffs' motion

4

for preliminary approval of class settlement despite one of the named plaintiffs' objection to preliminary settlement approval) (emphasis added); *Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883 (WFK) (JO), 2016 WL 1389598, at *5 (E.D.N.Y. Apr. 7, 2016) ("Plaintiff Yim's disapproval of the amount he will receive under the settlement is not an impediment to preliminary approval, however, because the proper time for the Court to consider objections to a settlement is at the final approval hearing.").

For example, in *Calibuso*, the court denied the proposed intervenor's objection because "the [settlement] train ha[d] already left the station, and the next stop is the preliminary approval hearing." *Calibuso v. Bank of America Corp.*, No. 10-CV-1413 (PKC), 2013 WL 5532631, at *3 (E.D.N.Y. Oct. 4, 2013). There, shortly after the parties submitted their proposed settlement for preliminary approval, counsel for named plaintiff Calibuso sought to object to the settlement on grounds that the "achievements" made in a separate, "similar class action" would be "harmed by the proposed [] settlement" in the *Calibuso* action. *Id.* at *1. The Honorable Pamela K. Chen, in rejecting the proposed objections, noted that the objectors "will have an opportunity, vis-à-vis the settlement process, to object to the Settlement, if she stays in the action, or simply opt out and reject the Settlement altogether." *Id.* at *2. Indeed, "as a practical matter," the court determined that "it would be cumbersome" to permit class members in "separate actions against the same financial institutions" to move between the two cases and "threaten to thwart the parties' . . . interest in progressing with the Settlement" which had been negotiated at length. *Id.* at *3.

Moreover, in *Sjunde AP-Fonden*, the court granted the motion for preliminary approval despite objections to the settlement. *Sjunde AP-Fonden v. General Electric Co.*, No. 17-CV-8457 (JMF), 2025 WL 89271, at *1, *3 (S.D.N.Y. Jan. 14, 2025). There, the objections were made on grounds that "the proposed Settlement would release claims asserted" in a separate, state court

5

action with "factual overlap," while not taking into account the value of those claims. *Id.* at \*1, \*2. The court determined, however, that "these objections are no obstacle to preliminary approval" because "at least for purposes of preliminary approval, the proposed settlement likely provide[d] adequate relief and treats class members equitably relative to each other." *Id.* at \*2.

Additionally, in *Davis*, the court denied the proposed objector's motion to intervene at the preliminary approval stage. 775 F. Supp. 2d at 605. There, the court emphasized there "are alternatives open to [the objectors] which would be less disruptive to these proceedings and to the interests of the settling parties." *Id*. Namely, their interests could be "fully protected at the fairness hearing for final approval of the settlement," just as those who do not wish to be bound by the settlement can opt out prior to the final approval as well. *Id.* at 605-06. Consequently, the court granted the motion for preliminary settlement approval and noted that "there is no reason why" the objections of proposed interveners to the settlement "cannot be fully and adequately aired at the fairness hearing and in the context of the Court's decision whether to finally approve the settlement." *Id.* at 608.

Here, like in *Calibuso* and *Sjunde*, Jeffcoat's objection relates to concerns about the release of claims asserted in the separate, related Ontario Action—one that contains "factual overlap" "against the same financial institutions" as the present case. Further, as highlighted in *Davis* and *Calibuso*, the fairness hearing and final settlement approval process would fully protect the interests of Jeffcoat who wish to object to the terms of the settlement. As such, at the preliminary approval stage, "it would be cumbersome" to permit objectors like Jeffcoat to intervene and "threaten to thwart" the settlement *before* the final approval process. These decisions from this Circuit reiterate that objections to the proposed settlement are properly aired

6

at the fairness hearing in the context of a court's final approval of the settlement, not at the preliminary stage.

This approach is not unique to courts within the Second Circuit. *See, e.g., Doe v. Cin-Lan, Inc.*, No. 08-cv-12718, 2011 WL 37970, at *2-3 (E.D. Mich. Jan. 5, 2011) ("[S]hould Proposed Intervenor choose to join this settlement, but also wish to object to it, they may voice their concerns in writing and in person at the fairness hearing."); *In re TD Ameritrade Account Holder Litigation*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *7 (N.D. Cal. Sept. 13, 2011) (overruling objections in connection with the motion for preliminary approval as they were "germane to the final approval, as opposed to the preliminary approval, of the Settlement"); *In re Warfarin Sodium Antitrust Litigation,* 212 F.R.D. 231, 263–64 (D. Del. 2002) (denying motion to intervene, and noting that "the court provided every class member who did not opt out with the opportunity to present argument or evidence of the unfairness of the settlement in writing and/or orally at the fairness hearing").

The cases cited by Jeffcoat to bolster his position that objections to preliminary approval are procedurally proper do not compel a contrary finding. Jeffcoat first cites to *Aliano v. CVS Pharmacy, Inc.*, a case involving objections to adequacy of representation due to a close, longstanding relationship between the proposed class representative and proposed class counsel. (ECF No. 81 at p. 3); No. 16-CV-2624 (FB) (SMG), 2018 WL 3625336, at *2 (E.D.N.Y. May 1, 2018). Notwithstanding the stark factual differences, the objections to adequacy of representation were raised *at the hearing* on Aliano's motion for preliminary approval, not prior. *See id.* ("I held a hearing on Aliano's motion for preliminary approval on October 23, 2017. During that hearing, counsel for the *Worth* plaintiffs raised concerns about Aliano's standing and adequacy as a potential class representative.").

7

Jeffcoat also relies on *Glover v. Connecticut General Life Insurance Company* to argue that he has standing to object at the preliminary approval stage. (*See* ECF No. 89 at p. 1); No. 3:16-cv-00827 (MPS), 2024 WL 4036721, at *1 (D. Conn. Sept. 4, 2024) (denying motion to intervene as moot because the parties agreed at oral argument that the objectors had standing to object to preliminary approval of the settlement). The issue before this Court is not one of standing to object, but whether objections *prior to* a hearing are procedurally proper—an issue absent in *Glover*. Rather, in *Glover*, the court granted the motion for preliminary approval and immediately set a final hearing date, established the notice requirements for the class, and directed that objections to the settlement be made prior to the final hearing. *See Glover*, 2024 WL 4036721, at *11-13.

Further, Jeffcoat's reference to *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* is equally misguided. (*See* ECF No. 89 at p. 2.) There, the Honorable John Gleeson reiterated the concept that "the threshold for preliminary approval of a proposed class action settlement is meaningfully lower than the threshold for final approval" and that "[c]onsiderations of judicial economy counsel strongly in favor of not converting the preliminary approval process into something akin to the plenary process that attends an application for final approval." No. 05-MD-1720 (JG) (JO), 2012 WL 5989763, at *1 (E.D.N.Y. Oct. 24, 2012). The court also it saw "no need to establish procedures for absent class members—who will have ample rights to be head before any final approval is even considered—to intervene so they can be heard in connection with the pending application for preliminary approval." *Id.* While the court set a hearing for preliminary approval, it did so because of the numerous objections it received prior to preliminary approval and the extensive submissions on those objections. *See id.* These circumstances are seemingly absent from the present case where

8

only one objector has appeared, nor has the Court been presented with any other indicia of disapproval by other class members.

Lastly, the cases cited by Jeffcoat beyond this Circuit—*Jeter v. Bullseye Energy, Inc.*, 2018 WL 2323792, at *2 (N.D. Okla. Feb. 14, 2018), *Tuttle v. Audiophile Music Direct, Inc.*, 2023 WL 2477908, at *6 (W.D. Wash. Mar. 13, 2023), and *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 22 (D.D.C. 2011)—do not alter this Court's conclusion. (*See* ECF No. 89 at p. 2.) The court in *Jeter* noted that an independent evaluator for the settlement was "not needed" because the record before the court and representation afforded to the proposed objectors provided the court with ample information on the fairness, reasonableness, and adequacy of specific aspects of the settlement. 2018 WL 2323792, at *1. Moreover, in *Tuttle*, the court ruled on whether proposed intervenors met the requirements under Rule 24, not whether objections prior to the preliminary hearing were procedurally proper. *See* 2023 WL 2477908, at *4-5. Similarly, *Trombley* is equally silent as to the propriety of when the court should properly receive objections to a motion for preliminary approval.

## **CONCLUSION**

For the foregoing reasons, the Court denies Jeffcoat's request for a briefing schedule and finds that objections prior to preliminary approval to be procedurally improper.

Dated: Central Islip, New York
      January 26, 2026

**S O   O R D E R E D:**
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge
