FILED
CLERK
7/20/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

IN RE CRONOS GROUP INC.
SECURITIES LITIGATION

**REPORT AND RECOMMENDATION**

20-cv-1310 (ENV) (JMW)

------------------------------------------------------------X

Carol Cecilia Villegas
Christine M. Fox
Francis P. McConville
Nicole M. Zeiss
Jake Bissell-Linsk
**Labaton Sucharow LLP**
140 Broadway
New York, NY 10005
*Counsel for Lead Plaintiff Keith D. Norman*

David Maxwell James Rein
Sharon L. Nelles
Nikko Price
**Sullivan & Cromwell**
125 Broad Street
New York, NY 10004
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

Plaintiff Keith D. Norman ("Norman" or "Lead Plaintiff") on behalf of himself and all others similarly situated, commenced this class action against Defendant Cronos Group Inc. ("Cronos") and two of its senior executives, CEO Michael Gorenstein and CFP Jerry F. Barbato (collectively, "Defendants") alleging federal securities violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Specifically, Lead Plaintiff

alleges that from May 9, 2019 through March 30, 2020, the price of Cronos securities was artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions. (*See generally* ECF No. 66.)

Before the Court on referral from the Hon. Eric N. Vitaliano is Lead Plaintiff's Motion for Preliminary Settlement Approval (ECF No. 78.)[1] (*See* Electronic Order dated 12/08/25.) Lead Plaintiff asks the Court to enter an Order (i) preliminarily approving the proposed Settlement[2] of this securities class action; (ii) preliminarily certifying the Settlement Class and appointing Lead Plaintiff as Class Representative and Labaton Sucharow LLP ("Labaton") as Class Counsel, for purposes of the Settlement only; (iii) approving the form and manner of the proposed notice to the Class; (iv) scheduling a date for the final Settlement Hearing; and (v) granting such other and further relief as the Court may deem fair and proper. (ECF No. 78.) In his Memorandum of Law, Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd. ("A.B. Data" or "Claims Administrator") as Claims Administrator. (ECF No. 78-1 at 2.) For the reasons stated herein, it is respectfully recommended that the motion be **GRANTED**.

## BACKGROUND

### I. Factual History

The following facts are assumed true only for purposes of this motion. Cronos Group, Inc. ("Cronos" or the "Company") is a Canadian medical marijuana company that operates in several international markets, predominantly in Canada and the United States. (*See* ECF No. 37 at ¶ 3.) CEO Michael Gorenstein and CFO Jerry F. Barbato (collectively "Defendants"), are chief officers within the Company. (*See* ECF No. 78-1 at 1.) Cronos sought to establish various

[1] Mr. James Jeffcoat filed a letter for planned objection to the motion for preliminary approval of the settlement order which was subsequently denied as procedurally improperly. (ECF Nos. 81, 91.)
[2] Unless otherwise stated herein, capitalized terms throughout this Report and Recommendation have the meanings ascribed to them in the Settlement Agreement (ECF No. 78).

cannabis products, develop a robust international supply chain, and develop valuable intellectual property within the international cannabis market. (*See* ECF No. 37 at ¶ 3.) Lead Plaintiff purchased Cronos securities on the NASDAQ and other U.S. public markets. (*Id*. at ¶ 1.) From May 9, 2019, to March 30, 2020, inclusive (the "Class Period"), Defendants allegedly reported artificially inflated revenues using accounting fraud, such as false reporting of sales that did not occur. (*Id*. at ¶ 1-2.)

In Quarter 1 of 2019, Cronos began to artificially raise its revenue. (*Id*. at ¶ 7.) Cronos and MediPharm, a company that specializes in the production of pharmaceutical grade cannabis products, entered into a Tolling Agreement whereby Cronos was to supply unpurified product to MediPharm for processing, and MediPharm would retain a fee from the sale of the refined product by Cronos. (*Id*. at ¶¶ 53-55.) In the Supply Agreement, Cronos also agreed to purchase specific quantities of purified product from MediPharm, subject to bilateral discretionary expansion of the quantities to be purchased by Cronos over time. (*Id*.) Upon transfers of product from Cronos to MediPharm, Cronos began booking those transactions as sales generated, despite the transfers essentially constituting a "round-trip" transaction in conformity with the Supply Agreement. (*Id*. at ¶¶ 59-61.) The temporary transfer of product by Cronos for processing by MediPharm, in exchange for a fee of the refined product sold by Cronos, resulted in reciprocal transfers that lacked commercial substance, failing to generate revenue. (*Id*. at ¶¶ 64-65.)

As a result of Cronos' fraudulent recognition of revenue from its reciprocal non-revenue generating transactions with MediPharm, Cronos' stated revenue was artificially inflated during the Class Period. (*Id*. at ¶ 70.) On March 30, 2020, Cronos issued corrective statements about its falsified financial reporting during the Class Period, disclosing the existence of inadequate internal controls and material weakness in the Company's financials. (*Id*. at ¶¶ 113, 125.)

## II. <u>Procedural History</u>

On March 11, 2020, Norman, on behalf of himself and others similarly situated who purchased or otherwise acquired Cronos securities, commenced this class action alleging violations of federal securities laws under Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (ECF No. 1.) On October 22, 2020, after the filing of competing lead plaintiff motions pursuant to the Private Securities Litigation Reform Act ("PSLRA"), Magistrate Judge Steven I. Locke appointed Norman as Lead Plaintiff, approved Labaton Sucharow LLP (f/k/a Labaton Keller Sucharow LLP) as Lead Counsel, and renamed the Action *In re Cronos Inc. Securities Litigation*, No. 1:20-CV-01310-ENV-SIL. (ECF No. 35.)

On November 23, 2020, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Amended Complaint") asserting claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, against Cronos and two of its senior executives, CEO Michael Gorenstein and CFO Jerry F. Barbato. (ECF No. 37 at 1.) The Amended Complaint alleged that from May 9, 2019, through March 30, 2020, inclusive, the price of Cronos securities was artificially inflated as a result of the Defendants' allegedly false and misleading statements and omissions. (*Id.*) The price of Cronos' common stock subsequently declined when the alleged truth was revealed through a series of partial corrective disclosures. (*Id.*)

The Defendants' motion to dismiss, Lead Plaintiff's opposition, and Defendants' reply were bundle filed on April 22, 2021. (ECF Nos. 45-47.) On November 11, 2023, the Court granted the motion to dismiss with prejudice, because the allegations in the Amended Complaint did not adequately plead scienter. (ECF No. 57.) On December 1, 2023, Lead Plaintiff filed a

motion for reconsideration on the portion of the order dismissing the Amended Complaint "with prejudice" (ECF Nos. 59-60), which the Court subsequently granted on November 29, 2024, permitting the Lead Plaintiff to file a second amended complaint. (ECF No. 64.)

On January 10, 2025, Lead Plaintiff filed the Second Amended Class Action Complaint (the "Second Amended Complaint"). (ECF No. 66.) The Second Amended Complaint alleged the same causes of action against the same Defendants, and with the same class definition as the Amended Complaint, but included additional factual details to support scienter. (*Id.*) Pursuant to the Court-ordered briefing schedule, Defendants were to serve their motion to dismiss the Second Amended Complaint by March 11, 2025, and Lead Plaintiff was to serve his opposition by May 12, 2025. (*See* Electronic Order dated 12/17/2024.)

On May 30, 2025, the parties notified the Court that they had reached an agreement in principle to settle the Action, and accordingly requested a stay of upcoming deadlines, *sine die*. (ECF Nos. 67, 67-1.) On September 30, 2025, the parties submitted a status report stating that a draft settlement was shared with lead plaintiff's counsel in *Harpreet Badesha v. Cronos Group, Inc. et al.*, Court File No. CV-20-00641990-00CP (Ontario Sup. Ct. Justice) (the "Ontario Action") for review, and that the parties planned to submit the proposed settlement after review by the Ontario counsel. (ECF No. 74).

On December 12, 2025, Lead Counsel, Labaton, filed the motion for preliminary approval of proposed class action settlement (ECF No. 78), which was referred to the undersigned for Report and Recommendation ("R&R"). (*See* Electronic Order dated 12/08/2025.)

**III. The Ontario Action**

On June 3, 2020, a different Cronos shareholder filed a factually similar claim in the Ontario Superior Court of Justice captioned *Harpreet Badesha v. Cronos Group, Inc. et al.*, Court File No. CV-20-00641990-00CP (Ontario Sup. Ct. Justice). In addition to the factual similarities, the Ontario Action named the Defendants in the current action, as well as other directors, officers, and employees of Cronos as defendants: William Hilson, Keving Crosthwaite Jr., Bronwen Evans, Murray Garnick, Bruce Gates, Jason Adler, James Rudyk, Jody Begley, Alan Friedman, and Michael Coates. (ECF No. 78-1 at 4-5.) The Ontario Action generally raised the same allegations as this Action, based on the same four corrective disclosures as the Second Amended Complaint, as well as a fifth alleged corrective disclosure on March 19, 2020. (*Id*. at 5.)

On October 10, 2023, the class in the Ontario Action was certified and defined as "[a]ll persons and entities who, during the period from May 9, 2019, at 6:59 a.m. ET to March 30, 2020, at 4:33 p.m. ET acquired Cronos shares in the secondary market other than Excluded Persons." (*Id*.) The certified class in the Ontario Action includes shareholders who purchased shares on the NASDAQ and the Toronto Stock Exchange ("TSX"). (*Id*.)

On January 22, 2024, the Ontario court approved the notice of certification and opt-out deadline of July 22, 2024. (*Id*.) Notice for the Ontario Action was sent in March 2024, and the opt-out deadline has since passed.

**<u>THE PROPOSED SETTLEMENT</u>**

The total settlement fund amount is $10,000,000 ("Settlement Fund"). (ECF No. 78-1 at 6.) No later than 30 days of the entry of this Order, Cronos will deposit this amount into an account established and administered by A.B. Data at a financial institution agreed upon by Class

Counsel and Defendant. (*See* ECF No. 78-3 at ¶ 8.) The Settlement Fund shall be used to pay for the following: (i) any taxes; (ii) Notice and Administrative Expenses; (iii) attorneys' fees and Litigation Expenses awarded by the Court; (iv) any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants. (*Id*. at ¶ 12.)

The Settlement Class is defined as "all persons and entities, irrespective of country of residence, who or which purchased or otherwise acquired the publicly traded common stock of Cronos on the NASDAQ, or any other public U.S. market for trading stocks, during the period from May 9, 2019 through March 30, 2020, both dates inclusive (the Class Period), and were allegedly damaged thereby" and are not excluded by definition. (ECF No. 78-3 at ¶ 1(fff).) Defendants have stipulated to the certification of the Settlement Class only for purposes of the Settlement. (*Id*. at ¶ 3.)

Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) all directors, officers or other employees of Cronos during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling or beneficial interest; (v) Cronos's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); (vi) the legal representatives, affiliates, control persons, heirs, successors-in-interest, or assigns of any such excluded persons; and (vii) any persons and entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court. (*Id*. at ¶ 1(fff).) Purchases and acquisitions of Cronos common stock on the Toronto Stock Exchange or any non-U.S. public market for trading stocks are not part of the definition of the Settlement Class. (*Id*.)

Upon entry of the final judgment, Defendants "on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacity as such," agree to release any and all claims against every one of the Released Plaintiff Parties, and shall forever be barred from raising any and all such claims against the Released Plaintiff Parties, either directly or indirectly. (*Id*. at ¶ 6.) "Defendants expressly reserve the right to seek contribution against any Person whose liability to the Settlement Class has been released or extinguished by the Settlement." (*Id*. at ¶ 7.) In turn, Plaintiffs agree to release "any and all" claims that "arise out of or are based upon both: (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action, and (2) the purchase, acquisition, or sale of Cronos publicly traded common stock on the NASDAQ, or any other public U.S. market for trading stocks, during the Class Period." (*Id.* at ¶¶ 1(yy), 5.)

The Settlement Fund will pay for the costs of sending the notices and any other costs associated with A.B. Data's administration of the Settlement Agreement. (*See id.* ¶¶ 1(ff), 12.) Lastly, upon agreement, Class Counsel may receive up to one-third of the Settlement Fund as attorneys' fees, plus reimbursement for expenses up to $200,000. (ECF No. 78-1 at 17–18.)

## DISCUSSION

Lead Plaintiff seeks class certification for settlement purposes pursuant to Rules 23(a) and 23(b)(3). (ECF No. 78-1 at 20.) Lead Plaintiff requests an order to (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiff as Class Representative, and Lead Counsel as Class Counsel; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses, Claim Form, Summary Notice, and Postcard Notice; (iv) approve procedures for

distributing notices and Claim Forms and publishing the Summary Notice; (v) set a time and date for the settlement hearing; and (vi) appoint A.B. Data to administer the Settlement process. (*Id.* at 2.) The Court addresses each in turn.

### A. **Conditional Class Certification**

"Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637 (JMW), 2025 WL 1519147, at *3 (E.D.N.Y. May 28, 2025) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997)). Additionally, where, as here, a plaintiff moves to certify the class pursuant to Rule 23(b)(3), the plaintiff is also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(3)). This is satisfied if the resolution of the legal and factual questions of each class member's case can be achieved through generalized proof, and those issues are more substantial than the issues which are subject to individualized proof. *Id.*

The Second Circuit has also recognized an implicit requirement of "ascertainability" within Rule 23(a). *Piney v. City of New York*, No. 25-CV-671 (DEH) (SLC), 2026 WL 1345920, at *4 (S.D.N.Y. May 14, 2026) ("In addition to the four Rule 23(a) prerequisites, 'the Second Circuit also recognizes an implicit ascertainability requirement, which commands that the proposed class be defined using objective criteria that establish membership with definite boundaries.'") (quoting *Martínek v. AmTrust Fin. Servs., Inc.*, No. 19-CV-8030 (KPF), 2022 WL 326320, at *3 (S.D.N.Y. Feb. 3, 2022)). Rule 23(a) "does not set forth a mere pleading

standard," but instead requires that the proponent of certification "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

The requirements for Rule 23 class certification are subject to a rigorous analysis and must be established by a preponderance of the evidence. *Flores v. Mission Ceviche, LLC*, No. 24-CV-3626 (KHP), 2025 WL 2636303, at *6 (S.D.N.Y. Sept. 12, 2025) ("Plaintiffs bear the burden of showing that Rule 23's requirements are satisfied by at least a preponderance of the evidence") (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013)). Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013). At bottom, the District Court has "substantial discretion in determining whether to certify a class." *Id.* For purposes of settlement, Defendants do not oppose this Motion for Preliminary Settlement Approval.

***i. Rule 23(a)(1): Numerosity***

The numerosity prong of Rule 23(a) requires that individuals in the proposed class be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when the proposed class is greater than or equal to 40 members. *Piney*, 2026 WL 1345920, at *7 (quoting *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)); *see also Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 95 (E.D.N.Y. 2015). The ultimate inquiry is whether the class be so numerous that joinder of all members is impracticable.

*Swanson v. Manhattan Beer Distributors, LLC*, No. 15-CV-5358 (ENV) (TAM), 2026 WL 850837, at *13 (E.D.N.Y. Mar. 27, 2026) (quoting *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010)); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)). Thus, in considering the practicability of joinder, courts focus on the factors articulated by the Second Circuit: (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members. *Robidoux*, 987 F.2d at 936.

Here, the class includes all persons who purchased Cronos stock on the NASDAQ and other U.S. securities trading exchanges between May 9, 2019, through March 30, 2020, inclusive. (*See* ECF Nos. 37 at ¶ 155; 78-1 at 21.) Cronos had tens of millions of shares of common stock issued and outstanding during the Class Period, which were likely owned by many thousands of investors. (ECF No. 78-1 at 21.) Thus, based on the volume of common stock issued and outstanding during the Class Period, numerosity is easily satisfied.

***ii. Rule 23(a)(2) and (3): Commonality/Typicality***

"The commonality and typicality requirements tend to merge into a single inquiry: whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absences." *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *3 (E.D.N.Y. Aug. 16, 2022) (citing *Dukes*, 564 U.S. at 349) (internal quotation marks omitted); *Marisol A*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar

considerations animate analysis of Rules 23(a)(2) and (3)."). Rule 23(a)(2) requires a plaintiff to show "questions of law or fact common to the class" and Rule 23(a)(3) requires that plaintiff's claims "are typical of the claims. . . of the class." *Avila*, 2022 WL 3370024, at *3; Fed. R. Civ. P. 23(a)(2)-(3). This can be "easily satisfied" by a single common issue. *Avila*, 2022 WL 3370024 at *3; *see also Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *6 (E.D.N.Y. Mar. 28, 2022) ("Even a single common question will suffice.") (internal citation and quotation marks omitted). Critically, a plaintiff must demonstrate the proposed class has suffered the same injury. *Avila*, 2022 WL 3370024 at *3.

> Typicality, which requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class[.] Fed. R. Civ. P. 23(a)(3), allows courts to consider whether a putative class representative is subject to unique defenses which threaten to become the focus of the litigation[.]

*Cheng v. HSBC Bank USA, N.A.*, No. 23-CV-7383, 2024 WL 4835268, at *1 (2d Cir. Nov. 20, 2024) (internal citations and quotation marks omitted).

Here, Lead Plaintiff asserts that commonality is readily met because many significant common questions of law and fact exist, including whether:

> (i) the Exchange Act was violated by Defendants' acts as alleged; (ii) statements made by Defendants during the Class Period misrepresented material facts about the business and financial conditions of the Company; (iii) certain defendants acted knowingly or with deliberate recklessness in issuing the false filings; and (iv) the price of Cronos common stock was artificially inflated.

(ECF No. 78-1 at 21.)

As such, all class members have common questions directed at the alleged misconduct from Defendants. "[W]hether members of the proposed class sustained damages as a result of the alleged misconduct" is a common issue of fact to all class members. *In re Didi Global Inc. Sec. Litig.*, No. 21-CV-5807 (LAK) (VF), 2025 WL 1909295, at *9 (S.D.N.Y. July 7, 2025); *see In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL

2063864, at *5 (S.D.N.Y. June 8, 2022) (finding common questions of law and fact between the class members as each member was a card holder whose card information was subject to a data breach). Additionally, all claims are pursuant to federal securities laws under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 164 (S.D.N.Y. 2007) (finding commonality satisfied because "[p]laintiffs are suing under the same federal securities laws" and "the success of each plaintiff's claim turns on establishing the existence, nature and significance of the same alleged misrepresentations and omissions") (internal citation omitted).

It therefore follows that typicality is also met because Lead Plaintiff's claims stem from the same alleged course of conduct by the Defendants as the Settlement Class Members' claims. (ECF No. 78-1 at 22). *See In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45–46 (S.D.N.Y. 2013) (quoting *Robidoux*, 987 F.2d at 936–37) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). Therefore, commonality and typicality are both satisfied.

***iii. Rule 23(a)(4): Adequacy of Representation***

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal citation and quotation marks omitted); *Cheng*, 2024 WL 4835268, at *1 ("The test for adequacy, … is twofold: 'the proposed

class representative [1] must have an interest in vigorously pursuing the claims of the class, and [2] must have no interests antagonistic to the interests of other class members.'") (internal citations omitted).

As typicality is established, Lead Plaintiff may be appointed as Class Representative for the class because Lead Plaintiff's interest, as established in the foregoing and subsequent sections, mirrors that of the proposed class. *See In re Morgan Stanley Data Sec. Litig.*, No. 20-CV-05914 (PAE), 2022 WL 3141297, at *2 (S.D.N.Y. Aug. 5, 2022) (finding adequacy satisfied because plaintiffs' interests were not conflicting and were co-extensive with all other claims from an identical data breach); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 136 (E.D.N.Y. 2020) (finding adequacy satisfied because "the remedies that Plaintiffs seek would provide the same relief to each member of the proposed classes."); *Amigon v. Safeway Constr. Enters., LLC*, No. 20-CV-5222 (PK), 2024 WL 5040436, at *4 (E.D.N.Y. Dec. 9, 2024) (approving Plaintiff as class representative as there was no indiciation that his interests were antagonistic to other class members)).

Next, as to Class Counsel, Lead Plaintiff contends that Labaton Sucharow LLP is "amply qualified and experienced." (*See* ECF No. 78-1 at 23; ECF No. 78-4, firm resume of Labaton.) Labaton has been appointed class counsel on behalf of numerous nationwide and multistate class actions. *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV. 8141 DAB, 2012 WL 345509, at *1 (S.D.N.Y. Feb. 2, 2012) (securing $725 million for the class, in a case arising from allegations of bid rigging and accounting fraud); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259 (S.D.N.Y. 2012) (securing a $294 million settlement for allegations against Bear Stearns and certain officers and directors for misleading statements and omissions in connection with Bear Stearns' financial condition); *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-CV-397

(DMC) (JAD), 2013 U.S. Dist. LEXIS 141475 (D.N.J. Oct. 1, 2013) (securing a $473 million settlement for the class three weeks before trial). Labaton's class action experience more than qualifies the firm to be adequate class counsel. *Cf. In re Waste Mgmt. Sec. Litig.*, No. 22-CV-4838 (LGS), 2025 WL 958467, at *14 (S.D.N.Y. Mar. 31, 2025) (appointing a firm as class counsel based upon that firm's "substantial experience in prosecuting securities fraud class actions, having served as lead or co-lead counsel in many securities class actions"); *Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 231 (E.D.N.Y. 2023) (same). Accordingly, the adequacy requirement is met.

In sum, Lead Plaintiff has satisfied the requirements of Rule 23(a).

***iv. Ascertainability***

"In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability." *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944, 2025 WL 1649323, at *20 (E.D.N.Y. June 11, 2025) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 50 (E.D.N.Y. 2019)) (citation modified). The ascertainability requirement does not require is a showing of administrative feasibility at the class certification stage. *In re Petrobras Sec.*, 862 F.3d 250, 265 (2d Cir. 2017). Here, the proposed class is clearly ascertainable as it can be defined with objective criteria. That is, the class will consist of "all persons and entities, irrespective of country of residence, who or which purchased or otherwise acquired the publicly traded common stock of Cronos on the NASDAQ, or any other public U.S. market for trading stocks, during the period from May 9, 2019 through March 30, 2020, both dates inclusive . . . ." (ECF No. 78-3 at ¶1(fff).) *Oklahoma Firefighters Pension & Ret. Sys. v. Musk*, No 22-CV-03026 (ALC), 2026 WL 878962, at *4 (S.D.N.Y. Mar. 31, 2026) (finding ascertainability satisfied because there was a concrete timeframe for the class

period in which the plaintiffs purchased the defendant's stock.). Thus, Plaintiffs have satisfied the requirement of ascertainability.

***v. Rule 23(b)(3): Predominance and Superiority***

Plaintiffs must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Avila*, 2022 WL 3370024, at *4.

***a. Predominance***

Generally, the predominance requirement is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Waste Mgmt. Sec. Litig*., 2025 WL 958467, at *3 (quoting *Scott v. Chipotle Mexican Grill, Inc*., 954 F.3d 502, 512 (2d Cir. 2020)). The focus is on whether there are questions of liability common to the class members. *Lewis v. Alert Ambulette Serv. Corp*., No. 11-CV-442, 2012 WL 170049, at *12 (E.D.N.Y. 2012). "[A] Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof." *Newton v. R.C. Bigelow, Inc*., No. 22-CV-5660 (LDH) (SIL), 2025 WL 994721, at *8 (E.D.N.Y. Feb. 14, 2025) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011)), *report and recommendation adopted*, No. 22-CV-5660 (LDH) (SIL), 2025 WL 965690 (E.D.N.Y. Mar. 31, 2025).

Here, Defendants' alleged fraudulent statements and omissions affected all the Settlement Class Members in the same manner, such that the common questions of law and fact

predominate over individual questions. (ECF No. 78-1 at 21.) Defendants' public statements and SEC filings were material and common to the class, for purposes of Rule 23(b)(3). *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 467 (2013) (holding that materiality is a common question for purposes of Rule 23(b)(3)); *see also B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738 (MKB) (JO), 2021 WL 234550, at *21 (E.D.N.Y. Jan. 19, 2021) ("[C]ommon issues predominate when liability is determinable on a case-wide basis, even where class members have individualized damages.").

The few, if any, individualized factual issues amongst different Class Members do not have any weight on the Defendants' alleged liability for federal securities violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. (*See generally* ECF No. 66.) "To determine whether common issues are more substantial than individual ones, the Court assesses (1) the elements of the claims and defenses to be litigated, and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 486 (E.D.N.Y. 2024) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138) (2d Cir. 2015)) (internal quotation marks omitted).

Thus, the questions of law and fact that are common to the Settlement Class predominate over any individual questions and can be answered with the same evidence. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 583-84 (S.D.N.Y. 2008) ("Because the central and predominant focus of the action is Defendants' alleged fraudulent conduct, each Class Member is similarly

situated, and common questions predominate over individual questions."). For these reasons, the predominance requirement is met.

***b. Superiority***

"The superiority requirement is satisfied where a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081, at *4 (E.D.N.Y. Oct. 8, 2020), *report and recommendation adopted*, No. 18-CV-885 (FB) (LB), 2021 WL 722412 (E.D.N.Y. Feb. 24, 2021) (quotation marks omitted). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). A class action is superior where it "facilitate[s] the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13-CV-2541 (KNF), 2014 WL 1378922, at *6 (S.D.N.Y. 2014).

Here, a class action would be superior to any other available method for fairly and efficiently adjudicating this controversy. *See Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 51 (E.D.N.Y. 2024) ("[T]he relatively small value of each individual claim, the limited resources of each class member, the lack of any pending individual suits concerning the allegations in this action, and the fact that the conduct occurred within the district all support finding that the superiority requirement has been satisfied."). Lead Plaintiff's motion represents

that, with respect to Rule 23(b)(3)(A)-(B), there is no evidence that there are numerous class members who wish to bring separate individual actions. (ECF No. 78-1 at 24.) The Settlement may also be appropriately handled in this District, as it is evidenced that purchases of Cronos stock took place within the District. (*Id.*) "The superiority requirement is designed to avoid 'repetitious litigation and possibility of inconsistent adjudications.'" *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *5 (S.D.N.Y. Jan. 15, 2025) (citations omitted). Because there is a plethora of possible actions that could be brought at different times in different venues, the superiority requirement is met.

Accordingly, because predominance and superiority have been met, the requirements under Rule 23(b)(3) have been satisfied and the Class should be preliminarily certified.

**B. Preliminary Approval of the Class Settlement**

Preliminary approval is the first step in the settlement of a class action. *Abarza*, 2025 WL 1519147, at *7 (citing *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014)). If approved, plaintiffs next provide notice of a hearing where class and settling parties are provided an opportunity to be heard concerning final court approval. *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020) (noting that the members and settling parties are provided an opportunity to be heard concerning final court approval).

At this preliminary stage, the court is only tasked with evaluating the settlement for fairness, adequacy, and reasonableness, and to ensure the agreement is not a product of collusion. *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (quoting *In re Traffic Exec. Ass'n-E*, 627 F.2d 631, 634 (2d Cir.1980)).

Settlement approval involves "a three-step process of review":

> The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. The second step consists of providing notice of a hearing ... to class members and holding a hearing to ensure that class members and settling parties are provided the opportunity to be heard[.] The court turns to the third step—final approval—only if the Court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard to all class members.

*C.K. through P.K. v. McDonald et al.*, No. 22-CV-1791 (NJC) (JMW), 2025 WL 2388687, at *6 (E.D.N.Y. Aug. 18, 2025) (internal citations and quotation marks omitted).

Rule 23(e)(2), as amended in 2018, provides certain factors for a court to consider upon preliminary approval. Specifically, whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length

(C) The relief provided for the class is adequate, taking into account

  (i) The costs, risks, and delay of trial and appeal;

  (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) The terms of any proposed award of attorney's fees, including timing of payment

  (iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The *Grinnell* factors include:

(1) The complexity, expense and likely duration of the litigation;
(2) The reaction of the class to the settlement;
(3) The stage of the proceeding and the amount of discovery completed;
(4) The risks of establishing liability;
(5) The risks of establishing damages;
(6) The risks of maintaining a class action through the trial;
(7) The ability of the defendants to withstand a greater judgment;
(8) The range of reasonableness of the settlement fund in light of the best possible recovery; and
(9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*.

The "Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors." *In re Payment Card*, 330 F.R.D. at 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id*. Both sets of factors are considered below.

***i. Adequate Representation by Class Representative and Class Counsel***

As set forth above, Plaintiffs and the proposed Class Counsel are adequate representation for the Class. *See supra*, Section A.iii. Lead Plaintiff's interest is adequately aligned with the Class Members, and Class Counsel, Labaton, is sufficiently experienced and qualified to represent the class. *Id*. This factor, therefore, weighs in favor of granting preliminary approval. *See Buchanan*, 2020 WL 8642081 at *6.

***ii. Arms-Length Negotiations After Meaningful Discovery***

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after

meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116. This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

The absence of formal discovery does not necessarily preclude preliminary approval. *See In re 3D Sys. Sec. Litig.*, No. 21CV1920NGGTAM, 2024 WL 50909, at *10 (E.D.N.Y. Jan. 4, 2024) (approving settlement and finding that counsel had sufficient information to appreciate the merits of the case where they have not engaged in formal discovery but did thoroughly investigate the strengths and weaknesses of the claims and conducted extensive legal research in responding to the motion to dismiss). "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004)).

Here, Lead Plaintiff, prior to agreeing to a settlement, conducted a thorough and informed investigation amounting to an informal discovery on issues specific to this matter and common to Class Members. (ECF No. 78-1 at 19.) The pre-Settlement Agreement inquiry by Lead Counsel included a thorough review of the documents filed with the Ontario Capital Markets Tribunal, Ontario Securities Commission, and the SEC. (ECF No. 78-1 at 19.) There were also two detailed amended complaints drafted by Lead Counsel, engagement in extensive motion practice, in-person mediation session and continued negotiations moderated by a mediator, and consultation with cannabis industry experts in the areas of accounting and damages, as well as arms-length negotiations. (*Id.*) *See Beckman*, 293 F.R.D. at 475 ("Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The Parties' participation in a day-long mediation allowed them to further

explore the claims and defenses."); *Hunter*, 2025 WL 1649323, at *19 ("[W]hile no discovery has been taken by the parties, Hunter's investigation into his claim compels a finding that the parties possess the information necessary to negotiate a well-informed, and ultimately fair and reasonable settlement.").

Therefore, this factor weighs in favor of granting preliminary approval.

***iii. Adequate Relief for the Class***

The Court is required to consider whether the settlement provides adequate relief to the putative class. *See* Fed. R. Civ. P. 23(e)(2)(C). This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . . ; (iii) the terms of any proposed award of attorney's fees . . . ; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

***a. Costs, Risks, and Delay of Trial and Appeal***

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019)). "Class action suits in general have a well-deserved reputation as being most complex." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)) (citation modified). This case is no exception.

Although the parties completed informal discovery during the negotiations process, it is quite clear that if this case proceeds, it would result in significant additional expenses and delay, as it is acknowledged that Defendants could raise several substantive arguments that could have reduced, or altogether eliminated, any recovery for Class Members. (ECF. No. 78-1 at 12.) Lead Plaintiff's argument regarding scienter relies on imputing Cronos employees' scienter to the company, then reframing the strength of the inference of scienter as to the individual Defendants.[3] (*Id.*) Defendants, in their motion to dismiss (ECF No. 45-1 at 10), note that the individual Defendants increased their Cronos holdings, which would be inconsistent with any knowledge of artificial inflation of the stock price due to the Defendants' alleged misstatements. (ECF No. 78-1 at 13.) *See In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 582-583 (S.D.N.Y. 2011) ("[C]ourts may use information from SEC filings regarding a defendant's stock sales to determine whether such sales were unusual or suspicious" for purposes of scienter) (internal quotations omitted). Thus, if the case were to proceed, Lead Plaintiff would face substantial obstacles in establishing the scienter requirement under the Exchange Act. *Piney*, 2026 WL 1345920, at *8 ("Further litigation would inevitably involve additional expense and delay, extensive fact discovery, and motion practice.").

Thus, the risks, costs, delay of trial and possible appeal would be significant, so this factor weighs in favor of preliminary approval. *See Rosenfeld*, 2021 WL 508339 at *5.

[3] The Amended Complaint was dismissed with prejudice on November 11, 2023 for falling short of the standard to plead scienter under the PSLRA and applicable case law. (ECF. No. 57 at 21.) Lead Plaintiff's motion for reconsideration was granted on November 29, 2024 (ECF No. 64), and the Second Amended Complaint, filed on January 10, 2025, adequately pleaded scienter under the PSLRA and applicable case law. (ECF No. 66.)

### *b. Effectiveness of the Proposed Method of Distributing Relief to the Class*

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Id*. (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The method does not need to be perfect; it just needs to have a reasonable, rational basis. *Sapozhnikov v. New York Cmty. Bank*, 824 F. Supp. 3d 242, 254 (E.D.N.Y. 2026).

Lead Plaintiff asks the Court to authorize the retention of A.B. Data as Class Administrator, who will then be directed to publish the Notice and Claim Form and send direct notice via email in accordance with the Notice Plan on the Settlement Agreement. (ECF No. 78-3, Ex. A, at ¶ 8.) *In re Payment Card*, 330 F.R.D. at 59 (finding email notice reasonable where the claims administrator worked with the parties to compile contact information of class members). The Notice Plan provides proper measures of correcting any issues that may occur, advises Class Members of their rights, and answers any questions Class Members may have. (*Id*. at ¶¶ 8-10.) *See Sapozhnikov*, 824 F. Supp. 3d at 254 ("Notice is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members thereunder.") (quoting *In re Merrill Lynch*, 246 F.R.D. at 166).

If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six months from the date of initial distribution, the Claims Administrator will redistribute funds accordingly to Authorized Claimants who have cashed their checks, but the Authorized Claimants will not be entitled to a distribution that exceeds their recognized loss as defined in the Plan of Allocation. (ECF No. 78-3 at ¶ 31.); *see Whelan v. Diligent Corp.*, 349 F.R.D. 79, 86 (S.D.N.Y. 2025) ("Plaintiffs' proposed method of relief distribution is effective, and it will ensure the equitable and timely

distribution of a settlement fund without burdening the process in a way that will unduly waste the fund.") (citing *In re Credit Default Swaps Antitrust Litig.*, No. 13-Md-2476, 2016 WL 2731524, at *9 (S.D.N.Y Apr. 26, 2016)) (internal citations and quotations omitted). A.B. Data will also have the responsibility of processing the payment of Approved Claims to the Settlement Class. (ECF No. 78-3 at ¶¶ 27–28, 33.)

Thus, this factor weighs in favor of preliminary approval.

***c. Terms of Any Proposed Attorney's Fees***

"The Court will engage in a full analysis at the final approval stage or thereafter, taking into consideration . . . the nature of the case . . . ." *In re Payment Card*, 330 F.R.D. at 42. The Settlement Agreement states that Class Counsel shall be entitled to an award of reasonable attorneys' fees determined by the Court limited to no more than one-third (33.33%) of the Settlement Fund ($10,000,000.00). (ECF No. 78-1 at 6.) Additionally, the reasonableness of attorneys' fees is to be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation expenses. (*Id*. at 17.) *Whelan*, 349 F.R.D. at 91 ("The Court will consider and rule on any application for attorney's fees, costs, and service payments, as well as any opposition to such application, at the fairness hearing.").[4] Counsel will be compensated by the Settlement Fund, under the common fund doctrine, and will not be compensated by the Defendants. (*Id*.) "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6

[4] The Court does not at this juncture engage in a lodestar cross-check analysis; rather that will be done at the final approval stage. *See, e.g.*, *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2023 WL 5511513, at *8, n.8 (E.D.N.Y. Aug. 24, 2023) (granting preliminary approval "[a]ssuming that Lead Counsel's request for litigation expenses is documented and substantiated," and noting that "Lead Counsel's requested award is, of course, subject to modification at final settlement approval" after counsel "submit contemporaneous time records to facilitate a cross-check against the lodestar").

(quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (AKT), 2018 WL 4861391, at *2 (E.D.N.Y. 2018); *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. Oct. 13, 2013)).

Hence, Plaintiffs' proposed request for attorneys' fees totaling one-third of the Settlement Fund is within the range of reasonableness. *Buchanan*, 2020 WL 8642081 at *8; *see, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *22 (E.D.N.Y. Jan. 21, 2022) (awarding class counsel 33 1/3% of a $9,000,000.00 settlement); *In re Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *7 (E.D.N.Y. Jan. 26, 2024) (awarding class counsel 33 1/3% of a $6,375,000.00 settlement).

Lead Counsel will also seek payment of litigation expenses, including an award to Lead Plaintiff pursuant to the PSLRA, of no more than $200,000. (ECF No. 78-1 at 18.) *See Trostorff*, 800 F. Supp. 3d at 493 ("The [PSLRA] permits lead plaintiffs to seek an award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[].") (quoting 15 U.S.C. §78u-4(a)(4)) (internal quotations omitted). Further, courts in the Second Circuit routinely award such costs and expenses to reimburse the lead plaintiffs for expenses incurred while litigating the action. *Id*.

Therefore, the undersigned finds this factor weighs in favor of approval.

#### ***d. Any Agreement Required to be Identified under Rule 23(e)(3)***

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3). According to the Settlement Agreement, the

parties have agreed that Lead Plaintiff, as well as Class Representatives, may receive, subject to Court approval, a *pro rata* share of $10,000,000.00. (ECF No. 78-1 at 18.) Further, according to the Stipulation and Agreement of Settlement:

> Lead Counsel may apply, on behalf of Plaintiff's Counsel, Lead Counsel may apply, on behalf of Plaintiff's Counsel, to the Court for an award from the Settlement Fund of attorneys' fees and payment of Litigation Expenses incurred in prosecuting the Action, including reimbursement to Lead Plaintiff pursuant to the PSLRA, plus earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund.

(ECF No. 78-3, at ¶ 16).

"Courts routinely grant requests for service awards in federal class actions." *Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (preliminarily approving service award); *Buchanan*, 2020 WL 8642081, at *8 ("'incentive' or 'service'" award[s] [are] not uncommon in class action cases and [are] 'meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit'"), *Cohan*, 2018 WL 4861391, at *6 ("Service awards are common in class action cases."); *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *16 (E.D.N.Y. Jan. 4, 2024) ("Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs").

As it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14 CV 7117 (LTS) (BCM), 2017 WL 5956770 (S.D.N.Y. 2017). The Settlement Agreement provides that each Class Member agrees in

exchange for payment of the Settlement Amount, on the Effective Date of the Settlement, Lead Plaintiff and the Settlement Class will release the Released Defendant Parties from all of the Released Plaintiff's Claims, and Defendants will release the Released Plaintiff Parties from all Released Defendants' Claims. (*See* ECF No. 78-3 at ¶¶1(vv)-(zz), 5, and 6.) Importantly, the Released Plaintiff's Claims is limited to claims that "arise out of or are based upon both: (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action, and (2) the purchase, acquisition, or sale of Cronos publicly traded common stock on the NASDAQ, or any other public U.S. market for trading stocks, during the Class Period." (*Id.* at ¶1(yy).)  release language is directed at the conduct that occurred within the Class Period, and is limited to such claims. *Rosenfeld*, 2021 WL 508339, at *7 ("Additionally, because the scope of the release applies uniformly to putative class members, it does not appear to affect the apportionment of the relief to class members.") (citing *In re Payment Card*, 330 F.R.D. at 47) (internal quotations omitted). Therefore, it is not overbroad.

Accordingly, the Court finds this factor weighs in favor of approval.

***iv. Equitable Treatment of Class Members Relative to One Another***

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Here, each Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion of the Settlement Fund, after first deducting any necessary settlement administration expenses. (ECF No. 78-1 at 18.) *See Meredith Corp v. SESAC*, *LLC*, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably… and has the benefit of simplicity"); *see also Jackson v. Ampac, LLC*, No. 22-CV-3120 (NSR) (JCM), 2025 WL 2346065, at *7 (S.D.N.Y. Aug. 13, 2025) (stating pro rata distributions of a net settlement amount is evidence of equitable treatment); *In re Payment Card*, 330 F.R.D. at 47 (approving *pro rata* share distribution structure). Further, the scope of the release applies uniformly to all putative class members. *See* Stipulation ¶ 1(vv)-(zz); *see also Johnson v. Rausch, Strum, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 323 (S.D.N.Y. 2019) ("[T]he proposed settlement agreement contemplates that all members are subject to the same release condition, demonstrating equity.").

Therefore, this factor weighs in favor of approval.

***v. Ability of Defendants to Withstand Greater Judgment***

"This is *Grinnell* Factor 7, which 'does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis.'" *Carbone v. Ltd. Run Games, Inc.*, No. 24-CV008861 (JMW), 2026 WL 686144, at *7 (E.D.N.Y. Mar. 11, 2026) (quoting *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK) (LB), 2011 WL 7906584, at *10 (E.D.N.Y. May 25, 2021)).

The rationale for this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022). Despite the Defendants' ability to withstand a greater judgment, "this

factor alone, does not suggest the settlement is unfair," especially where the "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 354 (E.D.N.Y. 2026) ("[A] defendant's ability to withstand a greater judgment standing alone does not preclude a finding that the settlement is fair.") (citing *In re Payment Card*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019)).

Thus, even if Defendants could likely withstand a larger judgment, that is not sufficient, alone, to find that the settlement is unfair.

***vi. Reaction of the Class***

At the preliminary approval stage, *Grinnell* Factor 2 is limited at best. *See In re Payment Card*, 330 F.R.D. at 29. Where, as here, Class Members have not yet received notice of the settlement, Courts have found it too early to evaluate this *Grinnell* factor. *See Rosenfeld*, 2021 WL 508339 at n. 2 ("One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class. Accordingly, the court does not consider that factor at this stage of the proceedings"); *Chang v. Philips Bryant Park LLC*, No. 17 CIV. 8816 (LTS) (SLC), 2019 WL 8105999, at *8 (S.D.N.Y. Oct. 23, 2019) ("Because the Class Members have not yet received notice of the settlement, it remains too early to evaluate the second Grinnell factor."), *report and recommendation adopted*, No. 17-CV-8816 (LTS) (SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020).

While Mr. Jeffcoat submitted a letter in opposition to the preliminary approval of the underlying Settlement Agreement, as well as the proposed notice (ECF No. 82), it was denied as procedurally improper (ECF No. 91). The Court stated that "dissatisfaction with certain settlement terms is not a bar to preliminary approval. Notably, the proper time for the Court to

consider objections to a settlement is at the final approval hearing." (ECF No. 91 at 5-6.) (quoting *In re Penthouse Executive Club Compensation Litigation*, No. 10-CV-1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013)) (internal quotations omitted). In considering a motion for preliminary approval of class settlement, the Court should not regard the objections of one Class Member to be dispositive of rejecting preliminary approval. *Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883 (WFK) (JO), 2016 WL 1389598, at *5 (E.D.N.Y. Apr. 7, 2016) ("Plaintiff Yim's disapproval of the amount he will received under the settlement is not an impediment to preliminary approval, however, because the proper time for the Court to consider objections to a settlement is at the final approval hearing.").

Thus, Mr. Jeffcoat's objection should be analyzed together with the reaction of the rest of the Class, upon sufficient evidence presented by the parties at the final approval stage. *See Chang*, 2019 WL 8105999 at *8.

***vii. Reasonableness of the Settlement***

*Grinnell* Factors 8 and 9 require the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis. *In re Payment Card*, 330 F.R.D. at 47–48.

"Determining whether a settlement amount is reasonable does not necessarily involve a mathematical equation yielding a particularized sum." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 38 (W.D.N.Y. 2018) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000), *aff'd sub nom. Damato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)) (internal quotation and citation omitted). Rather, it considers a range of

reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Ruffner v. Grid One Sols., LLC*, No. 24-CV-1097 (ECC) (ML), 2026 WL 1078151, at *4 (N.D.N.Y Apr. 21, 2026) ("[S]ettlements should be within a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (quoting *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotations omitted)). For instance, a settlement which allows Class Members to be immediately paid may be reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Henry*, 2014 WL 2199427, at *10.

Here, the Settlement Fund is $10,000,000.00. (ECF No. 78-1 at 18.) Lead Plaintiff's consulting damages expert estimated damages ranging from $140 million to $260 million, so the Settlement represents a recovery of about 4% (assuming the highest possible damages) to 7% (assuming the lower end of the range). (ECF No. 78-1 at 15-16.) Lead Plaintiff submits that this is a "very favorable" result for the Settlement Class. (*Id.* at 15.) While that may be a bit of an overstatement, the recovery is respectable nonetheless. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. Appx. 760, 762 (2d Cir. 2020) (affirming a settlement representing 6.1% of the class's maximum potentially recoverable damages); *In re PPDAI*, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving a $9 million settlement, representing 6.4% of maximum estimated damages).

Lead Plaintiff also cites to multiple Second Circuit securities class action settlements to support the reasonableness of the Settlement Amount. (ECF No. 78-1 at 16.) "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (internal citations omitted). Moreover, "[t]his

method is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful." *Abarza*, 2025 WL 1519147, at *13. It therefore follows that if the Class were to continue litigation, it may be subject to motion practiceand the other uncertainties that could ensue. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024) ("Given the many legal and factual uncertainties involved in litigation, this factor favors settlement approval.").

This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

### C. Appointment of Class Counsel

Plaintiffs propose that Labaton Sucharow LLP serve as Class Counsel for this action. (ECF No. 78.) If the Court conditionally certifies the proposed Class, Rule 23(c)(1)(B) requires the appointment of class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) provides four factors for the Court to consider in evaluating the adequacy and appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(A)(i)–(iv).

First, Counsel, while conducting informal discovery, identified the issues herein and used such information in reaching this proposed settlement. (ECF No. 78-1 at 15.) Second, Labaton has extensive experience with class action settlements. (*See* Ex. 2, firm resume of Labaton.) *See, e.g.*, *In re Am. Int'l Grp.*, 2012 U.S. Dist. LEXIS 13784; *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259; *In re Schering-Plough Corp. Enhance*, 2013 U.S. Dist. LEXIS 141475. Third, Labaton

focuses its practice largely on representing large institutional investors in securities fraud class actions. (*See* Ex. 2, firm resume of Labaton.) Fourth, Labaton's resources are significant, as indicated by its extensive representative experience in successfully litigation securities fraud class actions. (*Id.*) Moreover, A.B. Data will be taking the proper steps to ensure the Class receives their portion of the Settlement Fund. (ECF No. 78-1 at 27.)

Accordingly, Labaton Sucharow LLP meets the criteria of Rule 23(g) and should be appointed as Class Counsel.

### D. <u>The Proposed Notice of Settlement</u>

Lead Plaintiff seeks approval of the Proposed Notice. (ECF No. 78-1 at 25-27.) Where, as here, parties are seeking to both certify a settlement class and settle a class action, both the requirements of Rule 23(c) (notice for class certification) and Rule 23(e) (notice for settlement or dismissal) must be met. *Chang*, 2019 WL 8105999 at *13. Pursuant to Rule 23(e), the Court is to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Upon ordering notice pursuant to Rule 23(e)(1), Rule 23(c)(2)(B) requires that "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This may be by mail, electronic, or other appropriate means. *Id*. Class Notice must include:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(iv).

Here, the Class Notice includes, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time, and place of the Settlement Hearing. (ECF. No. 78-3 at 74–109, Ex. A-1.) Further, Lead Plaintiff states that the long form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and an on average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable in the event Lead Plaintiff prevailed; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses; (iv) the names, telephone numbers, and address of Lead Counsel; and (v) the reasons why the parties are proposing the Settlement. (ECF. No. 78-1 at 26.)

Lead Counsel proposes that notice of the Settlement will be provided by emailing a link or mailing a copy of the Postcard Notice to all potential Settlement Class Members who can be identified, using information provided by Cronos' transfer agent, the information obtained in the Ontario Action, as well as information obtained from banks, brokers, and other nominees about their customers who may have made eligible purchases. (ECF No. 78-1 at 25-26.) Publication of the Summary Notice will also be posted in *The Wall Street Journal*, *The Globe and Mail*, and *La Presse* (in French). (*Id*. at 26.) Dissemination of the Summary Notice will also be made on the internet using a wire service. (*Id*.) Additionally, the Notice and Claim Form will be available on

the Settlement website and Lead Counsel's website. (*Id.*) *See In re Blue Apron Holdings, Inc. Sec. Litig.*, 2021 WL 345790, at *3-4 (E.D.N.Y. Feb. 1, 2021) (approving notice that included emailed summary notice, mailed postcard notice, disseminating summary notice, and website).

Accordingly, the proposed Notice and its plan of distribution should be approved.

**E. <u>Approval of the Class Administrator</u>**

Finally, Lead Plaintiff proposes the Court appoint A.B. Data as Class Administrator. (ECF No. 78-1 at 27.) The Court is satisfied with the procedures that A.B. Data is to take in the role it will be assigned. And the Court does not question that A.B. Data is qualified to act as Class Administrator. Indeed, A.B. Data has been appointed Administrator in a variety of class actions in this Circuit. *See* Bissell-Linsk Decl., Ex. 4, at 10-17; *see, e.g.*, *Kirby v. FIC Restaurants, Inc.*, No. 519-CV-1306 (FJS) (ML), 2020 WL 5791582, at *6 (N.D.N.Y. Sept. 28, 2020) (ordering A.B. Data to be the settlement claims administrator); *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, No. 20-CV-09568 (GBD) (JW), 2024 WL 5684244, at *2 (S.D.N.Y. Oct. 28, 2024) ("Lead Counsel is hereby authorized to retain A.B. Data, Ltd. (the 'Claims Administrator') to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims[.]"); *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22-CV-02854 (JSR), 2023 WL 3222092, at *1 (S.D.N.Y. May 3, 2023) (same).

Therefore, the undersigned recommends that A.B. Data be appointed as Class Administrator.

**CONCLUSION**

For the reasons stated herein, it is respectfully recommended that Lead Plaintiff's Motion for Preliminary Settlement Approval (ECF No. 78) be **GRANTED**, and the following be **ORDERED**:

A. The Court finds on a preliminary basis that the settlement memorialized in the Agreement and filed with the Court falls within the range of reasonableness and meets the requirements for preliminary class settlement approval;

B. The Court conditionally certifies, for settlement purposes only, the following Federal Rule of Civil Procedure 23 Class ("Class") described in the Agreement: All persons and entities, irrespective of country of residence, who or which purchased or otherwise acquired the publicly traded common stock of Cronos on the NASDAQ, or any other public U.S. market for trading stocks, during the period from May 9, 2019 through March 30, 2020, both dates inclusive, and were allegedly damaged thereby.

C. The Court finds, on a preliminary basis for settlement purposes only, that the requirements of Federal Rule of Civil Procedure 23 are satisfied;

D. The Court appoints named Plaintiff, Keith D. Norman, for settlement purposes only, as Lead Plaintiff;

E. The Court appoints Labaton Sucharow LLP, for settlement purposes only, as Class Counsel;

F. The Court appoints A.B. Data Ltd. as Claims Administrator;

G. The Court approves the proposed Notice for distribution to Class Members;

H. The deadline for Class Members to opt-out of the Settlement or to make objections to the Settlement shall be **October 28, 2026**; and

I. The Court will conduct an in-person Final Approval Hearing on **November 19, 2026 at 11:00 AM** to determine (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of service awards to the Class Representatives.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
July 20, 2026

**RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge